1

```
 1                  UNITED STATES DISTRICT COURT

 2                  WESTERN DISTRICT OF NEW YORK

 3

 4

 5    - - - - - - - - - - - - -X
      UNITED STATES OF AMERICA              18-CR-6094(G)
 6
      vs.
 7                                          Rochester, New York
      CARLOS JAVIER FIGUEROA,               May 5, 2021
 8              Defendant.                   12:07 p.m.
      - - - - - - - - - - - - -X
 9

10                    TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE FRANK P. GERACI, JR.
11              UNITED STATES DISTRICT CHIEF JUDGE

12
                      JAMES P. KENNEDY, JR., ESQ.
13                    United States Attorney
                      BY: ROBERT A. MARANGOLA, ESQ.
14                        CASSIE M. KOCHER, ESQ.
                      Assistant United States Attorneys
15                    500 Federal Building
                      Rochester, New York 14614
16                    Appearing on behalf of the United States

17
                      PAUL J. VACCA, JR., ESQ.
18                    One East Main Street, Suite 1000
                      Rochester, New York 14614
19                    Appearing on behalf of the Defendant

20
      ALSO PRESENT:      Nicolas Penchaszadeh, Spanish Interpreter
21                       Barbara Considine, Spanish Interpreter
                         Besayda Soto-Abbate, Spanish Interpreter
22
      COURT REPORTER:    Christi A. Macri, FAPR-RMR-CRR-CSR(NY/CA)
23                       Christimacri50@gmail.com
                         Kenneth B. Keating Federal Building
24                       100 State Street, Room 2640
                         Rochester, New York 14614
25
```

1                          **I N D E X**

2   **WITNESS FOR THE GOVERNMENT**

3   Joseph Briganti
         Redirect examination by Mr. Marangola      Page  3
4        Recross-examination by Mr. Vacca           Page 16
         Redirect examination by Mr. Marangola      Page 22

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1           <u>**P R O C E E D I N G S**</u>

2                    *    *    *

3           **(WHEREUPON**, the defendant is present; the jury is

4    present).

12:07:03PM 5           **MR. MARANGOLA:** Thank you, Your Honor.  With the

6    Court's permission, the Government would like to recall

7    Investigator Briganti.

8           **THE COURT:** Yes.

9           **THE CLERK:**  Good morning.

12:07:09PM 10       <u>**GOVERNMENT'S WITNESS, JOSEPH BRIGNANTI, SWORN**</u>

11                  <u>**REDIRECT EXAMINATION**</u>

12           **THE CLERK:** Spell your name for the record.

13           **THE WITNESS:** Joseph, J-O-S-E-P-H; Briganti,

14    B-R-I-G-A-N-T-I.

12:07:48PM 15           **THE CLERK:** Thank you.

16           **THE COURT:** You may proceed.

17           **MR. MARANGOLA:** Thank you, Your Honor.

18    **BY MR. MARANGOLA:**

19    Q.   Investigator Briganti, you previously testified regarding

12:08:15PM 20    Exhibit 1 in front of you, the binder, the wiretap

21    transcripts.  Do you recall that?

22    A.   Yes.

23    Q.   And do you recall testifying specifically with regard to

24    the transcript at tab 1-172A?  Do you remember that?

12:08:33PM 25    A.   Yes.

1  Q.   And the call 1-172A that was added to the transcript after

2  the compilation disk had been initially done; is that right?

3  A.   Yes.

4  Q.   And after your testimony did we realize that there were

12:08:49PM 5  some numbers on the transcript for the transcript behind

6  1-172A that were not accurate?

7  A.   Yes.

8  Q.   And can you flip to the transcript 1-172A and tell us what

9  were the numbers on there that were not accurate?  While

12:09:23PM 10  you're getting to that, if we could publish Government's

11  Exhibit 10 which is in evidence?  Thank you.

12         **MR. VACCA:** No objection, Your Honor.

13         **THE COURT:** It's already been received, right?

14         **MR. MARANGOLA:** Yes.

