1

1                   UNITED STATES DISTRICT COURT

2                   WESTERN DISTRICT OF NEW YORK

3

4

5   - - - - - - - - - - - - -X
    UNITED STATES OF AMERICA            18-CR-6094(G)
6
    vs.
7                                       Rochester, New York
    CARLOS JAVIER FIGUEROA,             May 25, 2021
8             Defendant.                10:48 a.m.
    - - - - - - - - - - - - -X
9

10                  TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE FRANK P. GERACI, JR.
11              UNITED STATES DISTRICT CHIEF JUDGE

12
                    JAMES P. KENNEDY, JR., ESQ.
13                  United States Attorney
                    BY: ROBERT A. MARANGOLA, ESQ.
14                      CASSIE M. KOCHER, ESQ.
                    Assistant United States Attorneys
15                  500 Federal Building
                    Rochester, New York 14614
16                  Appearing on behalf of the United States

17
                    PAUL J. VACCA, JR., ESQ.
18                  One East Main Street, Suite 1000
                    Rochester, New York 14614
19                  Appearing on behalf of the Defendant

20
    ALSO PRESENT:       Gabriela Loncar, Spanish Interpreter
21                      Barbara Considine, Spanish Interpreter

22
    COURT REPORTER:     Christi A. Macri, FAPR-RMR-CRR-CSR(NY/CA)
23                      Christimacri50@gmail.com
                        Kenneth B. Keating Federal Building
24                      100 State Street, Room 2640
                        Rochester, New York 14614
25

1                          **I N D E X**

2   **WITNESS FOR THE GOVERNMENT**

3   Myron Moses
          Direct examination by Ms. Kocher                Page 3
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  <u>**P R O C E E D I N G S**</u>

2                      *    *    *

3          **(WHEREUPON**, the defendant is present; the jury is

4  present).

5          <u>**GOVERNMENT'S WITNESS, MYRON MOSES, SWORN**</u>.

6                  <u>**DIRECT EXAMINATION**</u>

7          **THE CLERK:** Please state your name and spell your

8  last name for the record.

9          **THE WITNESS:** Myron Moses, M-O-S-E-S.

10         **THE REPORTER:** Thank you.

11         **THE CLERK:** Have a seat up here.

12         **THE COURT:** Investigator, you may remove your mask

13  since you're behind plexiglas.  Thank you.

14         You may proceed.

15         **MS. KOCHER:** Thank you.

16  **BY MS. KOCHER:**

17  Q.   Good morning.

18  A.   Good morning.

19  Q.   Could you please introduce yourself to the jury?

20  A.   Investigator Myron Moses, M-Y-R-O-N, M-O-S-E-S.

21  Q.   And, Investigator, where do you work?

22  A.   For the City of Rochester, Rochester Police Department.

23  Q.   How long have you been an investigator with the Rochester

24  Police Department?

25  A.   Over ten years.

4

1  Q.   Okay. And how long have you been with the police

2  department in total?

3  A.   Over 30 years.

4  Q.   What was your job title before becoming an investigator?

5  A.   I was assigned to the Special Investigation Section as a

6  police officer.

7  Q.   All right. And what is the Special Investigation Section?

8  A.   It's a Narcotics Unit within the City of Rochester.

9  Q.   Before joining the Special Investigation Section where did

10  you work with the Rochester Police Department?

11  A.   I worked the street in Highland Section.

12  Q.   How long have you been with the Special Investigation

13  Section?

14  A.   Over 25 years.

15  Q.   Now, are you assigned to any specialized units at this

16  time?

17  A.   I'm currently assigned to the Special Investigation

18  Section Violent Crime Team as a task force officer.

19  Q.   And is that a task force officer with the Bureau of

20  Alcohol Tobacco and Explosives?

21  A.   Yes, it is.

22  Q.   How long have you been a task force officer with that

23  unit?

24  A.   Over 20 years.

25  Q.   What are some of the crimes that you investigate as a task

1  force officer with the Bureau of Alcohol Tobacco and Firearms?

2  A.    We investigate narcotics, weapons trafficking, and violent

3  crimes.

4  Q.    What are some of the things you do to investigate those

5  crimes?

6  A.    We do Title III investigations, street level and

7  upper-level drug dealing, and weapons trafficking.

8  Q.    Okay.  Now, you mentioned Title III investigations.  What

9  is that?

10  A.    Wiretap.

11  Q.    Can you explain some of your training to become a police

12  investigator?

13  A.    I've attended training at seminars sponsored through the

14  Rochester Police Department, the Monroe County Sheriff's

15  Office, New York State Police, the Drug Enforcement

16  Administration, the United States military, and the New York

17  State Police.

18  Q.    Okay. And did some of that training include training on

19  drug recognition?

20  A.    Yes, it has.

21  Q.    Now, in your job do you also work with confidential

22  informants?

23  A.    Yes, I do.

24  Q.    Have you also had the chance to interview people that are

25  arrested and charged with drug crimes?

1   A.    Yes, I have.

2   Q.    Now, based on your training and experience are you

3   familiar with some of the common characteristics of cocaine?

4   A.    Yes, I am.

5   Q.    What are those characteristics?

6   A.    They're kind of a white powdery substance, sometimes it

7   has a odor to it.

8   Q.    I'm sorry, has a what to it?

9   A.    Odor.

10   Q.    Okay. And during your several years as a police

11   investigator, have you had the chance to see cocaine in

12   person?

13   A.    Yes, I have.

14   Q.    About how many times?

15   A.    Over a thousand times.

16   Q.    Now, I'd like to direct your attention to January 29th of

17   2018.  Were you working as an investigator with the Rochester

18   Police Department on that day?

19   A.    Yes, I was.

20   Q.    And were you assigned as a task force officer at that time

21   as well?

22   A.    Yes, I was.

23   Q.    What was your assignment on January 29?

24   A.    I was the evidence technician for 292 Barrington Street.

25   Q.    Where is 292 Barrington Street?

1  A.    Located in the City of Rochester, County of Monroe.

2  Q.    And were you executing a search warrant at that location?

3  A.    Yes, we were.

4  Q.    Investigator, I'd like you to take a look at Exhibit 70

5  that's already been received into evidence.  Do you recognize

6  the location depicted in Government's Exhibit 70?  You can

7  look on your monitor there.

8  A.    Oh.

9  Q.    Do you recognize that?

10  A.    Yes, I do.

11  Q.    What is that location?

12  A.    That is the front of 292 Barrington Street.

13  Q.    Can you describe the building here that we're looking at?

14  A.    It is a multiple family dwelling, side-by-side, with the

15  door for 292 is on the left, the red door on the left.

16  Q.    Could you circle the door for 292?  Okay, and you've

17  circled -- there appear to be two front doors on the house --

18  you've circled the one to the left?

19  A.    That is correct.

20  Q.    Okay. If you could hit the clear button in the upper right

21  corner?  That will erase your circle mark.  Thank you.

22        Now, when you went to execute the search warrant

23  that day, did you go into the other half of the house at all?

24  A.    No, we did not.

25  Q.    Now, in addition to executing a search warrant at 292

1  Barrington Street, was there also a vehicle that you assisted

2  in executing a search warrant on?

3  A.    Yes, there was.

4  Q.    And what car was that?

5  A.    Dark colored Nissan Altima.

6  Q.    I'd like to show you what's also already been received

7  into evidence as Government's Exhibit 634.  Do you recognize

8  the vehicle in this photograph?

9  A.    Yes, I do.

10  Q.    What car is that?

11  A.    That is the Nissan Altima that the search warrant was

12  executed on also.

13  Q.    And that was also done on January 29th, 2018?

14  A.    Yes, it was.

15  Q.    Now, were there other officers assisting you with the

16  search warrants that day?

17  A.    Yes, there was.

18  Q.    What was your role?

19  A.    I was the evidence technician.

20  Q.    What does that mean?

21  A.    I collect the evidence located in the -- at the location.

22  Q.    Are you also tasked with taking photographs of the scene?

23  A.    Yes, I am.

24  Q.    And what were you wearing when you executed the search

25  warrant that day?

1  A.    Black BDUs with the bright yellow Police stamped across

2  the shirt and our vest.

3  Q.    Okay. You said black BDU?

4  A.    BDUs -- black pants, black long sleeve shirt, and a mask.

5  Q.    Why were you wearing a mask?

6  A.    To cover up my identity.

7  Q.    Why are you concerned about that?

8  A.    Because I continue to do undercover work within the City

9  of Rochester, County of Monroe.

10 Q.    Okay.  Working in an undercover capacity is also part of

11 your job?

12 A.    Yes, it is.

13 Q.    Okay.  About what time did you arrive at 292 Barrington

14 Street that day?

15 A.    11:32 a.m.

16 Q.    And what happened when you got to the location?

17 A.    As we executed the search warrant, I directed the officers

18 to go to the vehicle and take custody of the female that was

19 in the vehicle, then we went inside the location.

20 Q.    Now, when you say the vehicle, is that the vehicle that

21 was depicted in Government's Exhibit 634?

22 A.    Yes.

23 Q.    And where was that car when you arrived at the scene?

24 A.    In the driveway.

25 Q.    As you approached the house you were able to see there was

1   someone inside?

2   A.   Correct.

3   Q.   And where was that person located in the car?

4   A.   Driver's side.

5   Q.   Who was the person that was in the driver's seat of the

6   vehicle?

7   A.   I may pronounce the name wrong, but Leitscha Poncedeleon.

8   Q.   Investigator, I'd ask you to take a look at what's been

9   received into evidence as Government's Exhibit 26.  Do you see

10  Ms. Poncedeleon on this exhibit?

11  A.   Yes, I do.

12  Q.   If you can please circle her photograph?  All right, so

13  you've circled the female in the second row, the photograph on

14  the left side?

15  A.   That is correct.

16  Q.   Okay, thank you.  If you could clear your mark?  Was

17  Ms. Poncedeleon taken into custody?

18  A.   Yes, she was.

19  Q.   Now, once she was secured did you make entry into the

20  home?

21  A.   Yes, we did.

22  Q.   How did you get inside?

23  A.   Special Agent Fudella, F-U-D-E-L-L-A, once he used a ram

24  tool to make entry into the front door, we proceeded to clear

25  the location.

1  Q.   I'd like to show you what's been received into evidence as

2  Government's Exhibit 565.   What is this a photograph of?

3  A.   The front entrance of 292 Barrington Street.

4  Q.   And is that the door that you used to enter the home that

5  day?

6  A.   Yes, it is.

7  Q.   Could you please circle which door it was that you

8  entered?   Okay, so you've made a circle.   Again it appears

9  there are two front doors, and in this photograph you've

10  circled the door to the left, correct?

11  A.   Correct.

12  Q.   And that would be the door right to the right of the

13  numbers 292?

14  A.   That is correct.

15  Q.   Okay. If you could clear your marks, please?   Now, once

16  you were able to make entry was there anyone inside the house?

17  A.   Yes.

18  Q.   Who was that?

19  A.   Roberto Figueroa.

20  Q.   I'd like to show you Government's Exhibit 26 again.   Do

21  you see Roberto Figueroa on this exhibit?

22  A.   Yes, I do.

23  Q.   And could you please circle his photograph?   So you've

24  circled the male in the second row that is the photograph to

25  the right?

1  A.    That is correct.

2  Q.    Okay. If you could clear your mark, please?  Where was

3  Roberto Figueroa when you made entry into the home?

4  A.    Exiting the downstairs bathroom.

5  Q.    And what did you do upon entering the home?

6  A.    After we cleared the location we -- I then took

7  photographs of the location prior to searching it.

8  Q.    Okay. After you took the before photographs was the

9  location searched?

10  A.    No, it was not.

11  Q.    Was the location searched at any point?

12  A.    After taking the photographs.

13  Q.    Okay. So you took your before photographs?

14  A.    That is correct.

15  Q.    And then the location was searched?

16  A.    Yes, it was.

17  Q.    What were some of the items that you seized from the

18  location that day?

19  A.    Seized a large amount of cocaine; weapons; ammunition;

20  drug paraphernalia, which consisted of beakers, strainers,

21  baggies, cut; telephones; and paperwork; and a large amount of

22  U.S. currency.

23  Q.    Okay.  Now, did you also take photographs of the items

24  that you collected that day?

25  A.    Yes, I did.

1  Q.   Okay. Investigator, I'd ask you to take a look at that

2  binder, it should be open to Exhibit 566.  If you can look at

3  Exhibit 566 through and including 629 and let me know when

4  you're done.

5        **MS. KOCHER:** Your Honor, I do believe Exhibit 592,

6  593, 594, 601, 602, 605, 606, 610, 612, and 614 are already in

7  evidence.