12:09:41PM 15         **THE COURT:** Okay.

16  **BY MR. MARANGOLA:**

17  Q.   Are you at tab 1-172A?

18  A.   I am.

19  Q.   Can you tell us what was -- what are the numbers that were

12:09:51PM 20  inaccurate on that transcript?

21  A.   So for the target number, what's reflected on the

22  transcript says 585-743-8057.

23  Q.   All right.  And the target number is the number that was

24  wiretapped; is that right?

12:10:10PM 25  A.   Yes.

1  Q.    What should the target number read for that transcript?

2  A.    585-766-8057.

3  Q.    And that's the top number reflected on Government's

4  Exhibit 10 on your screen there?

12:10:27PM 5  A.    Yes, sir.

6  Q.    Okay. So other than the two numbers in the target

7  telephone number, is there anything else that you noticed was

8  not correct on that transcript?

9  A.    No.

12:10:39PM 10  Q.    All right.  After realizing those two numbers were not

11  correct on that transcript, what did you decide to do?

12  A.    I decided to review Exhibit 1 several times.

13  Q.    All right.  And when you say review Exhibit 1, you're

14  referring to the data reflected on the transcripts contained

12:10:56PM 15  in Exhibit 1?

16  A.    Yes.

17  Q.    And by the data we're referring to the date, time of the

18  call as well as the direction of the call, the target number

19  for the call, and the number dialing either in or out from the

12:11:10PM 20  target number?

21  A.    Yes.

22  Q.    And did you undertake that?

23  A.    Yes.

24  Q.    Can you tell the jury what did you observe after you

12:11:17PM 25  reviewed the binder again?

6

1   A.   I did notice that there were some additional

2   inconsistencies.

3   Q.   All right.   There were some other typos in some of the

4   transcripts?

12:11:29PM 5   A.   Yes.

6           **MR. VACCA:** Your Honor, I object to the

7   categorization of typos.

8           **THE COURT:** Yes, sustained.  That will be stricken.

9   **BY MR. MARANGOLA:**

12:11:35PM 10   Q.   Investigator, can you describe what you observed when you

11   further reviewed the transcripts in Government Exhibit 1 after

12   you testified?

13   A.   Yes.  The telephone number that called into the contact

14   number, there was a digit wrong in I believe four of them.

12:11:54PM 15   Q.   Okay. So that would not be the target telephone.  That

16   would be the number that dialed in or out?

17   A.   Yes.

18   Q.   Can you identify -- did you identify in Government's

19   Exhibit 1 exactly which transcripts those were?

12:12:07PM 20   A.   Yes, I did.

21   Q.   How did you do that?

22   A.   I placed colored tabs on each one of the exhibits.

23   Q.   All right.  Before we get to those, with respect to the

24   tab at Government's 1-172A, could you write down the correct

12:12:21PM 25   numbers that correspond to the target telephone for that call

1 | and then place your initials next to them?

2 | A.   Okay.

3 | Q.   What did you write?

4 | A.   I wrote -- I crossed out 43, I wrote 66, placed my

12:12:48PM 5 | initials under 66.

6 | Q.   All right.  If we can go to the other tabs that you placed

7 | on there?  Can you identify the tab and then the portion that

8 | you observed was not accurate?

9 | A.   Okay.

12:13:25PM 10 | Q.   What tab are you at?

11 | A.   So it's 1-8-822.

12 | Q.   And what, if anything, is not accurate about that tab or

13 | the transcript behind that tab?

14 | A.   The telephone number that called into the target number is

12:13:43PM 15 | reflected in the transcript as 585-739-8902.

16 | Q.   What should it be?

17 | A.   It should be 585-732-8902.

18 | Q.   And is 732-8902 one of the numbers reflected in

19 | Government's Exhibit 10?

12:14:09PM 20 | A.   Yes.

21 | Q.   And that was the phone used by Orlando Yelder that was

22 | wiretapped; is that correct?

23 | A.   Yes.

24 | Q.   So you have one digit wrong in this -- in that number; is

12:14:22PM 25 | that right?