8        **THE COURT:** Yes, that's what I have.

9        **THE WITNESS:** What number did you tell me to stop

10  at?

11  **BY MS. KOCHER:**

12  Q.   629.

13  A.   Thank you.  Okay.

14  Q.   If you could pull the binder cover down? You're hiding on

15  me.

16  A.   Oh, sorry.

17  Q.   Thank you.  All right, can you generally describe what's

18  depicted in those photographs that you looked at, 566 through

19  and including 629?

20  A.   Photographs of the location and evidence contained

21  therein.

22  Q.   Do those photographs fairly and accurately depict the home

23  at 292 Barrington Street and the items that you recovered from

24  the location?

25  A.   Yes, it does.

1          **MS. KOCHER:** Your Honor, at this time I would offer

2  those exhibits, 566 through and including 629, which have not

3  been received.  Again, I can list those that have already been

4  received -- again that would be 592, 593, 594, 601, 602, 605,

5  606, 610, 612, and 614 have already been received.

6          **MR. VACCA:** Your Honor, if I could just have a

7  moment more to go through them?

8          **THE COURT:** Sure, absolutely.

9          **MR. VACCA:** Your Honor, I would object to 617.  I do

10 not believe that is in evidence yet.

11         **THE COURT:** None of these are in evidence yet.

12         **MR. VACCA:** There's some in this sequence here.

13         **THE COURT:** I'm not understanding you.  What's your

14 objection?

15         **MR. VACCA:** On relevancy.

16         **THE COURT:** Okay.

17         **MR. VACCA:**  Same for 618, Your Honor.  619.  628.

18 I would object to those items being admitted into evidence,

19 Your Honor.  The other ones I have no opposition.

20         **THE COURT:** Okay, again tell me ones you just

21 objected to.

22         **MR. VACCA:** 618, 619, 627 and 628.

23         **THE COURT:** Okay, thank you. The objection as to 618

24 , 619, 627 and 628 objection is overruled.

25         Exhibits 566 through and including 591 will be

1  received.

2           Exhibits 595 through and including 600 will be

3  received.

4           Exhibit 603 through and including 609 will be

5  received.

6           Exhibit 611 will be received.

7           Exhibit 613 will be received.

8           And Exhibits 615 through and including 629 will be

9  received.

10          **MS. KOCHER:** And, Judge, I apologize, there's

11 actually not a photo marked 620.  That number was skipped.

12          **THE COURT:** There's no 620.  Okay, thank you.

13          **MS. KOCHER:** Thank you.

14          (**WHEREUPON**, Government's Exhibits 566-591, 595-600,

15 603-609, 611, 613, 615-629 were received into evidence).

16 **BY MS. KOCHER:**

17 Q.   All right.  Now, Investigator, I'd like to have you take a

18 look at Exhibit 566 that's been received into evidence.  Can

19 you describe what we're looking at here?

20 A.   That is the front door opened with the front closet in

21 front of you, the front entrance of 292 Barrington Street.

22 Q.   Okay. So there's two doors here.  The red door to the

23 right of the photograph, what door is that?

24 A.   That's the entrance door, the front door of 292 Barrington

25 Street.

1  Q.    And the door in the middle of the photo, it's like a wood

2  brown door, what door is that?

3  A.    That is the downstairs closet.

4  Q.    Can you generally describe the layout of this home?

5  A.    Once you enter the door, right to your left is the living

6  room; as you go through the living room you're in the kitchen

7  area; off the kitchen there's a downstairs bathroom; then

8  another smaller like sitting room; and then off that room is

9  the attached garage; also off the kitchen is going downstairs

10 to the basement area; and then upstairs there's two bedrooms.

11 Q.    Okay. We'll move on to Exhibit 567.  What is this a

12 photograph of?

13 A.    The downstairs living room.

14 Q.    Okay.

15 A.    With Roberto Figueroa in the picture.

16 Q.    And where is Roberto Figueroa?

17 A.    Do you want me to circle him?

18 Q.    Sure.  You've circled the male in the white tank top and

19 the red shorts on the right side of the screen?

20 A.    That is correct.

21 Q.    If you could hit the clear button, please?  If we could

22 move on to Exhibit 568?  Is this a close-up image of Roberto

23 Figueroa in that same chair?

24 A.    Yes, it is.

25 Q.    Okay. Moving on to Exhibit 569, what is this photograph?

1   A.   That is the kitchen area.

2   Q.   Okay. So the living room would be right behind you?

3   A.   That is correct.

4   Q.   Now, there appears to be a door on the left side of this

5   photograph; is that correct?

6   A.   Yes, it is.

7   Q.   What room does that door go to?

8   A.   That's the little sitting room.

9   Q.   Okay. Move on to 570.  What is this a photograph of?

10  A.   Another angle of the kitchen and the door to the bathroom.

11  Q.   Okay. Where is the door to the bathroom?  You've made a

12  circle on the right side of the screen and you've actually

13  circled one of those red flip flops?

14  A.   That is correct.

15  Q.   If you could clear your mark, please?  Moving on to

16  Exhibit 571, what is this room?

17  A.   Sitting room and then the entrance to the garage.

18  Q.   So this is a sitting room off of the kitchen?

19  A.   That is correct.

20  Q.   And how would you get into the garage from here?

21  A.   The door right here.

22  Q.   And you've circled the open door in the middle of the

23  photo?

24  A.   That is correct.

25  Q.   Okay. If you could please clear your mark?  Exhibit 572,

1   what is this a photo of?

2   A.    The garage.

3   Q.    Okay. There appears to be a box on the floor underneath

4   the window of the garage?

5   A.    That is correct.

6   Q.    What type of box is that?

7   A.    A UPS Postal box.

8   Q.    Okay. We'll come back to that.  Can we go to 573?  What is

9   this a photograph of?

10  A.    That is a photograph of the downstairs bathroom with a

11  cell phone inside the sink.

12  Q.    Is that the bathroom that Roberto Figueroa was exiting as

13  you and your team entered the home?

14  A.    That is correct.

15  Q.    Move on to Exhibit 574, what is this a photograph of?

16  A.    The basement area.

17  Q.    Okay. Do there appear to be some boxes in the middle of

18  that photograph just to the left of a small child's slide?

19  A.    Yes, it does.

20  Q.    And what type of boxes are those?

21  A.    United States Postal boxes.

22  Q.    If we could move on to Exhibit 575, is this another

23  photograph of the basement?

24  A.    Yes, it is.

25  Q.    Just a different area of the basement?

1  A.   That is correct.

2  Q.   And does this also appear to depict a Postal box?

3  A.   Yes, it does.

4  Q.   Okay. If we can move on to Exhibit 576, what is this a

5  photograph of?

6  A.   This is a photograph of the upstairs bedroom, bedroom

7  number one, east side bedroom, which was identified as

8  Leitscha Poncedeleon's bedroom.

9  Q.   Okay. And Exhibit 577, is this a photograph of the second

10  bedroom upstairs?

11  A.   Yes, it is.

12  Q.   Okay. And were you able to determine whose bedroom this

13  was?

14  A.   Roberto Figueroa.

15  Q.   Moving on to Exhibit 578, what is this a photograph of?

16  A.   Another angle of the upstairs bedroom, second bedroom,

17  Roberto Figueroa's bedroom and the closet.

18  Q.   If we can move on to Exhibit 579, what is this a

19  photograph of?

20  A.   Inside the closet of Roberto Figueroa's bedroom where

21  there was a little crawl space.

22  Q.   That area was also searched by you and the team?

23  A.   Yes, it was.

24  Q.   Okay. Now were those the before photos you took when you

25  entered the home?

1  A.   Yes.

2  Q.   By before photos I mean photos taken before the search was

3  executed?

4  A.   That is correct.

5  Q.   Now, you mentioned earlier that upon searching the home

6  you recovered several items that included cocaine, firearms,

7  paperwork, drug paraphernalia and cell phones?

8  A.   Yes, ma'am.

9  Q.   How do you go about collecting those items as evidence?

10  A.   They're placed inside a evidence bag and a CR number is

11  put on the bag.

12  Q.   And is a CR number a unique identifying number for this

13  particular search warrant?

14  A.   Yes, it is.

15  Q.   And do you recall if the CR number was 2018-022623?

16  A.   Yes, it was.

17  Q.   That was the crime report number?

18  A.   Yes, it was.

19  Q.   Or CR number?  Now, once you've collected the items of

20  evidence what do you do with them?

21  A.   After they're collected they're turned into the Property

22  Clerk's Office.

23  Q.   Okay. And generally would those items be submitted to the

24  Property Clerk's Office in a sealed condition?

25  A.   Yes.

1   Q.    Are there ever times where something is submitted to the

2   Property Clerk's Office and it's not sealed in a bag?

3   A.    Yes.

4   Q.    When would that happen?

5   A.    When the item is too big for a bag.

6   Q.    Okay. Now, is the Property Clerk's Office a secure

7   facility?

8   A.    Yes, it is.

9   Q.    Okay. I'd like to go back to Exhibit 567, the photograph

10  of the living room.  Did you recover any items of evidence

11  from the living room?

12  A.    Yes, I did.

13  Q.    What was that?

14  A.    A phone sitting on the living room table.

15  Q.    And do you see that phone in this photo?

16  A.    Yes, I do.

17  Q.    Could you please circle it?  So you've circled a dark

18  object on the right side of the table?

19  A.    Yes, I did.

20  Q.    If you could clear your mark, please?  Investigator, what

21  type of phone was that?

22  A.    A flip phone.

23  Q.    Now, I'd ask you to take a look at the box on the ground

24  to your left.  That first item in the box should be marked

25  Exhibit 674.

1  A.    You said 674?

2  Q.    Yes.

3  A.    Yes.

4  Q.    You have that item?

5  A.    Yes, I do.

6  Q.    And do you recognize what Exhibit 674 is?

7  A.    Yes, I do.

8  Q.    What is it?

9  A.    It's the LG cellular flip phone that was located on the

10 living room table at 292 Barrington Street.

11 Q.    Okay. And, Investigator, if you could watch that mic

12 behind you, I think your shoulder is hitting it.  Thank you.

13 So that's the flip phone that you recovered from the living

14 room table?

15 A.    Yes, it is.

16 Q.    How do you know that's the phone you recovered from the

17 living room table?

18 A.    It's marked in an evidence bag with my signature on it --

19 with my initials on it over the bag.

20 Q.    Okay. And does it have the CR number for this case on the

21 bag?

22 A.    Yes, it does.

23 Q.    Okay. Does the bag appear to be in the same or

24 substantially the same condition as it was in when you

25 collected it on January 29th, 2018?

 1  A.    Yes, it does, other than the initials of Scottie Ferro.

 2  Q.    Who is Scott Ferro?

 3  A.    He's the -- our cellular phone technician.

 4  Q.    Does your seal appear to be intact?

 5  A.    Yes, it does.

 6  Q.    Did you tamper with the phone in any way while it was in

 7  your possession?

 8  A.    No, I did not.

 9  Q.    And you sealed that bag and submitted it to the Property

10  Clerk's Office?

11  A.    Yes, I did.

12  Q.    Other than the initials placed on the bag by Scott Ferro,

13  do you notice anything different?

14  A.    Just has the Government Exhibit on it.

15  Q.    The exhibit sticker?

16  A.    Yes.

17  Q.    Does the phone itself appear to be in the same condition?

18  A.    Yes, it does.

19  Q.    Okay.  Now, I'd like to have you take a look at

20  Exhibit 591, which is a photograph.

21  A.    Oh.

22  Q.    Do you recognize what's depicted in this photograph?

23  A.    Yes, I do.

24  Q.    What is it?

25  A.    That is a cellular phone and the ID of Leitscha

1  Poncedeleon.

2  Q.   And does that appear to be on a shelf or a bookshelf type

3  thing?

4  A.   Yes, it does.

5  Q.   Was that also in the living room?

6  A.   Yes, it was.

7  Q.   Did you collect that cell phone?

8  A.   Yes, I did.

9  Q.   How did the cell phone get to that bookcase?

10 A.   It was placed there by Investigator Briganti.

11 Q.   Okay. I'd ask you to take a look at Exhibit 672, which

12 should be the next item in the box.  And it's already been

13 received into evidence.  Do you have that item 672?

14 A.   Yes, I do.

15 Q.   Is that the cell phone depicted in Exhibit 591 that was

16 placed there by Investigator Briganti and you later collected?

17 A.   Yes, it does.

18          **MS. KOCHER:** Your Honor, may I place an exhibit on

19 the visualizer?