8

1  A.   Yes.

2  Q.   All right.  Could you correct that digit and put your

3  initials next to it?

4  A.   I crossed out the 9, placed a 2 underneath it, and then my

12:14:35PM 5  initials under the 2.

6  Q.   All right.  Thank you.  Can you move to the next orange

7  tab?

8  A.   Yes, so the next one is 1-9-62.

9  Q.   Is that immediately following the one you just looked at?

12:14:50PM10  A.   Yes, it is.

11  Q.   Can you describe what you noted in that tab?

12  A.   Yes.  What's reflected in the transcript is 585-739-8902.

13  Q.   And is that the same mistake as had been in the previous

14  transcript?

12:15:10PM15  A.   Yes.

16  Q.   Would you correct this one and put your initials next to

17  this one and tell us what you wrote?

18  A.   I crossed out the 9, placed a 2 underneath, and my

19  initials underneath the 2.

12:15:24PM20  Q.   All right.  If you could flip to the next one?  The next

21  orange tab?

22  A.   Yes.  It's 1-10-824.

23  Q.   Is that the same or different error on that page?

24  A.   It's the same.

12:15:39PM25  Q.   One digit off in Orlando Yelder's number?

1   A.   Yes.

2   Q.   Could you make the correct change and put your initials

3   next to that one too and tell us what you wrote?

4   A.   Crossed out the 9, placed a 2, and my initials next to the

12:15:55PM 5   2.

6   Q.   All right.  How about the next orange tab?

7   A.   1-28-99.

8   Q.   And is that the -- same error made in that transcript?

9   A.   Yes.

12:16:14PM10  Q.   Could you amend that one and put your initials next to

11  that one as well?

12  A.   I crossed out the 9, placed a 2 underneath, and my

13  initials next to the 2.

14  Q.   All right.  And any other orange tabs?

12:16:30PM15  A.   Yes, there's one.

16  Q.   All right.  Can you describe the -- what you observed with

17  respect to the last orange tab?

18  A.   Yes, so the code for the text for the United States Postal

19  Service that's sent when there's a text from them is reflected

12:17:02PM20  in the transcript as 2-8777.

21  Q.   And upon reviewing again the data for that call, what did

22  you observe?

23  A.   That the dash shouldn't be there.  It should be 28777.

24        **THE COURT:**  I'm sorry.  What call are you speaking

12:17:22PM25  about now?

1          **THE WITNESS:** I'm sorry, Your Honor.  It's

2   1-187-1953.

3          **THE COURT:** Thank you.

4   BY MR. MARANGOLA:

12:17:35PM 5   Q.   Thank you.  I forgot to ask you that.  The only thing you

6   observed different about what's in the transcript is that

7   there's a dash there?

8   A.   Yes.

9   Q.   Okay. Have you reviewed -- any other corrections that need

12:17:52PM 10   to be made to Government's Exhibit 1?

11   A.   No.

12   Q.   All right.  So we're clear, Investigator, did you observe

13   all of the -- how many transcripts, by the way, are contained

14   in Government's Exhibit 1?

12:18:05PM 15   A.   There's approximately 200.

16   Q.   All right.  And there's a number for each one of them?

17   A.   Yes.

18   Q.   What's the last numbered tab?

19   A.   1-195-2042.

12:18:26PM 20   Q.   So there's 195, plus then 172A, so a total of 196

21   transcripts in that binder?

22   A.   Yes.

23   Q.   And you found these couple of changes that needed to be

24   made; is that right?

12:18:41PM 25   A.   Yes.

1   Q.   All right.   In reviewing this binder again, can you tell

2   the jury were there any dates on any of the 196 calls that

3   were not accurate?

4   A.   No.

12:18:53PM  5                    **MR. VACCA:** Objection, Your Honor.

6                    **THE COURT:** Overruled.

7   **BY MR. MARANGOLA:**

8   Q.   The dates were all accurate for 196 calls?

9   A.   Yes.

12:19:01PM 10   Q.   Were the times listed on all of the transcripts, all 196

11   of the transcripts accurate?