20          **THE COURT:** Yes.

21          **MS. KOCHER:** Thank you.

22 **BY MS. KOCHER:**

23 Q.   Investigator, I've placed into evidence what's been

24 received into evidence as Exhibit 10, a cell phone chart.  Do

25 you see the column at the top that says exhibit number?

1   A.    Yes, I do.

2   Q.    And do you see anywhere where Exhibit 672 is marked on

3   this exhibit?

4   A.    Yes, I do.

5   Q.    Where is that?

6   A.    Fourth column down.

7   Q.    Okay. And what is the phone number and user associated

8   with Exhibit 672?

9   A.    Phone number 685-4661 to Leitscha Poncedeleon.

10  Q.    Okay.  Now, if we could flip back to the Trial Director?

11  I'll have you take a look at Exhibit 570.  Now, this was the

12  kitchen of the home?

13  A.    Yes, it is.

14  Q.    Did you recover any items of evidence from the kitchen

15  area?

16  A.    We recovered paperwork and there was drug paraphernalia

17  which consisted of beakers, strainer, and a couple scales, and

18  rubber bands and baggies.

19  Q.    Okay. I'd like you to take a look at Exhibit 583.  What

20  are we looking at here in this photograph?

21  A.    That is a lower cabinet area in the kitchen which

22  contained the baggies and the vacuum sealer.

23  Q.    Okay.  You said it's a lower cabinet.  Is this the same

24  cabinet we were just looking at in Exhibit 570?

25  A.    Yes, it is.

1  Q.    Okay. Now, you mentioned there were baggies in this photo?

2  A.    That is correct.

3  Q.    What type of baggies?

4  A.    Larger ziplock baggies and vacuum seal bags.

5  Q.    Where are those?  So you've placed three circles on the

6  exhibit.  The first two are on the top shelf of that lower

7  cabinet?

8  A.    That is correct.

9  Q.    And are those the baggies that were stored in the cabinet?

10 A.    That is correct.

11 Q.    The third item that you circled is in the lower center

12 portion of the photograph.  It appears to be inside of a box?

13 A.    That is correct.

14 Q.    What was that item?

15 A.    Vacuum sealer.

16 Q.    Okay. What is a vacuum sealer?

17 A.    It takes the air out of -- when you put on the vacuum bag,

18 it takes the air out to seal the bag.

19 Q.    Okay. And why did you photograph that item?

20 A.    That item is used in the drug trade.

21 Q.    How so?

22 A.    They use the vacuum sealer to seal up narcotics and money.

23 Q.    Move on to Exhibit 584.  If you could clear your marks

24 please?  Is this a photograph of that same kitchen cabinet?

25 A.    Yes, on the other side.

```
 1  Q.    On the right side of the cabinet?
 2  A.    Correct.
 3  Q.    What were some of the items that you photographed here?
 4  A.    Beakers and a strainer.
 5  Q.    Could you please circle those items?  All right, so you've
 6  circled three items in the bottom half of the photograph that
 7  are actually on the floor; is that correct?
 8  A.    That is correct.
 9  Q.    And why did you photograph those items?
10  A.    Those are used in the processing of narcotics.
11  Q.    If you could please clear your mark?  All right, I'd ask
12  you to take a look at Exhibit 585.  What is this a photograph
13  of?
14  A.    A large quantity of baking soda.
15  Q.    Why did you take a photograph of the baking soda?
16  A.    This is more drug paraphernalia used in the processing of
17  narcotics.
18  Q.    Any narcotic in particular?
19  A.    Cocaine.
20  Q.    How many boxes of baking soda approximately are there in
21  this photo?
22  A.    13 boxes and one bag.
23  Q.    All right.  Now, I'd ask you to take a look at
24  Exhibit 603.  What is this a photograph of?
25  A.    A drawer at the desk in the kitchen.
```

1  Q.    Okay. And what was in the drawer?

2  A.    Two scales, rubber bands, a calculator.

3  Q.    And why did you photograph those items?

4  A.    Those items are also used for weighing of narcotics and

5  for packaging, the rubber bands.

6  Q.    Okay. Now, if we could go back to Exhibit 569?  Does this

7  photograph show the desk with the drawer that had the baggies

8  and the rubber bands in it?

9  A.    Yes, it does.

10  Q.    And where is that desk?

11  A.    In the middle of the picture.

12  Q.    You've placed a circle around it?

13  A.    Yes, I did.

14  Q.    All right, thank you.  If you could clear your mark?  Next

15  I'd like to have you take a look at Exhibit 607.  What is this

16  a photograph of?

17  A.    Pieces of paperwork that were located on top of the

18  refrigerator in the kitchen.

19  Q.    And Exhibit 623, what is this a photograph of?

20  A.    It's a photograph of a grinder and an unknown substance in

21  a bag.

22  Q.    Why did you photograph the grinder?

23  A.    It is used in the processing of narcotics.

24  Q.    Okay. If we could go to Exhibit 572?  This is the garage

25  of the home?

1  A.   Yes, it was.

2  Q.   Now, earlier you mentioned that there was a Postal box on

3  the floor underneath the window there?

4  A.   Yes, it is.

5  Q.   Could you please circle that item?  You've placed a circle

6  around the open box on the ground underneath the window,

7  correct?

8  A.   That is correct.

9  Q.   If you could please clear your mark?  Was there any Postal

10  markings or address location on that box?

11  A.   No, there was not.  It was ripped off.

12  Q.   Okay. If we could go to Exhibit 586, is this a closer-up

13  image of that same box in the garage?

14  A.   Yes, it is.

15  Q.   Okay. And you mentioned that the Postal labels appeared to

16  be ripped off?

17  A.   That is correct.

18  Q.   Could you please mark where those Postal labels were

19  ripped off?  So you've circled essentially the middle of the

20  box, you can see there's a -- what used to have been a label

21  in the middle and then the lower right corner of the box?

22  A.   That is correct.

23  Q.   If you could clear your mark, please?  I'd like to move on

24  to Exhibit 587.  Is this another photograph of that same box?

25  A.   Yes, it is.

1  Q.   And this also shows the ripped off labels?

2  A.   Yes, it does.

3  Q.   Okay. If we could go to Exhibit 588?  What are we looking

4  at in this photo?

5  A.   We're looking at several boxes, empty boxes of M&M's and a

6  smaller half kilo press.

7  Q.   Where are the M&M boxes?  You've placed two circles: One

8  in the upper right corner and the second along the right side

9  of the photograph?

10 A.   That is correct.

11 Q.   And you mentioned a kilo press.  Where is that?  You've

12 circled the gray item in the middle of the photograph?

13 A.   That is correct.

14 Q.   Okay. And what is a kilo press used for?

15 A.   It is a machine used to compress, to compress the

16 narcotics for shipping.

17 Q.   We can move on to Exhibit 589.  What is this a photograph

18 of?

19 A.   It's a photo of used packaging inside the tote in the

20 garage.

21 Q.   Okay. And you said used packaging.  What do you mean by

22 that?

23 A.   After the narcotics are taken from the packaging, the

24 packaging is thrown into the garbage.

25 Q.   What was the packaging material?

1   A.    Carbon paper and plastic.

2   Q.    Okay. And those items appear to be in this green recycling

3   bin?

4   A.    That is correct.

5   Q.    Okay. Now, the last photo that we looked at, Exhibit 589,

6   was that also taken in the garage?

7   A.    Yes, it was.

8   Q.    All right. I'd like to go back to Exhibit 573, the first

9   floor bathroom.  You mentioned that there was a cell phone in

10  the sink?

11  A.    Yes, there was.

12  Q.    Ask you to take a look at Exhibit 590.  What's this a

13  photograph of?

14  A.    A closer picture of the cell phone inside the sink in the

15  downstairs bathroom.

16  Q.    Okay.  And I believe you mentioned earlier this was the

17  same bathroom that Roberto Figueroa was exiting when you

18  entered the house?

19  A.    That is correct.

20  Q.    Was the cell phone in the sink collected as evidence?

21  A.    Yes, it was.

22  Q.    If you wouldn't mind looking in that box on the floor

23  there for Exhibit 673?  You see that?

24  A.    Yes, I do.

25  Q.    What is Exhibit 673?

1  A.    A black Samsung cellular telephone.

2  Q.    Okay. Is that the phone that you recovered from the sink

3  in Exhibit 590?

4  A.    Yes, it is.

5  Q.    And how do you know that's the same phone?

6  A.    It's in the evidence bag and the CR number is on the bag.

7  Q.    Okay. Does the phone in the bag appear to be in the same

8  condition as it was in when you collected it from the

9  bathroom?

10  A.    Yes, it does.

11  Q.    Okay. And does it appear to be the same phone that's

12  depicted in Exhibit 590?

13  A.    Yes, it does.

14  Q.    Okay. Now, when you collected that you put it in an

15  evidence bag and sealed it?

16  A.    Yes, I did.

17  Q.    And submitted it to the property clerk?

18  A.    Yes, it was.

19  Q.    Do you notice anything different about your bag when you

20  sealed it up?

21  A.    It has Scottie Ferro's initials on it now and our

22  CR number.

23  Q.    Okay. Other than Investigator Ferro's markings, does the

24  bag appear to be in the same or substantially the same

25  condition?

1  A.    Yes, it does.

2  Q.    Does the phone itself also appear to be in the same or

3  substantially the same condition?

4  A.    Yes, it does.

5  Q.    Did you also collect evidence from the basement area of

6  the home which is depicted in Exhibit 574?

7  A.    Yes, I did.

8  Q.    What were some of the things that you recovered from the

9  basement?

10 A.    In the basement we recovered almost a kilogram of cocaine;

11 baggies; Postal boxes; and paperwork.

12 Q.    Okay. I'd like to have you take a look at Exhibit 592.

13 What is depicted in this photo?

14 A.    That is a Home Depot bucket where a large amount of

15 cocaine was located.

16 Q.    Okay. And was this in the basement of 292 Barrington?

17 A.    Yes, it was.

18 Q.    Okay.  I'd ask you to take a look at Exhibit 593, the next

19 photo.  What is this a photograph of?

20 A.    That is a closer picture of the inside of the bucket.

21 Q.    Was there anything besides cocaine inside the bucket?

22 A.    Empty baggies and another unknown substance down at the

23 bottom.

24 Q.    And it appears that there's some sort of like Tupperware

25 thing on top of all of that in that photo?

1  A.   That's correct.

2  Q.   Next I'd like to show you Exhibit 594.   What is this a

3  photograph of?

4  A.   The items, closer picture of the items that was inside the

5  bucket.

6  Q.   Okay.   Now, you mentioned baggies that were in the bucket.

7  What type of baggies were those?

8  A.   The smaller ziplock baggies with the little ying-yang sign

9  on them.

10 Q.   And are those depicted on the left half of the photograph

11 here?

12 A.   That is correct.

13 Q.   You've placed a circle around them, correct?

14 A.   That is correct.

15 Q.   Okay. And they're in like a Tupperware bowl?

16 A.   That is correct.

17 Q.   And where is the cocaine and the unknown substance in this

18 photograph?

19 A.   There's cocaine here, here, here, here; and the unknown

20 substance there under the baggies.

21 Q.   So the items that you circled identifying as cocaine you

22 placed two circles inside the clear Tupperware bowl in the

23 same container with those ying-yang bags?

24 A.   That is correct.

25 Q.   And then inside the orange Depot bucket you placed a

1   circle around appears to be a gallon size ziplock bag with a

2   white substance and then a smaller circle right below that

3   ziplock bag?

4   A.   That is correct.

5   Q.   The item you marked as the unknown substance you placed a

6   circle to the very right inside the bucket but on the right

7   side of it?

8   A.   That is correct.

9   Q.   Okay. If you could please clear your marks?  Could you

10   explain how the cocaine was packaged?

11   A.   It was --

12             **MR. VACCA:** Objection, Your Honor.

13             **THE COURT:** Overruled.  Go ahead.

14             **THE WITNESS:** It was packaged in larger ziplock

15   baggies and smaller ziplock baggies for sale.

16   **BY MS. KOCHER:**

17   Q.   Okay.  The smaller baggies, the ones you circled in the

18   clear Tupperware bowl, how were those ones packaged?

19   A.   In quantities of 62 grams.

20   Q.   And those appear to be in like a sandwich bag --

21   A.   That is correct.

22   Q.   -- knotted?

23   A.   That is correct.

24   Q.   The larger quantity was in the bucket in this photo?

25   A.   That is correct.

Q.   Did you collect the items of evidence from this orange
Home Depot bucket?

A.   Yes, I did.

Q.   If you could take a look in the box on the ground there
for Exhibit 648?  What is 648?

A.   This is the unknown substance in the bottom of the bucket.

Q.   Okay. And how did you go about collecting that unknown
substance?

A.   After the cocaine was taken out of the bucket we poured
the other substance inside a ziplock baggie, a larger ziplock
bag.