12   A.   Yes.

13   Q.   Were the directions whether it was incoming or outgoing

14   accurately listed for all 196 transcript?

12:19:15PM 15   A.   Yes.

16   Q.   And other than the 172A, was every target telephone

17   accurately listed in the other 195 transcripts?

18   A.   Yes.

19   Q.   And then other than the mistakes you made that you --

12:19:30PM 20   edits that you testified about here today, all the remaining

21   numbers dialing in or dialing out to the target number were

22   accurately reflected in all of the other transcripts in that

23   binder; is that right?

24   A.   Yes.

12:19:43PM 25   Q.   All right.   Thank you.   At this time I'd like to show you,

12

1   Investigator, what is not in evidence as Government's

2   Exhibit 90.

3   A.   Mr. Marangola?

4   Q.   Yes.

12:19:56PM 5   A.   For 1-187-1953 do you want me to make a correction on

6   this?

7   Q.   The only addition to that or correction would be to delete

8   the hyphen; is that right?

9   A.   Yes.

12:20:13PM 10   Q.   Sure.  Why don't you X out the hyphen and put your

11   initials next to that one.

12   A.   So I crossed out the hyphen and placed my initials

13   underneath.

14   Q.   That was for the number that sent the text message to the

12:20:29PM 15   target telephone number in that particular transcript?

16   A.   Yes.

17   Q.   From the United States Postal Service?

18   A.   Yes.

19   Q.   Okay. All right, thank you.  Do you see Government's

12:20:39PM 20   Exhibit 90 on your screen, Investigator?

21   A.   Yes.

22   Q.   Can you take a look at Government's 90 and then

23   Government's 91?  Do you recognize what's shown in

24   Government's 90 and 91?

12:20:58PM 25   A.   Yes.

1    Q.    Can you tell us what's shown in those two photographs?

2    A.    Yes.  Those are the Lincoln apartments at 145 Liberty Pole

3    Way.

4    Q.    That's in the City of Rochester?

12:21:07PM 5    A.    Yes.

6    Q.    Do Government's 90 and 91 fairly and accurately show those

7    apartments as they existed during the course of your

8    investigation?

9    A.    Yes, they do.

12:21:18PM 10           **MR. MARANGOLA:** At this time I'd offer Government's

11   90 and 91.

12           **MR. VACCA:** Objection, Your Honor, on grounds of

13   foundation.  Also, I need to know the relevancy.

14           **THE COURT:** Okay.  At this time --

12:21:31PM 15           **MR. MARANGOLA:** I can ask more follow-up with

16   respect to the foundation, Judge.

17           **THE COURT:** Okay, go ahead.

18   **BY MR. MARANGOLA:**

19   Q.    Investigator, have you been by the apartments shown in

12:21:39PM 20   Government's 90 and 91?

21   A.    Yes.

22   Q.    Have you observed those exact locations during the course

23   of your investigation?

24   A.    Yes.

12:21:46PM 25   Q.    Approximately how many times?

1  A.   I'd say dozens of times.

2  Q.   Are you familiar with the appearances of those locations

3  based on the dozens of times you've observed them during the

4  course of your location?

12:22:00PM 5  A.   Yes.

6  Q.   Based on your familiarity with those locations during the

7  investigation, do Government's 90 and 91 fairly and accurately

8  show how they existed during the investigation?

9  A.   Yes, they do.

12:22:12PM 10        **MR. MARANGOLA:** All right, I renew Government's 90

11  as well as 91.

12        **MR. VACCA:** *Voir dire*, Your Honor?

13        **THE COURT:** Sure.

14        **MR. VACCA:** Investigator, what is the relevancy of

12:22:20PM 15  this photograph with respect to your investigation of this

16  matter?

17        **THE WITNESS:** There were members of the group that

18  lived at that location and I've observed Carlos Figueroa at

19  this location during the time of the investigation.

12:22:39PM 20        **MR. VACCA:** Okay.  Where did you see him in relation

21  to the building?