Q.   Okay. So the unknown substance that is contained in
Exhibit 648, was that just loose in the bottom of the bucket?

A.   That is correct.

Q.   Okay. Now, does the substance contained in Exhibit 648
appear to be the same as the substance in Exhibit 594?

A.   Yes, it does.

Q.   And does it appear to be in the same or substantially the
same condition when you collected it on January 29th?

A.   Yes, it does.

Q.   Okay.  Now, how about the evidence bag that it's in?  Does
the evidence bag appear to be in the same or substantially the
same condition as it was in?

A.   Yes, it does.

Q.   Do you notice anything different about the evidence bag

1  from when you sealed it up and submitted it to the property

2  clerk?

3  A.    It has the Monroe County Lab stickers on it and the

4  Government Exhibit sticker on it.

5  Q.    Okay. Also appear to be any blue tape from the Monroe

6  County Crime Lab?

7  A.    Yes, it does.

8  Q.    Other than the blue tape, the yellow lab sticker and the

9  Government Exhibit sticker, does the packaging appear to be in

10  the same or substantially the same condition?

11  A.    Yes, it does.

12  Q.    And is your seal still intact?

13  A.    Yes, it is.

14  Q.    Now, if you could take a look at Exhibit 650, which should

15  also be in that box down there.  Do you recognize that item?

16  A.    Yes, I do.

17  Q.    What is it?

18  A.    This is the cocaine that was taken out of the Home Depot

19  bucket.

20  Q.    How do you know that's the cocaine you took out of the

21  Home Depot bucket?

22  A.    It's still in the bag with my CR number on it and my

23  initials on the bag.

24  Q.    And does the cocaine in Government's Exhibit 650 appear to

25  be the same as the cocaine depicted in Exhibit 594?

1  A.    Yes, it does.

2  Q.    Does it also appear to be in the same or similar condition

3  as it was in when you collected it on January 29th?

4  A.    Yes, it does.

5  Q.    How about your packaging?  Do you notice anything

6  different about the exhibit bag that you sealed and placed

7  into the Property Clerk's Office?

8  A.    It has the Monroe County Laboratory seal on it now.

9  Q.    The blue tape and the yellow lab sticker?

10 A.    That is correct.

11 Q.    Other than that do you notice anything different about

12 Exhibit 650?

13 A.    It also has the blue Monroe County Lab sticker on the

14 bottom, the blue sticker, and the Government Exhibit sticker

15 on it.

16 Q.    Okay. So the blue sticker you just described, is that the

17 lab tape?

18 A.    Yes, it is.

19 Q.    Okay. Other than the blue lab tape or the yellow lab

20 sticker or the exhibit sticker, does it appear to be in the

21 same or substantially the same condition?

22 A.    Yes, it does.

23 Q.    And if you can look in that box next to see if you can

24 find Exhibit 680?

25 A.    I'm sorry, what was the number again?

1  Q.    680.  Do you have that?

2  A.    Yes, I do.

3  Q.    What is Exhibit 680?

4  A.    These are the empty baggies with the ying-yang sign on

5  them that was taken out of the bucket.

6  Q.    The Home Depot bucket depicted in Exhibit 594?

7  A.    Yes, it is.

8  Q.    Does that item appear to be in the same or substantially

9  the same condition as it was in when you collected it on

10  January 29th?

11  A.    Yes, it is.

12  Q.    Notice anything different about Exhibit 680?

13  A.    Other than the Government Exhibit sticker on it, it's all

14  the same.

15  Q.    Okay.

16          **MS. KOCHER:** Your Honor, I would offer Government's

17  Exhibit 680.

18          **MR. VACCA:** No objection, Your Honor.

19          **THE COURT:** Exhibit 680 will be received.

20          (**WHEREUPON**, Government's Exhibit 680 was received

21  into evidence).

22          **MS. KOCHER:** May I approach the witness and place

23  680 on the visualizer?

24          **THE COURT:** Yes.

25          **MS. KOCHER:** Thank you.

1   BY MS. KOCHER:

2   Q.   Investigator, I've placed Government's Exhibit 680 on the

3   visualizer.   These are those ying-yang baggies you described

4   earlier?

5   A.   That is correct.

6   Q.   Okay. How many ying-yang baggies do you think are in this

7   exhibit?

8   A.   Over 100.

9   Q.   Okay. And why did you collect these baggies?

10  A.   They match the baggies that we had received before from --

11  during the wiretap.

12  Q.   Are these bags that are commonly used to package

13  narcotics?

14  A.   Yes, they are.

15  Q.   If we could go back to 592?   This photo you indicated you

16  collected the contents of the Home Depot bucket?

17  A.   That is correct.

18  Q.   Did you collect anything else from this photograph?

19  A.   Little baggie with the -- it's kind of hard to say the

20  word, Albuterol --

21  Q.   Albuterol?

22  A.   Yes.

23  Q.   You circled a ziplock -- gallon size ziplock bag to the

24  left of the Home Depot bucket?

25  A.   That is correct.

1   Q.   Okay. If you could hit the clear button?  I'd like to show

2   you Exhibit 595.  Is this a close-up image of that same bag

3   that was next to the Home Depot bucket?

4   A.   Yes, it is.

5   Q.   And next I'll show you 596.  Is this another close-up of

6   that bag containing the Albuterol packages?

7   A.   That is correct.

8   Q.   Did you recover any packaging materials from the basement

9   area of the home?

10   A.   Yes, we did.

11   Q.   I'd like to show you 597.  What is depicted in this

12   photograph?

13   A.   More FoodSaver -- sorry, FoodSaver vacuum seal bags.

14   Q.   Could you circle where those are in this photo?  You've

15   made a very organic circle around the freezer -- the FoodSaver

16   bags?

17   A.   That is correct.

18   Q.   And those are in boxes?

19   A.   Yes.

20   Q.   About how many boxes of FoodSaver bags are in this

21   photograph?

22   A.   Seven.

23   Q.   Okay. If you could hit the clear button, please?

24          **THE COURT:** What's an organic circle, by the way?

25          **MS. KOCHER:** Just not very round, I guess.  More

1  like an amoeba circle.

2           **THE COURT:** Never heard of that.

3  **BY MS. KOCHER:**

4  Q.   Moving on to Exhibit 598, what is in this photograph?

5  A.   A large quantity of alcohol and latex gloves.

6  Q.   Okay. And why did you photograph these items?

7  A.   These items are used in the processing of narcotics.

8  Q.   What about the gloves was significant?

9  A.   Gloves are placed on the dealer's hands so the substance

10  that you're cutting or processing doesn't seep into your

11  system.

12  Q.   I believe you also mentioned that you collected some

13  paperwork from the basement area?

14  A.   Yes, I did.

15  Q.   I'd like to show you Exhibit 599.  Is this some of that

16  paperwork that you observed down there?

17  A.   Yes, it is.

18  Q.   And if we could move on to Exhibit 600?  What is depicted

19  in this photograph?

20  A.   Paperwork and cellular phones.

21  Q.   Okay. And these items appear to be on a dryer?

22  A.   Washing machine.

23  Q.   Okay, thank you.  Did you collect some of this paperwork

24  that's on the washing machine?

25  A.   Yes, I did.

1   Q.   All right. If you could take a look back in that box for

2   Exhibit 696?  Do you have that there?

3   A.   Yes, I do.

4   Q.   Do you recognize Exhibit 696?

5   A.   Yes, I do.

6   Q.   What is it?

7   A.   This is the paperwork that's depicted in the picture.

8   Q.   The picture being Exhibit 600?

9   A.   That is correct.

10  Q.   Now, does the paperwork in Exhibit 696 appear to be in the

11  same or substantially the same condition as it was in when you

12  collected it that day?

13  A.   Yes, it does.

14  Q.   Now, do you also see some documents in that exhibit you're

15  holding that are marked 696A, B, C, D, and E?

16  A.   Yes, I do.

17  Q.   Do those documents appear to be documents you collected

18  from the area depicted in the photograph Government's Exhibit

19  600?

20  A.   Yes, it does.

21  Q.   Do they appear to be in the same or substantially the same

22  condition as they were in when you collected them that day?

23  A.   Yes, they do.

24          MS. KOCHER: Your Honor, I'd offer Government's

25  Exhibit 696, which specifically it includes several documents,

1  but we have also specifically marked 696A, B, C, D and E.

2         **MR. VACCA:** I'd object, Your Honor, on grounds of

3  relevancy.

4         **THE COURT:** Overruled.  Exhibits 696, 696A, 696B,

5  696C, 696D, 696E will be received.

6         (**WHEREUPON**, Government's Exhibits 696, 696A, 696B,

7  696C, 696D, and 696E were received into evidence).

8         **MS. KOCHER:** We have uploaded those exhibits into

9  our Trial Director.

10 **BY MS. KOCHER:**

11 Q.   So, Investigator, I'll start with Exhibit 696A.  Do you

12 see this document?

13 A.   Yes, I do.

14 Q.   And does that appear to be a copy of the same document the

15 original that you identified just now that's physically marked

16 696A?

17 A.   Yes, it is.

18 Q.   Okay. And what is this document?

19 A.   This is a County of Monroe State of New York letter from

20 the Public Defender's Office addressed in regards to Grant

21 Mickael.

22 Q.   And is there an address associated with Grant Mickael?

23 A.   Yes, it is.

24 Q.   What address is that?

25 A.   229 Rugby Avenue.

1  Q.   And that's in Rochester, New York?

2  A.   Correct, 14619.

3  Q.   Okay. And Mickael that's spelled M-I-C-K-A-E-L?

4  A.   Yes, it is.

5  Q.   Next I'd like to show you Exhibit 696B.  Now, does the

6  copy on the monitor appear to be the same document that you

7  previously identified as 696B?

8  A.   Yes, it does.

9  Q.   And what is this document?

10  A.   This is a document from the ESL Federal Credit Union for

11  Jose R. Olivencia Cruz of 360 St. Paul Street, apartment 1003,

12  Rochester, New York 14605.

13  Q.   Okay. And does this appear to be payment slips?

14  A.   Yes, it does.

15  Q.   Okay. Let's move on to Exhibit 696C, what is this

16  document?

17  A.   More payment slips for Jose R. Olivencia Cruz of 360

18  St. Paul Street, apartment 1003, Rochester, New York 14605

19  from ESL Federal Credit Union.

20  Q.   Okay. Next if we could look at 696D?  What is -- does this

21  document appear to be the same as the physical document you

22  identified earlier?

23  A.   Yes, it is.

24  Q.   All right.  And what is 696D?

25  A.   This is a ESL loan payment confirmation for Jose R.

1  Olivencia Cruz with his member number dated 9/7 of '17.

2  Q.    This is also from the ESL Federal Credit Union?

3  A.    Yes, it is.

4  Q.    Next I'd like to have you take a look at Exhibit 696E.

5  Now does this document that's been uploaded into our Trial

6  Director appear to be the same document that you previously

7  identified as being marked as Exhibit 696E?

8  A.    Yes, it does.

9  Q.    And what is this document?

10 A.    This is a document from Progressive Insurance for Jean K.

11 Pizarro of 292 Barrington Street.

12 Q.    Okay. And that's Rochester, New York?

13 A.    Yes, 14607.

14 Q.    And Pizarro is P-I-Z-A-R-R-O?

15 A.    Yes, it is.

16 Q.    If we could go back to Exhibit 604?  I'm sorry, skip ahead

17 to 604.  What are we looking at here?

18 A.    That is a tote that contained cell phones and keys that

19 were located in the basement of 292 Barrington Street.

20 Q.    Okay.  Now, did you collect any of those cell phones?

21 A.    Yes, I did.

22 Q.    All right. If you wouldn't mind taking a look in your box

23 on the ground there for Exhibit 671?  I think the sticker

24 might actually be on the phone itself.

25 A.    That is correct.

1  Q.    Do you see the phone marked 671?

2  A.    Yes, I do.

3  Q.    Is that in a bag with some other cell phones?

4  A.    Yes, it is.

5  Q.    How many phones?

6  A.    Another phone and the case.

7  Q.    And are those the phones that are depicted in Government's

8  Exhibit 604?

9  A.    Yes, it is.

10 Q.    Now, the phone that's marked Exhibit 671, does that appear

11 to be in the same or substantially the same condition as it

12 was in when you collected it on January 29th?