22        **THE WITNESS:** I actually observed him several times

23  parking his car at the Harro East parking lot across the

24  street and walking into the front door of the building.

12:22:50PM 25        **MR. VACCA:** Okay.

1          **THE WITNESS:** I'm sorry, the side door of the

2   building, whatever the door is that's shown on Exhibit 90.

3          **MR. VACCA:** Okay.  And how many times did you see

4   him at this building?

12:23:04PM 5          **THE WITNESS:** I would say maybe four or five times.

6          **MR. VACCA:** Over what period of time?

7          **THE WITNESS:** From 2015, maybe early 2016.

8          **MR. VACCA:** So for about a year period of time?

9          **THE WITNESS:** Yes, maybe a little less than a year,

12:23:22PM10   yes.

11          **MR. VACCA:** And did you take any photographs of him

12   there or did you ever go into the premises and see him there?

13          **MR. MARANGOLA:** Judge, I'm going to object.  If he

14   wants to discuss that --

12:23:36PM15          **THE COURT:** That's beyond *voir dire*.

16          **MR. VACCA:** I would object, Your Honor, to the

17   admission of the photographs.

18          **THE COURT:** Exhibits 90 and 91 will be received.

19   The objection is overruled.  Again, subject to connection.

12:23:46PM20          (**WHEREUPON**, Government's Exhibits 90-91 were

21   received into evidence).

22          **MR. MARANGOLA:** Thank you.

23   **BY MR. MARANGOLA:**

24   Q.   Investigator, is that the entrance to the apartments that

12:23:57PM25   you were just referring to?

1  A.   Yes.

2  Q.   And have you seen the defendant at the entrance of those

3  apartments during the course of your investigation?

4  A.   Yes.

12:24:06PM 5  Q.   If we could go back to 90?  What street is shown in this

6  photograph?

7  A.   Liberty Pole Way.

8  Q.   Liberty Pole Way.  And can you tell us the proximity of

9  that street to East Main Street in the City of Rochester?

12:24:25PM 10  A.   Yes.  It's between East Main Street and Andrews Street

11  before Andrews Street turns into University.

12  Q.   So Liberty Pole Way intersects East Main Street; is that

13  right?

14  A.   Yes.

12:24:38PM 15  Q.   Okay.

16       MR. MARANGOLA: Thank you, Investigator.  No further

17  questions.

18                 **RECROSS-EXAMINATION**

19  **BY MR. VACCA:**

12:24:42PM 20  Q.   Investigator, with respect to this photograph you

21  indicated that you had been there a number of occasions?

22  A.   Yes.

23  Q.   Did you ever go into the premises?

24  A.   Yes, sir.

12:24:50PM 25  Q.   Okay. How many times?

1  A.    I don't know exactly.  I would say maybe less than ten

2  times, but around ten times.

3  Q.    What was your purpose to be at the building?

4  A.    We rented an apartment at the building so that we could

12:25:08PM 5  observe the activities of people going into one of the

6  apartments.

7  Q.    By we who do you mean?

8  A.    The Rochester Police Department.

9  Q.    Okay. And what time did you have somebody move in there to

12:25:20PM 10 do their surveillance?

11  A.    I don't know the exact date that we actually did that.

12  Q.    Well, was it in 2015, '16, '17?

13  A.    I believe it was in 2016.

14  Q.    2016.  So that was two years -- at least two years before

12:25:36PM 15 the takedown?

16  A.    Yes, I would tell you that it was -- we moved in a week

17  before Leitscha Poncedeleon left the location.

18  Q.    So she was living there?

19  A.    She was there, yes, sir.

12:25:50PM 20  Q.    For what period of time?

21  A.    I don't know the exact period of time she was living

22  there.

23  Q.    Okay. And you've indicated that you rented a room here?

24  A.    We rented an apartment, yes, sir.

12:26:00PM 25  Q.    Is it shown on prosecution Exhibit 90?

1  A.   I'm not sure if it is, sir.

2  Q.   Well, you were there before, right?  A number of times, at

3  least ten times?