13 A.    Yes, it does.

14 Q.    Anything that you notice different about the phone itself?

15 A.    Other than the Government Exhibit 671 stamped to it and

16 the white sticker on the front.

17 Q.    Okay. Okay.  Now, when you took custody of that phone did

18 you tamper with it in any way?

19 A.    No, I did not.

20 Q.    And was it ultimately sealed up in the bag with the other

21 phone and the case and turned into the Property Clerk's

22 Office?

23 A.    That is correct.

24 Q.    Does your seal appear to be intact?

25 A.    Other than it was opened to put the sticker on the phone.

1  Q.    Okay. And that was done during trial prep?

2  A.    Yes, it was.

3  Q.    Okay. Do you notice any other initials on the bag?

4  A.    Scottie Ferro's initials.

5  Q.    Okay. Investigator Ferro's initials would have been put on

6  after you turned it into the Property Clerk's Office?

7  A.    That is correct.

8  Q.    All right.  Thank you, Investigator.  Next I'd like to

9  show you Exhibit 605.  If you could hit the clear button on

10  your monitor?  Thank you.  What are we looking at here in

11  Exhibit 605?

12  A.    A tote that was located in the basement that contained

13  numerous unused empty ziplock bags.

14  Q.    And what type of baggies were those?

15  A.    Baggies for packaging of narcotics.

16  Q.    Were they big bags?  Little bags?

17  A.    Different sizes.

18  Q.    Okay. Did you notice any markings on the bags that are

19  contained in the Tupperware container in Exhibit 605?

20  A.    They were clear bags, they were bags that had the

21  ying-yang sign on them and like the little blue numbers on

22  them and blue -- blue designs on them.

23  Q.    Okay.  Now, why did you take a photograph of this item?

24  A.    It was drug paraphernalia.

25  Q.    Did you collect the Tupperware container that's depicted

1   in Exhibit 605?

2   A.   Yes, I did.

3   Q.   How did you go about collecting that item of evidence?

4   A.   Once it was photographed, took it and brought it along

5   with us.

6   Q.   Okay. And do you see the bin to your left marked

7   Exhibit 679?

8   A.   Yes, I do.

9   Q.   Does that Tupperware bin appear to be the same bin

10   depicted in Exhibit 679?

11   A.   Yes, it does.

12   Q.   Do you notice anything different about the bin or its

13   contents?

14   A.   Other than the property clerk seal on it or sticker on it.

15   Q.   Okay. And the Government Exhibit sticker as well?

16   A.   That is correct.

17   Q.   Okay.

18   A.   That is correct.  I'm sorry.

19   Q.   Why wasn't that Tupperware placed in a sealed bag?

20   A.   The items wouldn't be able to fit in a bag.

21   Q.   Okay. Too big?

22   A.   Yes.

23   Q.   Now, the baggies that are contained in Exhibit 679, does

24   that -- those appear to be the same as when you collected them

25   on January 29th?

1   A.   Yes, they do.

2              **MS. KOCHER:** Your Honor, I'd offer Exhibit 679 and

3   its contents.

4              **MR. VACCA:** No objection, Your Honor.

5              **THE COURT:** Exhibit 679 will be received.

6              (**WHEREUPON**, Government's Exhibit 679 was received

7   into evidence).

8   **BY MS. KOCHER:**

9   Q.   Investigator, you mentioned that there were baggies within

10  the Tupperware container used for packaging narcotics.   How

11  many baggies do you think were in that Tupperware container?

12             **MR. VACCA:** Objection, Your Honor.

13             **THE COURT:** Overruled.   He can answer that.

14             **THE WITNESS:** Over thousands.

15             **MS. KOCHER:** Your Honor, may I approach the witness

16  and place some of the baggies on the visualizer?

17             **THE COURT:** Yes.

18             **MS. KOCHER:** Thank you.

19  **BY MS. KOCHER:**

20  Q.   All right.   Investigator, so I've placed some of the items

21  from the Tupperware container on the visualizer.   Can you

22  explain what we're looking at here?

23  A.   Small ziplock baggies with different designs on them.

24  Q.   Okay. And can you tell what some of those designs are?

25  A.   The -- here is the blue number one.

1   Q.   That's in the lower right corner?

2   A.   That's correct.

3   Q.   Okay.

4   A.   This one is the red with the 420 symbol on it.

5   Q.   Okay. That's just above on the upper right of your screen?

6   A.   Correct.  I believe this is the blue design, looks like

7   the devil; and the black and white design here.

8   Q.   Okay. So the blue design is in the upper left and the

9   black and white design is in the lower left?

10  A.   That is correct.

11  Q.   Okay. Now, I've placed just the blue design bag on the

12  visualizer now.  Investigator, that -- those blue bags, the

13  bags with the little blue designs on them, how were they

14  packaged within this item?

15  A.   They're packaged for street sale.

16  Q.   These are empty baggies?

17  A.   Yes, they are.

18  Q.   And all these baggies appear to be in a smaller bag within

19  a larger ziplock bag?

20  A.   Yes, they are.

21  Q.   How many baggies do you think were in this one bag?

22          **MR. VACCA:** Objection, Your Honor.

23          **THE COURT:** Overruled.  He can answer.

24  **BY MS. KOCHER:**

25  Q.   Approximately how many baggies do you think would be in

1  this item that we're looking at here?

2  A.    Over 100.

3  Q.    And how many of those larger baggies are contained in the

4  Tupperware container that's been received as Exhibit 679?

5  A.    More than 25.

6  Q.    Okay. Now, within Exhibit 679, that Tupperware container,

7  are those baggies in like larger shopping bags or plastic

8  bags?

9  A.    Yes, they are.

10  Q.    Could you pull out some of those so the jury can see?  You

11  pulled out a large garbage size bag and also is that two black

12  shopping bags?

13  A.    That is correct.

14  Q.    And those all contain the same type of baggies that were

15  just on the visualizer?

16  A.    Yes, they do.

17  Q.    Were there some of those baggies that had a ying-yang

18  stamp?  I thought you had mentioned that earlier?

19  A.    Yes, they were.

20  Q.    Are those the same type of ying-yang bag that was from the

21  Home Depot bucket that were found in the Home Depot bucket?

22  A.    That is correct.

23  Q.    Next I'd like to show you on the Trial Director what's

24  been received into evidence photograph 606.  What is this a

25  photograph of?

1  A.    Paperwork located in the basement of 292 Barrington

2  Street.

3  Q.    Okay. And did you collect some of that paperwork?

4  A.    Yes, I did.

5  Q.    If you could take a look at the box on the floor there and

6  let me know if you see Exhibit 681 and 694.

7  A.    Yes, I do.

8  Q.    Okay. And what are those items?

9  A.    These are the items that were on the dryer in the basement

10 of 292 Barrington.

11 Q.    Starting with Exhibit 681, which item is marked 681?

12 A.    The red organizer.

13 Q.    Okay. Could you please circle that item on the photograph

14 606?  So you've circled the red plastic file organizer on the

15 left of the screen?

16 A.    That is correct.

17 Q.    And which item is marked Exhibit 694?

18 A.    The binder with the footprints on it.

19 Q.    Okay. And you've placed a circle around the footprint

20 notebook just to the right of the red file organizer?

21 A.    Yes, I did.

22 Q.    Okay. Now, do Exhibits 681 and 694 appear to be in the

23 same or substantially the same condition as they were in when

24 you collected them back on January 29th?

25 A.    Yes, they do.

1  Q.   And how about the contents of those items?  Do those also

2  appear to be the same?

3  A.   Yes, they do.

4         **MS. KOCHER:** Your Honor, at this time I'd offer

5  Exhibit 681 and 694.

6         **MR. VACCA:** I object, Your Honor, on grounds of

7  relevancy and foundation.

8         **THE COURT:** Exhibit 681 and 694 will be received.

9  Objection is overruled.

10        (**WHEREUPON**, Government's Exhibit 681 and 694 were

11  received into evidence).

12  **BY MS. KOCHER:**

13  Q.   Investigator, 681 -- do you see what's been marked 681A

14  and 681B?

15  A.   Yes.

16  Q.   Do those two documents appear to be the same or

17  substantially the same when you collected them?

18  A.   Yes, they do.

19  Q.   I'd like to show you what's been marked as Exhibit 681A

20  and this is a document within 681?

21  A.   Yes, it is.

22  Q.   Is what's on the Trial Director appear to be the same

23  document that is marked 681A in your hand?

24  A.   Yes, it is.

25  Q.   What is this document?

1  A.   This is a statement addressed to Leitscha Poncedeleon of

2  145 Liberty Pole Way, apartment 4, Rochester, New York 14604

3  dated 4/3 of 2017.

4  Q.   Okay.

5          THE COURT: Are you moving the admission of 681A and

6  B?

7          MS. KOCHER: Yes, Your Honor, yes, 681A and 681B,

8  which were the contents of 681.

9          THE COURT: Mr. Vacca?

10          MR. VACCA: No objection, Your Honor.

11          THE COURT: Exhibit 681A and 681B will be received.

12          (WHEREUPON, Government's Exhibit 681A and 681B were

13  received into evidence).

14          MS. KOCHER: Thank you.

15  BY MS. KOCHER:

16  Q.   Investigator, next I'd like you to look at 681B.  Does

17  what's been uploaded into the Trial Director appear to be the

18  same document that you have in your hand there and that is

19  marked 681B?

20  A.   Yes, it is.

21  Q.   And what is Exhibit 681B?

22  A.   Another bank statement for Leitscha Poncedeleon of 292

23  Barrington Street, Rochester, New York 14607 dated 4/26 of

24  '17.

25  Q.   Okay.  So this document is dated just a few weeks after

1  the last document we looked at, 681A?

2  A.   That is correct.

3  Q.   And the name on both of those documents is the same?

4  A.   Yes, it is.

5  Q.   But the address has changed?

6  A.   Yes, it has.

7  Q.   Investigator, 694, that footprint notebook, why did you

8  collect that item of evidence?

9  A.   Inside the notebook was a drug ledger.

10          **MS. KOCHER:** Your Honor, may I approach the witness

11  and display some pages from 694?

12          **THE COURT:** Yes.

13          **MS. KOCHER:** Thank you.

14  **BY MS. KOCHER:**

15  Q.   All right.  Investigator, I've placed the first full page

16  of Exhibit 694 on the visualizer.  Could you read the first

17  few lines for us?

18  A.   The first line dated 8/22 or 8/22 it says Marke equals 4

19  equals 8.000 minus 6.000 equals 2,000 minus 1,000 plus one and

20  a half duro equals zero.

21  Q.   Okay.

22  A.   Second line 8/23 Marke equals 3 equals 6.000 minus 6.000

23  equals zero.

24          Third line 8/24 Diente equals 2 plus vieja equals 3

25  equals 23 equals 9.200 minus 9.200 equals zero 8/26 .

1 Q.    Okay. And Marke was M-A-R-K-E?

2 A.    That is correct.

3 Q.    And I believe you said -- that last line you were reading,

4 *vieja* is V-I-E-J-A?

5 A.    You mean in the middle or the third line?

6 Q.    The third line you read, the last one that you read?

7 A.    D-I-E-N-T-E.

8 Q.    Right.

9 A.    In the middle is V-I-E-J-A.

10 Q.    Yeah.

11 A.    Yes.

12 Q.    Thank you.  So this appears to be a date followed by a

13 name and several numbers?

14 A.    That is correct.

15 Q.    Now, this page goes on in a similar type of layout,

16 correct?

17 A.    That is correct.

18 Q.    Are other pages in the notebook similar?

19 A.    Yes, they are.

20 Q.    Okay. And there also appears to be pink writing, like a

21 pink highlighter writing on this page as well?

22 A.    Yes.

23 Q.    What word is written in the pink?

24 A.    The top it says Pago, P-A-G-O.  And in the middle P-A-G-E

25 or P-A-G-E or P-A-G-O.

1  Q.   That's written appears three times on this page?

2  A.   That is correct.

3           MS. KOCHER: Your Honor, would you like me to keep

4  going or this is a good time for a break?

5           THE COURT: This might be a good time for a break.

6  Ladies and gentlemen, at this time we'll take a recess.  In

7  the meantime, do not discuss the matter or allow anybody to

8  discuss the matter with you.

9           The jury may step down.

10          (WHEREUPON, there was a pause in the proceeding).

11          (WHEREUPON, the defendant is present).

12          THE COURT: Bring the jury out.  You can bring the

13 witness back as well.

14          (WHEREUPON, the jury is present).