4  A.   Yes.

12:26:15PM 5  Q.   Okay. And would you be able to tell us where the room is

6  seeing that you've been there ten times?

7  A.   Yes, I can tell you that the room is right across from

8  Leitscha Poncedeleon's apartment.  It was the apartment

9  directly across the hall from it.

12:26:30PM 10  Q.   Could you show us on Government's Exhibit 90 where that

11  is?

12  A.   I can't recall exactly where it is.

13  Q.   You've been there ten times at least?

14          **MR. MARANGOLA:** Objection, Judge, asked and

12:26:44PM 15  answered.

16          **THE COURT:** Overruled.

17          **THE WITNESS:** Yes, I can't recall by looking at the

18  photograph.

19  **BY MR. VACCA:**

12:26:50PM 20  Q.   Okay.  Well, does that mean that in other aspects of this

21  investigation that you can't remember certain things or don't

22  remember certain things?

23          **MR. MARANGOLA:** Objection, Your Honor, form.

24          **THE COURT:** Overruled.  You can answer.

12:27:07PM 25          **THE WITNESS:** I don't remember everything, sir, no.

1  **BY MR. VACCA:**

2  Q.   Understood.  But I would like to hear, you know, where you

3  were set up in this building, how the operation went, who was

4  staying there?

12:27:23PM 5          **MR. MARANGOLA:** Objection, Judge, is there a

6  question?

7          **THE COURT:** There was like three questions there.

8  **BY MR. VACCA:**

9  Q.   I'll go back to number one.  You were there for about a

12:27:30PM 10 year; is that correct?  With the RPD?

11 A.   No.

12 Q.   Well, you said that you were there about a year?

13 A.   No.

14 Q.   No?

12:27:40PM 15 A.   No.  We went in a week before she -- her lease was up and

16 she left and went to Barrington Street.  So we were there for,

17 I would say, maybe two weeks at the most.

18 Q.   I thought you said you were there about a year?

19 A.   No.

12:27:57PM 20 Q.   So --

21 A.   Within a year's time I was at this location in and out of

22 this location, but we only had the apartment for about two

23 weeks.

24 Q.   Now, so you were in and out.  When were you there on the

12:28:08PM 25 other occasions?

1   A.   Just randomly going there for the investigation.  Whenever

2   there's activity there, we would go.

3   Q.   By activity what do you mean?

4   A.   People going in and out of the location.

12:28:23PM 5   Q.   Is this based on your surveillance?

6   A.   Yes.

7   Q.   Okay. And who did the surveillance with you at this

8   premise?

9   A.   Oftentimes it was Investigator Swain and I.  But there

12:28:33PM 10   were times where it was Investigator Swain and I or Special

11   Agent Hoffmann and I.

12   Q.   Were you in plain clothes?

13   A.   Yes.

14   Q.   Okay.  And you indicated you saw Carlos is there; is that

12:28:44PM 15   correct?

16   A.   Yes.

17   Q.   Over what period of time?

18   A.   Again that was throughout that year that -- I mean, there

19   would be times where I would see him either entering the

12:28:52PM 20   building or exiting the building.

21   Q.   You saw him four times, correct?

22   A.   Approximately, yes.

23   Q.   Over a year?

24   A.   Yes.

12:28:58PM 25   Q.   Over a year's period of time?

1  A.    Yes, sir.

2  Q.    Did you constantly have this staked out?

3  A.    No.

4  Q.    How often did you stake it out?

12:29:09PM 5  A.    Again it was random.  So there was -- I can't tell you

6  exactly how many times we were there because it was always

7  random that we would go there unless something drew us there,

8  if we followed somebody there.

9  Q.    Who else did you see there?

12:29:28PM 10  A.    Leitscha Poncedeleon.

11  Q.    She moved out after you moved -- she moved out a week

12  after you went in?

13  A.    Yes.  And we no longer did surveillance after that.

14  Q.    So you said we saw her going in and out, in and out but --

12:29:39PM 15  A.    Yes.