15          THE COURT:  You may continue.

16          MS. KOCHER: Thank you.

17 BY MS. KOCHER:

18 Q.   If we can switch back to the Trial Director?

19 Investigator, we're at Exhibit 574, so this is again the

20 basement area of 292 Barrington?

21 A.   That is correct.

22 Q.   And you mentioned that there were some Postal boxes in the

23 basement, correct?

24 A.   Yes.

25 Q.   How many Postal boxes did you locate in the basement?

1   A.   There was four.

2   Q.   And did they all have address labels on them?

3   A.   I believe two of them did.

4   Q.   Okay. Of the two that had labels do you recall what the

5   delivery addresses were for them?

6   A.   One was 59 Fernwood Avenue, and one was 286 Garson Avenue.

7   Q.   Okay. Now, in Exhibit 574 do you see any of those Postal

8   boxes?

9   A.   Yes, I do.

10  Q.   Those are just to the left of the slide there?

11  A.   Yes, that is correct.

12  Q.   Would you mind circling the general area where they are?

13  Okay, so you've circled just to the left of the slide there's

14  a stack of Postal boxes, and then also to the right of the

15  photograph there appears to be a partial Postal box visible?

16  A.   That is correct.

17  Q.   Okay. I'd like to go to Exhibit 601.  If you could clear

18  your marks?  Exhibit 601 a closer-up image of the boxes that

19  were to the left of the child's slide?

20  A.   That is correct.

21  Q.   How many boxes are in this photograph?

22  A.   Three.

23  Q.   And would you mark -- just place a mark on each of those

24  three boxes?  And you've -- okay, so you've placed, I think,

25  was an attempted 1?

1   A.    Yes.

2   Q.    The box that's closest to us in this photo on the top

3   half; then you've placed a number two on the box underneath

4   that one; and there's a number three at the back of the

5   photograph and there appears to be a white basket on top of

6   it?

7   A.    That is correct.

8   Q.    If you could hit the clear button?  If we could move to

9   Exhibit 602?  Is this another angle of those same three boxes?

10  A.    Yes, it is.

11  Q.    And can you see address labels on any of these three boxes

12  in this photograph?

13  A.    On the two bottom boxes.

14  Q.    Okay. The two boxes that are on the ground?

15  A.    That is correct.

16  Q.    I'd like to show you -- Investigator, if I could show you

17  what's not been received into evidence as Exhibit 630 and 631.

18  Do you recognize what those two photographs are of?

19  A.    The postage labels on the two boxes that were in the

20  basement of 292 Barrington Street.

21  Q.    Okay. So those photographs are closer-up images of the two

22  boxes that were in Exhibit -- in those prior exhibits we

23  looked at?

24  A.    That is correct.

25  Q.    Do those photographs fairly and accurately depict the way

1  that the boxes and the labels on them looked on January 29th,

2  2018?

3  A.   That is correct.

4          **MS. KOCHER:** Your Honor, I'd offer Exhibit 630 and

5  631.

6          **MR. VACCA:** Objection, Your Honor, on grounds of

7  relevancy and foundation.

8          **THE COURT:** Overruled.  Exhibit 630 and 631 will be

9  received.

10          (**WHEREUPON**, Government's Exhibit 630 and 631 were

11  received into evidence).

12  **BY MS. KOCHER:**

13  Q.   I'd like to show you what's been received into evidence as

14  Exhibit 630.  Which box is this one we're looking at here?

15  A.   This is one of the boxes located in the basement of 292

16  Barrington Street.

17  Q.   Okay. And where was this box addressed to?

18  A.   To Julio Vargas of 286 Garson Avenue, Rochester, New York

19  14609.

20  Q.   Okay. And are you also able to see a tracking number --

21  we'll zoom in on the label on the upper right of that box.

22  Do you see a tracking label associated with this package as

23  well?

24  A.   Yes, I do.

25  Q.   And what is the tracking number associated with this

1  package?

2  A.   9505 5114 5153 8002 1789 69.

3  Q.   Investigator, I'd like to show you what's been received

4  into evidence as Exhibit 796, a Postal chart.  Do you see that

5  package tracking number that ended in 1789 69 on this chart?

6  A.   Yes, I do.

7  Q.   And if you wouldn't mind circling where that is?  Okay, so

8  you've circled the package in the ninth line from the bottom

9  that's in pink font and the tracking number ends in 1789 69?

10  A.   That is correct.

11  Q.   What was the delivery date associated with that package?

12  A.   January 5th, 2018.

13  Q.   And what was the destination address?

14  A.   286 Garson Avenue.

15  Q.   Okay. If you could please clear your mark?  If we could go

16  to what's also just been received into evidence as

17  Exhibit 631?  What is in this photograph?

18  A.   That is the packaging -- the U.S. Postal box along with

19  the mailing address and the USPS -- USPS tracking number.

20  Q.   This is another package located in the basement of 292

21  Barrington Street?

22  A.   That is correct.

23  Q.   Okay. I'm sorry, who was this addressed to?

24  A.   Ingrid Mercado of 59 Fernwood Avenue, Rochester, New York

25  14621.

1  Q.   If we could zoom in on the tracking label in the upper

2  right corner of the box?  Do you see the tracking number

3  associated with this package?

4  A.   Yes, I do.

5  Q.   And what was the tracking number?

6  A.   9505 5114 5153 8016 1842 22.

7  Q.   Okay. Again I'd like to turn back to 796, our Postal

8  chart.  Do you see the tracking number ending in 1842 22 on

9  this chart?

10  A.   Yes, I do.

11  Q.   If you could place a mark where that is?  So you've

12  circled the line six -- six up from the bottom, the tracking

13  number ends in 1842 22, and it's in black ink; is that

14  correct?

15  A.   That is correct.

16  Q.   What was the delivery date associated with that package?

17  A.   January 20th, 2018.

18  Q.   And what was the destination address?

19  A.   59 Fernwood Avenue.

20  Q.   If you could clear your marks, please?  I'd like to show

21  you Exhibit 575.  This is a closer-up image of the fourth box

22  in the basement of 292 Barrington?

23  A.   That is correct.

24  Q.   Okay. Now, we've reviewed packing labels of two of those

25  boxes.  Were there labels on the other two boxes in the

1  basement?

2  A.   No, there was not.

3  Q.   Did you search inside of those boxes?

4  A.   Yes, we did.

5  Q.   What was located inside?

6  A.   Numerous pieces of sponge, marshmallow candy and some

7  contained boxes of M&M's and Skittles.

8  Q.   Okay. Did you recover boxes of candy anywhere else in the

9  location?

10  A.   Yes.

11  Q.   Where was that?

12  A.   Upstairs closet area.

13  Q.   Okay. I'd like to show you Exhibit 566.  Was this the

14  front closet area that you're referring to?

15  A.   Yes.

16  Q.   Okay. Now, if I could next show you Exhibit 580, what is

17  this a photograph of?

18  A.   The boxes -- the empty -- well, the boxes of candy, M&M's

19  and Skittles that were located in the basement and the front

20  closet.

21  Q.   Where are those boxes?

22  A.   On the floor by the window by the door and by the little

23  stairs there.

24  Q.   Okay. So was this photograph taken after that front closet

25  was searched?

1  A.    That is correct.

2  Q.    And the boxes were moved out into the living room?

3  A.    That is correct.

4  Q.    Next I'd like to show you Exhibit 581.  Is this just a

5  closer-up image of those Skittles and M&M boxes in the living

6  room?

7  A.    That is correct.

8  Q.    And Exhibit 582, is this a close-up image of those M&M

9  Skittles boxes in the living room the second pile of them?

10  A.    That is correct.

11  Q.    Okay. About how many boxes of Skittles -- how many

12  Skittles and M&M boxes were found in the location?

13  A.    Between 25 and 30.

14  Q.    Now, did you also search the bedrooms upstairs?

15  A.    Yes, we did.

16  Q.    I'd like to show you Exhibit 576.  This is what I believe

17  you referred to as bedroom number one?

18  A.    That is correct.

19  Q.    And this was Leitscha Poncedeleon's bedroom?

20  A.    Yes, it was.

21  Q.    What were some of the items that you recovered from this

22  bedroom?

23  A.    Paperwork; cellular phones; firearms; rifles; and

24  ammunition.

25  Q.    I'd like to show you Exhibit 613.  What is this a

1  photograph of?

2  A.    A red bag that contained ammunition.

3  Q.    And where was that bag located in the room?

4  A.    Under the bed in  the bedroom.

5  Q.    Next I'd like to show you Exhibit 615.  What is this a

6  photograph of?

7  A.    Items that were taken out of the red bag which is

8  magazines and ammunition.

9  Q.    And the red bag, that is what we were just viewing in

10  Exhibit 613?

11  A.    That is correct.

12  Q.    Okay. Now I'd like to show you what's already been

13  received into evidence as Exhibit 823.  What are we looking at

14  here?

15  A.    Magazines that has loaded ammunition -- live ammunition

16  inside of them.

17  Q.    And were these magazines also located in Ms. Poncedeleon's

18  bedroom?

19  A.    Yes, they were.

20  Q.    I'd like to show you Exhibit 824.  Is this the ammunition

21  that was within those magazines?

22  A.    That is correct.

23  Q.    Exhibit 825.  What is this photograph of?

24  A.    That is the bag that the six rifles were located inside

25  that was under the bed in bedroom number one of 292 Barrington

1  Street.

2  Q.   So this gun bag, the rifles, and the red bag with the

3  ammunition and magazines was all under the bed in that room?

4  A.   That is correct.

5  Q.   If I could show you Exhibit 832?  What is this a

6  photograph of?

7  A.   The red bag and the contents that were inside the bag.

8  Q.   Okay. Now, in this photograph the contents are outside of

9  the bag?

10  A.   That is correct.

11  Q.   If we could go to 832A?  Is this one of the bags that was

12  within the red bag underneath the bed?

13  A.   Yes, it is.

14  Q.   And 832B, what is contained in the plastic bag that came

15  out of the red bag?

16  A.   Boxes of ammunition.

17  Q.   And how many boxes of ammunition are there here?

18  A.   Eight boxes.

19  Q.   You mentioned there were rifles recovered from the

20  bedroom?

21  A.   Yes, there were.

22  Q.   Underneath the bed?

23  A.   Yes.

24  Q.   I'd like to show you Exhibit 614.  What is this a

25  photograph of?

1  A.    A photograph of the rifles inside the bag that was located

2  under the bed at 292 Barrington.

3  Q.    Is that how they were stored underneath the bed when they

4  were located?

5  A.    Yes, they were.

6  Q.    They were inside that larger bag?

7  A.    Yes, they were.

8  Q.    How many rifles were there?

9  A.    Six rifles.

10 Q.    Now, did you ultimately collect those rifles?

11 A.    Yes, I did.

12 Q.    Okay. Now, I'd like to show you Exhibit 617.  Is that a

13 closer-up image of one of the rifles from within that bag?

14 A.    Yes.

15 Q.    And a magazine?

16 A.    That is correct.

17 Q.    Next I'd like to show you Exhibit 618.  What is this a

18 photograph of?

19 A.    Another one of the rifles that was located in the bag with

20 the loaded magazine next to it.

21 Q.    And Exhibit 619.  What is that a photo of?

22 A.    Another one of the loaded magazines that was inside the

23 bag and the butt end of one of the rifles.

24 Q.    And when you say the bag are you referring to the longer

25 kind of tan bag all the rifles were in?

1  A.   Yes.

2  Q.   All right. Now, you mentioned that you collected those

3  rifles that were recovered underneath the bed?

4  A.   Yes, I did.

5  Q.   How did you go about collecting those?

6  A.   They're collected and made safe and then they're turned

7  into the Property Clerk's Office and with the serial number.

8  Q.   Did you know the serial number of each of the firearms?

9  A.   Yes, we did.

10  Q.   Okay. And you mentioned you made them safe.  What does

11  that mean?

12  A.   Cleared the weapons, make sure there was no ammunition

13  inside the weapons.

14  Q.   Okay.

15         **MS. KOCHER:** Your Honor, at this time I'd ask if

16  Mr. Marangola could please approach the witness with

17  Exhibit 659 and 660.

18         **MR. MARANGOLA:** Judge, just for the record, I am

19  holding two firearms, both of them have zip ties through them

20  rendering them safe, and there is no ammunition in them.

21         **THE COURT:** Members of the jury, Exhibits 659 and

22  660 have been rendered safe for display in the courtroom.

23         You may proceed.

24         **MR. MARANGOLA:** Thank you.