16  Q.    -- she was only there a couple times during a week period

17  of time?

18  A.    We were there for a year; we only had the apartment for

19  maybe two weeks.

12:29:50PM 20  Q.    Where were you when you weren't in the apartment?

21  A.    We were sitting on surveillance on the street like we were

22  in our vehicles just watching the front of the building.

23  Q.    Okay. All right.

24            **MR. VACCA:** Thank you very much.

12:30:01PM 25            **THE WITNESS:** You're welcome.

1                    <u>**REDIRECT EXAMINATION**</u>

2   **BY MR. MARANGOLA:**

3   Q.   Investigator, I'd like you to take a look at Government's

4   Exhibit 26.  Do you see any of the individuals on Government's

12:30:14PM 5   Exhibit 26 who you observed at the apartment shown in

6   Government's Exhibit 90 and 91?

7              **MR. VACCA:** Your Honor, I'm going to object to this.

8   We've gone through this chart here, Government's Exhibit 26,

9   on numerous occasions with numerous witnesses.  They've been

12:30:35PM 10   identified.  We know who they are.  But this is bolstering.

11              **THE COURT:** It's a follow-up to your

12   cross-examination.  So overruled.  Go ahead.

13              **THE WITNESS:** Yes, sir, I do.

14   **BY MR. MARANGOLA:**

12:30:49PM 15   Q.   Can you tell us individuals shown in Government's 26 who

16   you saw at those apartments shown in 90 and 91?

17   A.   Yes.  At the top of the chart Carlos Figueroa.  The second

18   row down to the left Leitscha Poncedeleon.  And the next row

19   down second from the right Jean Karlos Pizarro DeJesus.  And

12:31:23PM 20   the photograph next to Jean Karlos Pizarro DeJesus is Jonathan

21   Cruz-Carmona.

22   Q.   Each of those circles you drew are based on your

23   surveillance observations of those individuals at the

24   apartments shown in Government's 90 and 91?

12:31:45PM 25   A.   Yes.

1  Q.   Now, Mr. Vacca asked you questions about the apartment

2  that you rented there in that building?

3  A.   Yes.

4  Q.   And you indicated that you rented the apartment shortly

12:32:00PM 5  before Leitscha Poncedeleon moved out; is that right?

6  A.   It was approximately a week before she moved out.

7  Q.   At the time you rented the apartment to engage in

8  surveillance activities at those apartments on Liberty Pole

9  Way, did you know Leitscha Poncedeleon was moving out?

12:32:23PM 10  A.   No.

11  Q.   So you found out after being in that apartment only a

12  week?

13  A.   Yes.

14  Q.   That she was then leaving the location?

12:32:31PM 15  A.   Yes.

16          **MR. VACCA:** Objection, leading questions.

17          **THE COURT:** Well, it is leading, but overruled at

18  this point.

19  **BY MR. MARANGOLA:**

12:32:38PM 20  Q.   And after Leitscha Poncedeleon moved out of the apartment

21  approximately a week after you rented one, did you see her or

22  any of the other individuals shown in Government's 26 at those

23  apartments anymore during your investigation?

24  A.   No.

12:32:54PM 25          **MR. MARANGOLA:** Thank you, Investigator.  No further

1    questions, Judge.

2              **MR. VACCA:** No recross, Your Honor.

3              **THE COURT:** Okay, may step down.  Thank you very

4    much.

12:33:04PM  5              **THE WITNESS:** Thank you, Your Honor.

6              (**WHEREUPON**, the witness was excused).

7                            *   *   *

8                   **CERTIFICATE OF REPORTER**

9

10             In accordance with 28, U.S.C., 753(b), I certify that

11   these original notes are a true and correct record of

12   proceedings in the United States District Court for the

13   Western District of New York before the Honorable Frank P.

14   Geraci, Jr. on May 5th, 2021.

15

16   S/ Christi A. Macri

17   Christi A. Macri, FAPR-RMR-CRR-CSR(CA/NY)
     Official Court Reporter
18

19

20

21

22

23

24

25