25  **BY MS. KOCHER:**

1  Q.    Investigator, do you see Exhibit 659 and 660?

2  A.    Yes, I do.

3  Q.    Okay. And starting with the first one, what is

4  Exhibit 659?

5  A.    This is the -- this is one of the firearms, the Norinco,

6  that was located at 292 Barrington Street in the bedroom

7  number one.

8  Q.    Okay. You said it's a Norinco?

9  A.    That is correct.

10  Q.    That is spelled N-O-R-I-N-C-O?

11  A.    That is correct.

12  Q.    Okay. And what type of rifle is that?

13  A.    It is a semi-automatic rifle.

14  Q.    Now, how about Exhibit 660?  What is that firearm?

15  A.    This is a Bushmaster .223 semi-automatic rifle.

16  Q.    And was that also a rifle that you collected from

17  underneath the bedroom of Ms. Poncedeleon's room?

18  A.    Yes, it is.

19  Q.    Or underneath the bed rather?

20  A.    Yes, it is.

21  Q.    How do you know that both of those firearms are ones that

22  you recovered from Ms. Poncedeleon's bedroom?

23  A.    They have the tag on it still and we verified it with the

24  serial numbers.

25  Q.    Okay. And are the serial numbers the same as the guns that

1 | you collected on January 29th, 2018?

2 | A.   That is correct.

3 | Q.   Do those guns appear to be in the same or substantially

4 | the same condition as they were in when you collected them

5 | back in January of 2018?

6 | A.   Yes, they are.

7 | Q.   Do you notice anything different about the firearms

8 | themselves?

9 | A.   That they have the property clerk and the lab stickers on

10 | them and the exhibit stickers on them.

11 |         **MS. KOCHER:** Your Honor, at this time I would offer

12 | Exhibit 659 and 660.

13 |         **MR. VACCA:** *Voir dire*, Your Honor?

14 |         **THE COURT:** Yes.

15 |         **MR. VACCA:** Investigator, with respect to

16 | Exhibit 659, are there any stickers on that that indicate that

17 | it went to the lab for further testing?

18 |         **THE WITNESS:** Yes.

19 |         **MR. VACCA:** When was that?

20 |         **THE WITNESS:** The exact date it went I have no clue.

21 |         **MR. VACCA:** Okay.  With respect to Exhibit 660, does

22 | that also indicate with the stickers on it that that went to

23 | the lab for testing?

24 |         **THE WITNESS:** Yes, it does.

25 |         **MR. VACCA:** Your Honor, I would object to the

1  admission at this time on grounds of chain of custody.

2  Obviously there was additional testing that went on and the

3  chain of evidence has been broken or not established as of

4  this time.

5          **MS. KOCHER:** Your Honor, could we sidebar if the

6  Court's going to --

7          **THE COURT:** We don't need a sidebar.  Overruled.

8  659 and 660 can be received.  The test results will be subject

9  to a different matter.

10         **MS. KOCHER:** Thank you.  I'm sorry, I didn't catch

11 the last --

12         **THE COURT:** Any testing results will be subject to

13 different testimony.

14         **MS. KOCHER:** Thank you.

15 **BY MS. KOCHER:**

16 Q.   Investigator, if you could hold up Exhibit 659 so the jury

17 can see?  That's the Norinco semi-automatic rifle?

18 A.   That is correct.

19 Q.   Now, I'd ask you to take a look at Exhibit 817 that's been

20 received into evidence.  Is that the same firearm?

21 A.   Yes, it is.

22 Q.   And was this a photograph taken at the Technicians' Unit

23 after the firearm was collected?

24 A.   Yes, it is.

25 Q.   Now, if you could also hold up Exhibit 660?  That's the

1  Bushmaster .223 semi-automatic rifle?

2  A.   Yes, it is.

3  Q.   I'd ask you to take a look at Exhibit 810.  Is that the

4  same firearm that's marked as Exhibit 660?

5  A.   Yes, that is.

6           MS. KOCHER: Your Honor, I'd also ask if

7  Mr. Marangola could approach the witness again with

8  Exhibit 661 and 662.

9           THE COURT: Yes.

10          MR. MARANGOLA: Again, Your Honor, these two

11  firearms are also unloaded and have been made safe with zip

12  ties through them.

13          THE COURT: Members of the jury, again Exhibits 661

14  and 662 have been rendered safe for display in the courtroom.

15  BY MS. KOCHER:

16  Q.   All right, Investigator, starting with Exhibit 661, what

17  is that?

18  A.   That is a Kel-Tech semi-automatic rifle.

19  Q.   And is that another one of the rifles that you collected

20  from underneath Ms. Poncedeleon's bed?

21  A.   Yes, it is.

22  Q.   How do you know that's the firearm you collected from

23  underneath the bed?

24  A.   Verified with the sticker that was placed on it, the date

25  and the serial number.

1  Q.   The serial number is the same as the firearm you collected

2  that day?

3  A.   That is correct.

4  Q.   What is Exhibit 662?

5  A.   This is a Hi-Point 9 millimeter rifle.

6  Q.   Is that also a semi-automatic rifle?

7  A.   Yes, it is.

8  Q.   And is that another one of the rifles that you collected

9  from underneath the bed at 292 Barrington Street?

10 A.   Yes, it is.

11 Q.   How do you know that's one of the guns you collected?

12 A.   Based upon the serial number and our stickers on the gun.

13 Q.   Now, do Exhibits 661 and 662 appear to be in the same or

14 substantially the same condition as when you collected them on

15 January 29th, 2018?

16 A.   Yes, they are.

17 Q.   Do you notice anything different?

18 A.   Except for the Monroe County Lab sticker on it and the

19 Government Exhibit sticker on it.

20 Q.   That goes for both firearms?

21 A.   That is correct.

22 Q.   Other than that they appear to be the same?

23 A.   Yes.

24          **MS. KOCHER:** Your Honor, I'd offer Exhibit 661 and

25 662.

1          **MR. VACCA:** Your Honor, same objection that I had

2    for 659 and 660.

3          **THE COURT:** Objection is overruled.  661 and 662

4    will be received.

5          (**WHEREUPON**, Government's Exhibit 661-662 were

6    received into evidence.)

7    **BY MS. KOCHER:**

8    Q.   Investigator, could you please hold up 661?  That is the

9    9 millimeter Kel-Tec semiautomatic rifle?

10   A.   Yes, it is.

11   Q.   I'll have you take a look at Exhibit 821.  Does this

12   appear to be the same gun as what is marked as 661?

13   A.   That is correct.

14   Q.   If you could hold up Exhibit 662?  This was the Hi-Point

15   semi-automatic rifle?

16   A.   That is correct.

17   Q.   Have you take a look at Exhibit 812.  Does that appear to

18   be the same firearm that is marked as Exhibit 812 -- I'm

19   sorry, marked as Exhibit 662?

20   A.   Yes, it is.

21   Q.   Okay. That's also the Hi-Point semi-automatic rifle?

22   A.   That is correct.

23   Q.   Okay.

24          **MS. KOCHER:** Your Honor, we have two more rifles.  I

25   would ask for Mr. Marangola to approach the witness with

1 | those.

2 |         **THE COURT:** What exhibits are they?

3 |         **MS. KOCHER:** 663 and 664.

4 |         **MR. MARANGOLA:** Again, Judge, these are also

5 | unloaded and have been rendered safe and with zip ties through

6 | them.

7 |         **THE COURT:** Yes.  Again, members of the jury,

8 | Exhibits 663 and 664 have been rendered safe for display in

9 | the courtroom.

10 | **BY MS. KOCHER:**

11 | Q.   Now, Investigator, regarding Exhibit 663, what is that

12 | item?

13 | A.   This is a Norinco SKS semi-automatic rifle.

14 | Q.   Okay. So that is another Norinco rifle?

15 | A.   Yes, it is.

16 | Q.   And what is Exhibit 664?

17 | A.   It is another Norinco semi-automatic rifle.

18 | Q.   Okay. Is that -- so that would be the third Norinco you've

19 | testified to?

20 | A.   That is correct.

21 | Q.   Okay.  Now, are those also semi-automatic rifles that you

22 | recovered from underneath the bed of Ms. Poncedeleon's room?

23 | A.   Yes, it is.

24 | Q.   And how do you know those are rifles that you recovered

25 | that day?

1  A.   Based upon the serial numbers and the CR number with the
2  tag on it from that date.
3  Q.   Do those firearms appear to be in the same or
4  substantially the same condition as when you collected them
5  that day?
6  A.   Yes, they do.
7  Q.   Do you notice anything different?
8  A.   Other than the Monroe County Laboratory sticker on it and
9  the Government Exhibit sticker on it.
10  Q.   Those are the only things you notice that are different?
11  A.   That is correct, and the gun ties.
12  Q.   And the gun ties?
13  A.   Yes.
14  Q.   And the serial numbers on those two firearms, are those
15  the same as the firearms you collected on January 29th?
16  A.   That is correct.
17        **MS. KOCHER:** Your Honor, I'd offer Exhibit 663 and
18  664.
19        **MR. VACCA:** Your Honor, same objection to the
20  admission of 663 and 664 as I had for 659, 660, 661 and 662.
21        **THE COURT:** Objection is overruled.   Exhibits 663
22  and 664 will be received.
23        (**WHEREUPON**, Government's Exhibit of 663-664 were
24  received into evidence).
25  **BY MS. KOCHER:**

1   Q.   Investigator, could you hold up 663, the Norinco -- one of

2   the Norinco semi-automatic rifles?  And I'd have you take a

3   look at Exhibit 815.  Is that the same rifle that you just

4   held up and that is marked as Exhibit 663?

5   A.   Yes, that is.

6   Q.   If you could please hold up Exhibit 664?  I'll have you

7   take a look at Exhibit 819.  Is that the same semi-automatic

8   rifle that you just held up and that is marked Exhibit 664?

9   A.   Yes, it is.

10  Q.   All right. Now, I believe you also mentioned in addition

11  to the ammunition and the firearms in Ms. Poncedeleon's room,

12  you also collected phones and paperwork?

13  A.   That is correct.

14  Q.   Have you take a look at Exhibit 616.  What is this a

15  photograph of?

16  A.   Leitscha Poncedeleon's purse that was located in her room.

17  Q.   Okay. And did you search inside the purse?

18  A.   Yes, we did.

19  Q.   What were some of the things that you located inside?

20  A.   Paperwork and a cell phone.

21  Q.   Now, if you can look in the box to your left?  There

22  should be an item marked Exhibit 668.  Let me know when you

23  find that.

24  A.   I have it.

25  Q.   Okay. What type of phone did you seize from the purse?

1   A.    LG flip phone.

2   Q.    What is Exhibit 668?

3   A.    A LG flip phone located in the bedroom number one in the

4   purse of Leitscha Poncedeleon.

5   Q.    Okay. And how do you know that Exhibit 668 is the phone

6   that you retrieved from the purse in Exhibit 616?

7   A.    It is still in the bag with my name on it and the

8   CR number.

9   Q.    Okay. Now, does the phone appear to be in the same or

10  substantially the same condition as when you collected it?

11  A.    Yes, it is.

12  Q.    And you sealed that bag and submitted it to the property

13  clerk?

14  A.    That is correct.

15  Q.    Does your seal appear to be intact?

16  A.    Yes, it does.

17  Q.    Do you notice anything different about the evidence bag?

18  A.    It has Scottie Ferro's initials on it.

19  Q.    That's Investigator Ferro who does cell phone extractions?

20  A.    Yes, he does.

21  Q.    Other than that do you notice anything different?

22  A.    That's it.

23  Q.    Okay. Did you collect any other cell phones from that

24  room?

25  A.    Yes, I did.

1  Q.   Ask you to take a look at Exhibit 622.  What are we -- I'm

2  sorry, 622 is a photograph, Investigator.

3  A.   Oh.

4  Q.   What are we looking at in Exhibit 622?

5  A.   This is one of the drawers in the bedroom of 292

6  Barrington Street, bedroom number one.

7  Q.   Are there some cell phones in this drawer?

8  A.   That is correct.

9  Q.   Were those collected?

10  A.   Yes.

11  Q.   Okay. Now, if you could turn to that box again and look

12  for Exhibit 670?  I think the sticker is on the actual phone

13  itself.  You got it?

14  A.   Yes.

15  Q.   Exhibit Exhibit 670?

16  A.   LG phone.

17  Q.   Is that LG phone depicted in Exhibit 622, the photo?

18  A.   It's in the little thing there, the casing, I'm sorry.

19  Q.   All right. You've circled the phone in the drawer on

20  Exhibit 622 that's in a pink case?

21  A.   That is correct.

22  Q.   Okay. Now, does the phone that's marked Exhibit 670 appear

23  to be in the same or substantially the same condition as it

24  was in when you collected it?

25  A.   Yes.

1  Q.   Are there other phones in the bag with that phone that's

2  marked 670?

3  A.   Yes.

4  Q.   Now, how about the packaging?  Your evidence bag, does

5  that -- is your seal intact?

6  A.   The bag is opened.

7  Q.   Okay. Was it opened so an exhibit sticker could be placed

8  on the phone?

9  A.   That is correct.

10 Q.   Okay. Other than that opening do you notice anything

11 different about the packaging?

12 A.   It has Scottie -- Investigator Scottie Ferro's initials on

13 it.

14 Q.   Is your initial seal still intact?

15 A.   Yes, it is.

16 Q.   Okay.  How many other phones are in that evidence bag with

17 Exhibit 670?

18 A.   Two phones.

19 Q.   Are those two phones depicted in Exhibit 622, the

20 photograph?

21 A.   Yes, they are.

22 Q.   Okay. They're also in the drawer?

23 A.   Yes.

24 Q.   Okay.  Now, you also mentioned that you collected some

25 paperwork from this room as well?

1  A.   That is correct.

2  Q.   I'd ask you to take a look at a photograph which is

3  Exhibit 621.   What are we looking at here?

4  A.   A binder that was on the top of the dresser in the bedroom

5  number one of 292 Barrington Street.

6  Q.   And that was Ms. Poncedeleon's room?

7  A.   That is correct.

8  Q.   Did you collect that notebook?

9  A.   Yes, I did.

10  Q.   Ask you to take a look at Exhibit 693 in the box at your

11  feet.   Do you have that exhibit there?

12  A.   Yes, I do.

13  Q.   What is Exhibit 693?

14  A.   It is a notebook containing drug notes, a drug ledger.

15  Q.   Okay.   Now, does that notebook appear to be the same

16  notebook that is in Exhibit 621, the photograph?

17  A.   Yes, it does.

18  Q.   Does the notebook marked Exhibit 693 appear to be in the

19  same or substantially the same condition as it was in when you

20  collected it?

21  A.   Yes, it does.

22  Q.   Do you notice anything different about the notebook or its

23  contents?

24  A.   It has the Government sticker on it.

25  Q.   Okay. Other than that the notebook and the contents appear

1  to be the same?

2  A.   Yes, they do.

3           **MS. KOCHER:** Your Honor, I'd offer Exhibit 693.

4           **MR. VACCA:** I would object, Your Honor.  At this

5  point there's no relevancy regarding my client, nor any

6  mention of his name throughout this search.

7           **THE COURT:** Thank you.  Overruled.  Exhibit 693 will

8  be received.

9           (**WHEREUPON**, Government's Exhibit 693 was received

10 into evidence).

11          **MS. KOCHER:** Your Honor, may I approach the witness

12 and display some pages from Exhibit 693?

13          **THE COURT:** Yes.

14          **MS. KOCHER:** Thank you.

15 **BY MS. KOCHER:**

16 Q.   Now, I've turned to the 16th page of Exhibit 693 and it's

17 placed on the visualizer.  Investigator, could you read those

18 first few lines for us?

19 A.   First line 01/02, H is in a square.

20          Line number 2, 01/02 Rob Bori equals half minus

21 1.130 equals 0, then the word spelling P-A-G-O  01/02.

22          Line 3, 01/02 Rob Bori equal sign half minus 1.125

23 equals zero P-A-G-O 01/02.

24          And then the fourth line 01/02 Rob -- I think that

25 says Rob, R-O-O-B, P-R-I-E-T-O equals 16.000 minus 4.000

1   equals over that is a 01/02 equals 12.000 minus 12.000 with a

2   01/05 on top of it equals zero P-A-G-O 01/05.

3           Next to those on the side is one-half, one-half,

4   and 8.

5   Q.   Okay. Now, this is just one page of that notebook,

6   correct?

7   A.   That is correct.

8   Q.   Are there other pages with similar style writings on them?

9   A.   That is correct.

10  Q.   Okay. And it appears to be a date followed by a name and

11  then numbers on this page?

12  A.   That is correct.

13  Q.   If we could flip back to the Trial Director in

14  Exhibit 577?  You mentioned there were two bedrooms in the

15  home?

16  A.   That is correct.

17  Q.   And is this the second bedroom that we're looking at in

18  Exhibit 577?

19  A.   Yes, it is.

20  Q.   Okay. What were some of the things recovered from this

21  bedroom?

22  A.   Paperwork; phones; two handguns that were loaded; large

23  amount of U.S. currency; and drug paraphernalia which

24  consisted of grinders and beakers.

25  Q.   I'll ask you to take a look at Exhibit 624.  What is this

1  a photograph of?

2  A.   This is a photograph of the loaded handgun that was

3  located in the dresser next to the bed in bedroom two of 292

4  Barrington Street.

5  Q.   How many handguns were ultimately found in this bedroom?

6  A.   Two.

7  Q.   Okay. And where is -- does this show both handguns or just

8  one?

9  A.   Just one.

10 Q.   Could you please circle where that gun is in the

11 photograph?  So you've circled the black item that is in the

12 middle of the open drawer?

13 A.   Yes.

14 Q.   If you could clear your mark, please?  I'd ask you to take

15 a look at Exhibit 625.  Is this a closer-up image of that same

16 handgun?

17 A.   Yes, it is.

18 Q.   And there appears to be a hand holding something in this

19 photo as well?

20 A.   Holding the loaded magazine that was ejected from the

21 handgun.

22 Q.   Okay. The magazine was also in the drawer?

23 A.   Yes, it was.

24 Q.   We can move on to Exhibit 626.  What is this a photograph

25 of?

1  A.   The New York State identification for Roberto Figueroa.

2  Q.   Where was that identification?

3  A.   On top of the dresser.

4  Q.   Look at Exhibit 627.  What's in this photograph?

5  A.   The second handgun that was located at the location and

6  the upstairs bedroom.

7  Q.   The second upstairs bedroom?

8  A.   That is correct.

9  Q.   And this is the same bedroom where the pistol was in the

10  drawer?

11  A.   That is correct.

12  Q.   What type of handgun are we looking at here in

13  Exhibit 627?

14  A.   That is a revolver.

15  Q.   Okay. And was this loaded?

16  A.   Yes, it was.

17  Q.   If we can move on to Exhibit 628?  What are we looking at

18  here?

19  A.   The cylinder showing the handgun was loaded.

20  Q.   I'm sorry, the cylinder, is that what you said?

21  A.   Yes, to show that the rounds were inside the handgun.

22  Q.   How many rounds were loaded in the handgun?

23  A.   Six.

24  Q.   If we can move on to Exhibit 629?  Is this another

25  photograph of that bedroom?

1  A.   Yes, it is.

2  Q.   Now, did you collect those two firearms, the revolver and

3  the pistol?

4  A.   Yes, I did.

5  Q.   Okay. How did you go about collecting those?

6  A.   They were made safe and then they were sealed inside

7  evidence bags.

8  Q.   I'd ask you to take a look at Exhibit 651 that should be

9  down in the box, and Exhibit 654.  Let me know when you track

10 those down.  You have those two items?

11 A.   You said 651 and 65 --

12 Q.   -- 4.

13 A.   I got a 53, not 54.

14 Q.   653, I'm sorry.  Thank you, Investigator.  Okay, what is

15 Exhibit 651?

16 A.   That is a .40 caliber Hi-Point pistol.

17 Q.   And if we could go to -- how do you recognize that pistol?

18 A.   It's sealed in the evidence bag with my CR number and it

19 has the matching serial number.

20 Q.   Where did you recover that pistol from?

21 A.   In the bedroom number two in 292 Barrington Street

22 belonging to Roberto Figueroa.

23 Q.   Was that the handgun that was found in the drawer or on

24 top of the dresser?

25 A.   In the drawer.

1  Q.   Now, you recognize that based on the crime report number

2  and the serial number?

3  A.   That is correct.

4  Q.   Does that gun appear to be in the same or substantially

5  the same condition as it was in when you collected it that

6  day?

7  A.   Yes, it does.

8  Q.   You notice anything different about it?

9  A.   It has the Monroe County Lab sticker on it along with the

10 blue tape and the zip tie.

11 Q.   Okay. So the zip tie was placed on there after you

12 submitted it to Property?

13 A.   To make it safe.

14 Q.   I'd like to show you Exhibit 826.  Does this appear to be

15 the same gun that you're holding there that's marked

16 Exhibit 651?

17 A.   Yes, it is.

18 Q.   Okay. And that appears to have an extended magazine with

19 it as well?

20 A.   Yes, it does.

21 Q.   Is that also contained in Exhibit 651?

22 A.   The gun is.  Not the magazine.

23 Q.   The gun is in the bag?

24 A.   Yes, not the magazine.

25 Q.   Okay. You compared the serial number on that gun that's

1  marked Exhibit 651 with the serial number of the pistol you

2  recovered that day?

3  A.   That is correct.

4  Q.   And are they the same?

5  A.   Yes.

6  Q.   Now, turning to Exhibit 653, what is that item?

7  A.   This is the other firearm that was located on top of the

8  dresser in bedroom number two in 292 Barrington Street.

9  Q.   Is that the revolver that was loaded with six rounds?

10  A.   Yes, it is.

11  Q.   And how do you know that's the same revolver that was on

12  the dresser of that second bedroom?

13  A.   It's in the evidence bag with my CR number, and the serial

14  number is the same.

15  Q.   Okay.  I'd ask you to take a look at Exhibit 829.  Is that

16  the same firearm in this photograph that you're holding and is

17  marked as Exhibit 653?

18  A.   Yes, it is.

19  Q.   Now, does Exhibit 653 appear to be in the same or

20  substantially the same condition as it was when you collected

21  it?

22  A.   Yes, it is.

23  Q.   Do you notice anything different?

24  A.   Other than the lab sticker, the blue tape and the

25  Government Exhibit sticker on it.

1           **MS. KOCHER:** Your Honor, at this time I'd offer

2    Exhibit 651 and 653.

3           **MR. VACCA:** Your Honor, the same objections that

4    I've had to the previous request to admit, chain of evidence.

5           **THE COURT:** Thank you.  Exhibit 651 and 653 will be

6    received.

7           (**WHEREUPON**, Government's Exhibit 651 and 653 were

8    received into evidence).

9    **BY MS. KOCHER:**

10   Q.   Now, Investigator, did you retrieve any sort of

11   communication devices from that second bedroom at 292

12   Barrington Street?

13   A.   Yes.

14   Q.   And what were those?

15   A.   Cell phones and walkie-talkies.

16   Q.   I'd ask you to take a look at Exhibit 677.  What is

17   Exhibit 677?

18   A.   The walkie-talkies and a cell phone box.

19   Q.   And what do you recognize those walkie-talkies from?

20   A.   292 Barrington Street in the bedroom number two.

21   Q.   Okay. How do you know those are the walkie-talkies from

22   that room?

23   A.   They are sealed in an evidence bag with the CR number and

24   the date.

25   Q.   Do the walkie-talkies appear to be in the same or

1  substantially the same condition as they were in when you

2  collected them?

3  A.   Yes, they do.

4          **MS. KOCHER:** Your Honor, I'd offer Exhibit 677.

5          **MR. VACCA:** I have no objection, Your Honor.

6          **THE COURT:** Exhibit 677 will be received.

7          (**WHEREUPON**, Government's Exhibit 677 was received

8  into evidence).

9  **BY MS. KOCHER:**

10 Q.   How many walkie-talkies were in that exhibit?

11 A.   Two.

12         **MS. KOCHER:** Your Honor, I know it's just about

13 1:30.  I was about to move on to another room in the house.  I

14 don't know if this would be a good time to take a break.

15         **THE COURT:** Ladies and gentlemen, at this time we'll

16 take a recess until 8:30 tomorrow morning.  In the meantime,

17 I'd ask you not discuss the matter or allow anybody to discuss

18 the matter with you.  Jury may step down until 8:30 tomorrow.

19 Have a great night.

20         (**WHEREUPON**, proceedings adjourned at 1:32 p.m.)

21                    *    *    *

22

23

24

25

1                    **CERTIFICATE OF REPORTER**

2

3            In accordance with 28, U.S.C., 753(b), I certify that

4    these original notes are a true and correct record of

5    proceedings in the United States District Court for the

6    Western District of New York before the Honorable Frank P.

7    Geraci, Jr. on May 25th, 2021.

8

9    S/ Christi A. Macri

10   Christi A. Macri, FAPR-RMR-CRR-CSR(CA/NY)
     Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25