<pre>
 1                    UNITED STATES DISTRICT COURT

 2                   WESTERN DISTRICT OF NEW YORK

 3

 4

 5   - - - - - - - - - - - - -X
     UNITED STATES OF AMERICA              18-CR-6094(G)
 6
     vs.
 7                                         Rochester, New York
     CARLOS JAVIER FIGUEROA,               May 12, 2021
 8              Defendant.                 10:27 a.m.
     - - - - - - - - - - - - -X
 9

10           TRANSCRIPT OF TESTIMONY OF SCOTT FERRO
           BEFORE THE HONORABLE FRANK P. GERACI, JR.
11              UNITED STATES DISTRICT CHIEF JUDGE

12
                     JAMES P. KENNEDY, JR., ESQ.
13                   United States Attorney
                     BY: ROBERT A. MARANGOLA, ESQ.
14                       CASSIE M. KOCHER, ESQ.
                     Assistant United States Attorneys
15                   500 Federal Building
                     Rochester, New York 14614
16                   Appearing on behalf of the United States

17
                     PAUL J. VACCA, JR., ESQ.
18                   One East Main Street, Suite 1000
                     Rochester, New York 14614
19                   Appearing on behalf of the Defendant

20
     ALSO PRESENT:      Nicolas Penchaszadeh, Spanish Interpreter
21                      Barbara Considine, Spanish Interpreter

22
     COURT REPORTER:    Christi A. Macri, FAPR-RMR-CRR-CSR(NY/CA)
23                      Christimacri50@gmail.com
                        Kenneth B. Keating Federal Building
24                      100 State Street, Room 2640
                        Rochester, New York 14614
25
</pre>

2

1                              **I N D E X**

2   **WITNESS FOR THE GOVERNMENT**

3

Scott Ferro
4       Direct examination by Ms. Kocher          Page  3
        Cross-examination by Mr. Vacca            Page 47
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>**P R O C E E D I N G S**</u>

\*    \*    \*

**(WHEREUPON**, the defendant is present).

<u>**GOVERNMENT'S WITNESS, SCOTT FERRO, SWORN**</u>

<u>**DIRECT EXAMINATION**</u>

**THE CLERK:** Please state your name and spell your

last name for the record.

**THE WITNESS:** Scott Ferro, F-E-R-R-O.

**THE REPORTER:** Thank you.

**THE CLERK:** Thank you.

**THE COURT:** You may proceed.

**MS. KOCHER:** Thank you.

**BY MS. KOCHER:**

Q.   Good morning.

A.   Good morning.

Q.   Could you please introduce yourself to the jury?

A.   My name is Scott Ferro, I'm an investigator for the City

of Rochester Police Department.

Q.   How long have you been an investigator with the Rochester

Police Department?

A.   I've been an investigator since 2010.  I've been a police

officer since 1998.

Q.   And have you been with the Rochester Police Department

that entire time since 1998?

A.   Yes.

1  Q.   Do you have any specific assignment as an investigator

2  now?

3  A.   Yes, I'm currently assigned to GRANET, which is the

4  Greater Rochester Area Narcotics Enforcement Team.

10:28:54AM 5  Q.   How long have you been assigned to that team?

6  A.   For about five years.  Before that I was assigned to the

7  Rochester Police Department Narcotics Unit.

8  Q.   Can you explain what GRANET is, the Greater Rochester Area

9  Narcotics Enforcement Team?

10:29:12AM 10  A.   GRANET is a multi-agency Drug Task Force.  We're tasked

11  with drug crimes throughout Monroe County.  We tend to focus

12  on mid to upper-level drug investigations.

13  Q.   And what are some of your duties in that position?

14  A.   We perform undercover buys, we use informants, we use

10:29:33AM 15  wiretaps; I also do cell phone extractions and process cell

16  phones.

17  Q.   Have you received any training in cell phone extraction?

18  A.   Yes.

19  Q.   Can you explain some of that training?

10:29:48AM 20  A.   Initially I took a two day school, an online school from

21  Cellebrite, which is a cell phone extraction tool, that's a

22  company that provides a tool.

23          I then took their one week school on extractions

24  and then analyzing the extractions.

10:30:07AM 25          I took another school on cell phone using the cell

1  phone data drug investigations.

2          I have a 40 hour school provided by ZetX, Z-E-T-X.

3  That is using cell phone data in investigations; you compile

4  their data and locations from cell phones and you're able to

10:30:35AM 5  plot those.

6          I also took a four week course put on by the United

7  States Secret Service in Hoover, Alabama at the National

8  Computer Forensic Institute where we use different tools such

9  as Cellebrite, Axiom, GrayKey, to provide cell phone

10:30:54AM10  extractions and analyzing that data.

11  Q.   About how long have you been performing cell phone

12  extractions?

13  A.   About four or five years.

14  Q.   In those four or five years about how many extractions do

10:31:10AM15  you think you've performed?

16  A.   Probably close to 700.  At least 650.

17  Q.   Okay.  Can you explain what a cell phone extraction is?

18  A.   We take a cell phone and attempt to get data from it.  You

19  initially start with your phone and see what kind of condition

10:31:28AM20  it is, what kind of phone it is.  That will give you a clue as

21  to how you can perform the extraction.

22          Your goal would be to get everything that's on that

23  phone to another format that an investigator can go and look

24  at what's there.

10:31:42AM25  Q.   You're essentially making a copy of what's on that phone

1 | and putting it in a readable format?

2 | A.    Correct.

3 | Q.    You mentioned when you were describing your training some

4 | of the programs that you've been trained on.   Is there anyone

10:32:01AM 5 | in particular that you use more often?

6 | A.    More often is Cellebrite.   They have two programs.   One is

7 | called UFED for PC which is an extraction tool.   The other

8 | would be Physical Analyzer, which is a tool that is used to

9 | take the data once it's extracted from the phone and be able

10:32:21AM10 | to look at it.

11 | Q.    What sort of data are you able to extract when you perform

12 | one of these extractions?

13 | A.    You can get text messages, call logs, contacts, anything

14 | that's on a cell phone, you can get pictures, video, audio.

10:32:41AM15 | In a perfect situation you would get everything that is on a

16 | cell phone to copy over.

17 | Q.    In your experience have you ever attempted to perform an

18 | extraction and it didn't work?

19 | A.    Yes.

10:32:53AM20 | Q.    And what are some of those situations?

21 | A.    You could have a phone that is no longer functioning.

22 | Sometimes I'm able to get those phones to work.   Even I can't

23 | get them to power on, I might be able to get data from them,

24 | but sometimes you can't.

10:33:09AM25 |             Some phones that are password protected that we're

1    not able to get around.  Some passwords we can get around, but

2    sometimes you're not able to do that.

3           Sometimes it could be as simple as the port, the

4    power port basically what we get the data from, we do

10:33:29AM 5    extraction through the charging cord, sometimes that is broken

6    and you have to attempt to do a bluetooth extraction and that

7    doesn't always work.

8           So there are several factors that could prevent

9    getting a full extraction or any extraction.

10:33:44AM10    Q.   Now, Investigator, beginning in 2018 did you become

11    involved in an investigation entitled Operation Burbank Bust?

12    A.   Yes.

13    Q.   And what were some of the things that you were tasked with

14    doing in assisting with that case?

10:34:03AM15    A.   I first became involved simply on the takedown day, the

16    day that there was going to be a bunch of warrants executed.

17    I helped execute some search warrants on that day.

18           And then after that I was asked to perform

19    extractions, to see if I could perform extractions on some

10:34:20AM20    cell phones.

21    Q.   Okay. Now, Investigator, there should be a box on the

22    ground right by you.  Do you see that?

23    A.   Yes, I do.

24    Q.   I'd ask you if you take a look at that first envelope

10:34:31AM25    that's closest to you and let me know if you see Exhibit 164

1  there that's already been received into evidence?

2  A.   Yes.

3  Q.   And what is Exhibit 164?

4  A.   This is a cell phone that was taken into custody on

10:34:55AM 5  August 12th, 2015 at 11 Burbank Street.

6  Q.   Is that one of the phones you were tasked with performing

7  an extraction on?

8  A.   Yes.

9  Q.   And were you able to do that?

10:35:09AM 10  A.   Yes, I was.

11  Q.   Now, you mentioned it's a phone.  Can you tell what type

12  of phone just generally it is?  Is it a flip phone?

13  A.   It is a flip phone.  And it is a Kyocera flip phone.

14  Q.   Now, Investigator, you should have a binder there as well.

10:35:31AM 15  I'd ask you if you would look at the tab marked 164A and the

16  documents behind it and let me know if you recognize what

17  those documents are?

18  A.   Yes.

19  Q.   What are those documents?

10:36:00AM 20  A.   This is a Cellebrite extraction report for this phone.

21  Q.   Okay. Does that appear to be the full extraction or just a

22  portion?

23  A.   No, this is just a portion of the extraction.

24  Q.   Okay. And what portion do those documents include?

10:36:22AM 25  A.   This has some contacts -- just contacts.

1  Q.   Does that portion of the extraction appear to be a fair

2  and accurate copy of the extraction that you performed on

3  Exhibit 164, that Kyocera that was seized from 11 Burbank?

4  A.   Yes.

10:36:56AM 5  Q.   Did you notice any deletions or additions to these

6  portions?

7  A.   No.

8         **MS. KOCHER:** Your Honor, at this time I'd offer

9  Exhibit 164A.

10:37:02AM 10         **MR. VACCA:**   Objection, Your Honor, insufficient

11  foundation, relevancy.

12         **THE COURT:** Overruled.   Exhibit 164A will be

13  received.

14         (**WHEREUPON**, Government's Exhibit 164A was received

10:37:14AM 15  into evidence).

16  **BY MS. KOCHER:**

17  Q.   All right, Investigator, we've published the first page of

18  Exhibit 164A, your extraction report, can you explain what

19  we're looking at here? You should be able to see it on your

10:37:31AM 20  monitor to the left as well.

21  A.   Yes, this is the first page of a extraction report

22  generated using Cellebrite's Physical Analyzer.  It basically

23  shows you some information about the tool that was used to do

24  the extraction and then some basic information on the phone.

10:37:55AM 25         In this case not a lot of data transferred from

1  that phone to the computer that I was using for the

2  extraction.  So I used what's called a UFED camera, which is a

3  camera hooked up to my Cellebrite computer to take basically a

4  video of everything that's on the phone.

10:38:21AM 5  Q.  Okay. You see that section that says source extraction and

6  right below it it says external camera media?

7  A.  Yes.

8  Q.  Does that indicate to you you had to use a camera to

9  perform the extraction?

10:38:33AM 10  A.  Yes.

11  Q.  Okay. And can you point out some of the things on this

12  page that indicate to you this extraction report goes to that

13  phone you just described that was seized from 11 Burbank in

14  2015?

10:38:47AM 15  A.  We have -- well, my name; the case name, which is going to

16  be the same as that's on the property bag for that phone; and

17  then the manufacturer of the phone and the device type.

18  Q.  When you say the case number, do you mean the case number?

19  A.  The CR number, correct.

10:39:12AM 20  Q.  That's 15-210652?

21  A.  Yes.

22  Q.  Now, if we could turn to the third page of Exhibit 164A?

23  All right, Investigator, what are we looking at on this third

24  page?

10:39:40AM 25  A.  This is when I was taking the shots with the camera of the

1    contacts.

2    Q.    Okay. So you actually had to hold up a camera to the phone

3    and recorded this image from the phone?

4    A.    Yes.

10:39:55AM 5    Q.    And what is that first contact listed on page 3?

6    A.    Luisa, is that the one you highlighted there?

7    Q.    I'm sorry, the very first name at the top?

8    A.    Javi.

9    Q.    Thank you.  Next, Investigator, I'd ask you to, if you

10:40:19AM 10   could, return Exhibit 164 to its envelope and the next

11   envelope?  If you could remove what should be marked as

12   Exhibit 536?

13   A.    Yes.

14   Q.    Okay. And what is Exhibit 536?

10:40:53AM 15   A.    This is a LG cell phone that was taken into custody at 15

16   Burbank Street.  I can't see the date.  It was in 2018.  15

17   Burbank Street.

18   Q.    All right.

19   A.    Date is covered by the seal being broken on the bag.

10:41:23AM 20   Q.    Okay. Now, does that appear to be one of the phones that

21   you also performed an extraction on?

22   A.    Yes.

23   Q.    Okay.  And, I'm sorry, did you say what type of phone that

24   was?

10:41:32AM 25   A.    It's an LG flip phone.

1    Q.    Okay. And how did you come to possess that phone?

2    A.    Investigator Briganti gave this phone to me on

3    October 2nd, 2020.

4    Q.    Okay. And when you received it was it in a sealed

10:41:50AM 5    condition?

6    A.    It was.

7    Q.    Okay. Does the bag appear to be in the same or

8    substantially the same condition as when you obtained it back

9    in October of 2020?

10:41:59AM 10    A.    Yes, except for it being opened.

11    Q.    Okay. And are there multiple phones in that bag or just

12    one?

13    A.    Yes, there are multiple phones in the bag.

14    Q.    Okay. Is there one in particular that is marked 536?

10:42:12AM 15    A.    Yes.

16    Q.    Okay. And?

17    A.    That is the LG cell phone.

18    Q.    Okay. Flip phone?

19    A.    Flip phone.

10:42:18AM 20    Q.    Does that phone appear to be in the same or substantially

21    the same condition as it was in when you performed your

22    extraction?

23    A.    Yes.

24    Q.    Now, were you able to perform an extraction on that phone

10:42:29AM 25    marked 536?

1  A.    I was.

2  Q.    Okay.  I'd ask you to turn back to that binder in front of

3  you and if you could flip to the tab 536A and the documents

4  behind it and let me know if you recognize what those

10:42:54AM 5  documents are.

6  A.    Yes, this is the Cellebrite report -- extraction report

7  concerning this phone that's marked 536A.

8  Q.    And how do you know that's the extraction report you

9  performed on that phone?

10:43:08AM 10  A.    It has my name on it, it has the report number, the case

11  number -- CR number on it, as well as information about the

12  phone and the type of extraction that I did.

13  Q.    Okay. And does that appear -- well, is that the entire

14  extraction report contained in Exhibit 536A?

10:43:32AM 15  A.    It is not.

16  Q.    What portion does 536A --

17  A.    There's device information, contacts, some timeline

18  information.  That is it.

19  Q.    Okay. Do those portions of the extraction appear to be a

10:43:51AM 20  fair and accurate copy of the extraction report that you

21  prepared for the phone seized from 15 Burbank Street?

22  A.    Yes.

23  Q.    Do you notice any additions or deletions in those

24  portions?

10:44:03AM 25  A.    No.

1          **MS. KOCHER:** Your Honor, at this time I would offer

2     Government's Exhibit 536A, the extraction report that

3     Investigator Ferro performed.

4          **THE COURT:** Was 536 ever received?

10:44:13AM 5          **MS. KOCHER:** No, Your Honor.  There's another

6     officer that collected that that we haven't presented evidence

7     on just yet, but I believe I can offer the extraction report

8     since Investigator Ferro performed the extraction and has

9     testified that this is a fair and accurate copy of portions

10:44:28AM 10    from that extraction.

11          We will be calling the officer that collected that

12    phone, so if the Court wants to receive it subject to

13    connection, that is fine as well.

14          **THE COURT:** Mr. Vacca?

10:44:37AM 15         **MR. VACCA:** Your Honor, I would object to that.  I

16    believe in order to have the report moved into evidence they

17    need to have the underlying Exhibit 536 admitted into

18    evidence.

19          **THE COURT:** I agree.  Objection is sustained.

10:44:53AM 20         **MS. KOCHER:** Your Honor, I also offer 536 subject to

21    connection at this point then.

22          **MR. VACCA:** Objection, Your Honor.

23          **THE COURT:** Sustained.

24    **BY MS. KOCHER:**

10:45:34AM 25    Q.   All right. Investigator, if you could please turn to -- if

1 you want to put that phone Exhibit 536 back in the envelopes?

2          And also in that box by your feet there should be

3 Exhibit 672.  Got it?

4 A.    Yes.

10:46:39AM 5 Q.    What is Exhibit 672?

6 A.    This is two phones -- just one phone, I'm sorry.  It was

7 taken into custody from 292 Barrington Street on January 29th,

8 2018.

9 Q.    Is that another phone that you performed an extraction on?

10:47:04AM 10 A.    Yes.

11 Q.    And were you able to successfully perform an extraction on

12 that phone?

13 A.    Yes.

14 Q.    I'd ask you to turn to your binder there and if you could

10:47:18AM 15 please flip to the tab 672C and the documents behind it and

16 let me know if you recognize those.

17 A.    Yes.

18 Q.    Okay. And what do you recognize that document to be?

19 A.    This is the Cellebrite extraction report pertaining to

10:47:53AM 20 this phone that's labeled 672 that I performed this

21 extraction.

22 Q.    Okay. And how do you know that is the extraction report

23 for Exhibit 672, the phone -- one of the phones seized from

24 292 Barrington Street?

10:48:09AM 25 A.    The CR number matches, the type of phone matches, it has

1   my name on it.

2   Q.   Does that include the entire extraction or just portions

3   of it?

4   A.   Just portions of the extraction.

10:48:19AM 5   Q.   What are some of the portions included in this exhibit?

6   A.   We have the device information, we have contacts, and then

7   we have some MMS messages, multimedia messages.

8   Q.   What is an MMS message?

9   A.   It's basically a picture message; you're able to send a

10:48:57AM 10   picture from one phone to another phone.

11   Q.   Okay.  Now, do those portions in Government's Exhibit 672C

12   appear to be fair and accurate copies of the extraction that

13   you performed on the phone marked Exhibit 672?

14   A.   Yes.

10:49:16AM 15   Q.   Do you notice any additions, deletions or changes in those

16   portions?

17   A.   No.

18         **MS. KOCHER:**  Your Honor, I'd offer Government's

19   Exhibit 672C.

10:49:25AM 20         **MR. VACCA:**  Objection, Your Honor.

21         **THE COURT:**  Overruled.  672C will be received.  672

22   had been previously received.

23         (**WHEREUPON**, Government's Exhibit 672C was received

24   into evidence).

10:49:36AM 25   **BY MS. KOCHER:**

17

1   Q.    Investigator, we have the first page of 672C up on the

2   screen.  Can you explain what we're looking at here?

3   A.    Yes, this is a summary report of the extraction that I

4   did.  You can see I did a logical and a file system extraction

10:50:01AM 5   on the phone.

6   Q.    Okay. So those are two separate -- two different kind of

7   extractions that the Cellebrite program is able to perform?

8   A.    Yes, two separate kinds, yes.

9   Q.    Were you able to determine what the phone number was for

10:50:16AM 10   this phone?

11   A.    Yes.

12   Q.    Would that be on the second page or do you see that here?

13   A.    No, it's under advanced logical, the phone number.

14   Q.    Okay. And where is that?

10:50:32AM 15   A.    It's about -- so on the first page where it says summary,

16   the second portion says source extraction, under user name it

17   has the number 585-685-4661.

18   Q.    If you could just circle on the monitor where that number

19   appears?  Okay, so you placed a circle around the numbers

10:51:00AM 20   1-585-685-4661?

21   A.    Correct.

22   Q.    Okay. And does this also tell you what type of phone that

23   was?

24   A.    Yes.

10:51:16AM 25   Q.    What type of phone was it?

1  A.    It's a Samsung, the model is SM-G550T1.

2  Q.    Okay. If you could hit that button that says clear in the

3  upper right corner?  Is that indicated two lines above the

4  phone number you just circled?

10:51:37AM 5  A.    Yes, it says manufacturer and then the selected device

6  name.

7  Q.    Okay. If we could turn to Government's Exhibit 10?  I'd

8  ask you to take a look at Government's Exhibit 10, the cell

9  phone chart, and let me know if you see that phone number you

10:52:02AM10  just described as being attached to Exhibit 672 that was

11  585-685-4661.

12  A.    Yes, I do.

13  Q.    And where do you see that phone number?

14  A.    It is the fourth number listed on this page.

10:52:20AM15  Q.    And it is in purple font?

16  A.    It is.

17  Q.    All right. If you wouldn't mind circling that on the

18  monitor?  So you've circled the number 685-4661.

19  Investigator, there appears to be an asterisk by that phone

10:52:40AM20  number; is that correct?

21  A.    Yes.

22  Q.    And what does that indicate on the chart?

23  A.    It indicates it was a wiretap phone.

24  Q.    And who is the user associated with that phone number on

10:52:52AM25  the chart?

A.    It says Leitscha Poncedeleon.

Q.    Okay. And if you wouldn't mind -- you see that third column there it has exhibit number?

A.    Yes.

Q.    There should be a pen up on that lectern.  Would you mind marking down the numbers 672 for the exhibit number that was associated with this phone number?

A.    Okay.

Q.    Did you mark 672 in the exhibit column fourth row down?

A.    Yes, I did.

Q.    Thank you.  All right, if we could go back to 672C?  I'd like to turn to the third page of the document.  Investigator, if you wouldn't mind hitting that clear button on your monitor one more time?  Thank you.

          All right.  Now, the third page of your extraction report here does that appear to be a contact listing?

A.    Yes.

Q.    I'll direct your attention to entry No. 8 in the contacts list.  Can you explain what we're looking at here?

A.    This is a contact list and it has the name Ant, A-N-T, with a phone listed as 585-491-4771.

Q.    Okay. All right, if we could go back to Government's Exhibit 10, please?  Investigator, I'll ask you to take a look at this exhibit.  Can you please let me know if you see that contact number on this chart that was phone number 491-4771.

1  A.   Yes, I do.

2  Q.   And if you wouldn't mind circling it on the chart, please?

3  All right, you've circled the number second from the bottom

4  that's 491-4771?

10:55:17AM 5  A.   Yes.

6  Q.   And who is the user associated with that phone number on

7  the chart?

8  A.   Anthony Williams.

9  Q.   Okay. Thank you.  If you could hit that clear button

10:55:27AM 10  again?  If we could go back to Exhibit 672C?  And zoom in on

11  contact No. 13.  Investigator, what is the 13th listed contact

12  in this phone?

13  A.   It says the name is -- I'm not familiar with the word,

14  it's B-A-C-A-L-A-O, Bacalao Tito.

10:55:58AM 15  Q.   Okay. So two words --

16  A.   Yes.

17  Q.   -- there?

18  A.   Yes.

19  Q.   And what is the phone number associated with Bacalao Tito?

10:56:08AM 20  A.   It is 585-200-8285.

21  Q.   If we could turn back to Government's Exhibit 10?

22  Investigator, do you see that contact number for Bacalao Tito

23  200-8285 listed on this chart?  And if you wouldn't mind

24  circling it?  All right, you've circled the number three up

10:56:39AM 25  from the bottom?

1   A.   Yes.

2   Q.   And who is the user associated with that phone number?

3   A.   It says Jose Olivencia a/k/a Bacalao Tito.

4   Q.   Okay, thank you.  If you could clear your mark, please?

10:56:56AM 5   We can go back to Exhibit 672C.  If we could zoom in on the

6   28th contact.  Investigator, what is this contact?

7   A.   It says the name CJ with a phone of 585-309-0985.

8   Q.   All right. And if we could go back to Government's Exhibit

9   10?  Investigator, if you see that number 309-0985, could you

10:57:35AM 10   please circle it on Government's Exhibit 10?  All right,

11   you've placed a circle on the number at the very bottom of the

12   chart; is that correct?

13   A.   Yes.

14   Q.   And who is the user associated with that phone number?

10:57:49AM 15   A.   It says Mickael Grant a/k/a CJ.

16   Q.   Okay. And Mickael is M-I-K-A-E-L?

17   A.   Yes.

18   Q.   Going back to Government's Exhibit 62C.  If you could

19   clear your mark, Investigator?  Thank you.  We're zooming in

10:58:18AM 20   on contact 98.  Could you please explain what we're looking at

21   here?

22   A.   It says the name Princesa with a phone number of

23   585-743-0005.

24   Q.   Switching back to Government's Exhibit 10 , Investigator,

10:58:39AM 25   please let me know if you see that contact number 743-0005 on

1   the chart?

2   A.    Yes, I do.

3   Q.    You've placed a circle around the number that is seventh

4   from the top the first number in black ink?

10:59:03AM 5   A.    Correct.

6   Q.    There's an asterisk by that phone number, correct?

7   A.    Yes.

8   Q.    Which indicates it was a wiretap phone?

9   A.    Correct.

10:59:08AM 10   Q.    And who is the user associated with that phone number?

11   A.    Roberto Figueroa.

12   Q.    If you could clear your mark and we'll go back to

13   Exhibit 672C.  We're zooming in on entry No. 111 of the

14   contact list.  Investigator, who is this contact?

10:59:40AM 15   A.    It has the name Tasha with a phone number of 787-297-9357.

16   Q.    If we could flip back to Government's Exhibit 10?

17   Investigator, please let me know if you see that contact

18   number listed on Government's Exhibit 10?

19   A.    Yes, I do.

11:00:00AM 20   Q.    And would you mind circling it, please?  So you've circled

21   the number sixth from the bottom that's the 787-297-9357?

22   A.    Yes.

23   Q.    And who is the user associated with that phone number?

24   A.    Freddie Silva and then it says Tasha/Tacha.

11:00:29AM 25   Q.    All right.  The first is spelled T-A-S-H-A/T-A-C-H-A?

1  A.   Yes.

2  Q.   All right. Going back to Government's Exhibit 672C, I'd

3  like to direct your attention to entry No. 117 in the contact

4  listing.  What is this contact?

11:00:56AM 5  A.   It says the name is Watson with a phone number

6  585-766-8057.

7  Q.   I think you might have misplaced some numbers.

8  A.   Oh, 585-766-0857.

9  Q.   If we could flip back to Government's Exhibit 10?

11:01:18AM 10  Investigator, let me know if you see that number listed on

11  this chart?

12  A.   Yes.

13  Q.   All right. Who is the user associated with that?

14  A.   Carlos Javier Figueroa a/k/a Javi a/k/a Big Bro.

11:01:52AM 15  Q.   Okay. Investigator, I'd like to flip back to an exhibit

16  that's already been received into evidence, that's

17  Exhibit 494A.  If we could go to the contacts and zoom in on

18  contact 21?

19        Investigator, does this appear to be a contact

11:02:40AM 20  listing from another cell phone extraction?

21  A.   Yes.

22  Q.   And the name here is Bacalao Tito?

23  A.   Correct.

24  Q.   And the associated phone number is 585-200-8285?

11:02:54AM 25  A.   Yes.

1   Q.   Now, is that the same contact name and information or

2   contact name and phone number that you just identified as

3   being in Exhibit 672?

4   A.   Correct.

11:03:10AM 5   Q.   Okay. Now, sticking with this same Exhibit 494A, I'd like

6   to turn to another contact.  It will be contact No. 228 --

7   actually, 226 -- contact No. 228.

8   A.   Yes, I see it.

9   Q.   And what is the contact at 228?

11:04:31AM 10   A.   228 says Mi Hermano Roberto, phone number of 585-743-0005.

11   Q.   Okay. And is that contact phone number the 585-743-0005

12   also saved in the phone that we were just discussing 672C?

13   A.   Yes.

14   Q.   And that contact was saved as Princesa?

11:05:05AM 15   A.   Correct.

16   Q.   Going back to Exhibit 672C, you mentioned that there were

17   some MMS or multimedia messages included in that extraction?

18   A.   Yes.

19   Q.   We're at page 9 of the extraction report.  Now you

11:05:33AM 20   mentioned an MMS is photographs?

21   A.   Could be photographs, audio, video, yes.

22   Q.   Okay. Now, we've zoomed in on page 9 of Exhibit 672C.  Can

23   you explain the columns in this area of the extraction ?

24   A.   So obviously the first column is just what number message

11:05:59AM 25   it is, how Cellebrite labeled that number message.

1          The second column where it says parties, it's going

2    to have the date and time, that's the time stamp.  It has the

3    to and from heading and then it has the direction: In going or

4    outgoing.

11:06:19AM 5          Then the content of the message.  Basically gives

6    you a little thumbnail of what the picture looked like.

7          And then the portion in blue that's underscored,

8    that's underlined is actually the file path.  You can click on

9    that and it would give you a option to go to the file folder

11:06:47AM 10   or the decimal format that that picture was either created or

11   saved to.

12          And then under the heading other, it's going to

13   give you the status of that message and whether or not it was

14   deleted and then recovered.  None of these were deleted and

11:07:11AM 15   recovered.

16   Q.   Okay. And do these -- there's four entries here; is that

17   correct?

18   A.   Correct.

19   Q.   Do these four entries appear to be in reverse

11:07:20AM 20   chronological order meaning --

21   A.   Yes.

22   Q.   -- the first entry was most recent and the fourth one

23   would have been the oldest?

24   A.   Yes.

11:07:33AM 25   Q.   So let's start with the entry No. 4 and go in

1    chronological order.  Entry No. 4, the date and time is

2    January 12th, 2018 at 11:28:07 a.m.; is that correct?

3    A.    Yes.

4    Q.    And what time zone is that in?

11:07:58AM 5    A.    This is in Eastern Time.

6    Q.    And how do you know that?

7    A.    Because it says UTC which is code for Universal

8    Coordinated Time.  I know that that's -- the abbreviation for

9    it, the C and T are backward, and it has minus five which is

11:08:17AM 10   depending on the time of year, it's daylight savings.  So

11   that's the Eastern Time zone.

12   Q.    Okay. And who are the parties involved in this message?

13   A.    It's to Tasha and it's from this phone to Tasha.

14   Q.    Okay. And was Tasha one of those contact numbers that we

11:08:39AM 15   just reviewed that was saved in the phone?

16   A.    Yes.

17   Q.    Okay. So whoever had this phone sent this message to

18   Tasha?

19   A.    Correct.

11:08:48AM 20   Q.    And what is the content of the message?

21   A.    It appears to be a handwritten note.

22   Q.    Okay. Now have you had a chance to review an enlarged

23   version of that attachment that was sent at 11:28:07 a.m. on

24   January 12th, 2018?

11:09:10AM 25   A.    Yes.

1  Q.   Okay. If we could move on to the next page of the PDF

2  exhibit?  Investigator, what does this appear to be?

3  A.   This is an enlarged version of that handwritten note.

4  Q.   Okay. So this is a photograph of a handwritten note that

11:09:40AM 5  was texted to the contact saved as Tasha?

6  A.   Correct.

7             **MR. VACCA:** Objection, leading.

8             **THE COURT:** Overruled.

9             **THE WITNESS:** Yes.

11:09:49AM 10  **BY MS. KOCHER:**

11  Q.   If we could go back to -- so again this was sent at

12  approximately 11:28 a.m. on January 12th, 2018?

13  A.   That is correct.

14  Q.   And what does this photo appear to be?

11:10:05AM 15  A.   These are names and addresses.

16  Q.   If we could go back to the prior page in the exhibit?  So

17  we're back to the summary of the MMS messages.  Investigator,

18  let's move forward to entry No. 3.  What is that?

19  A.   That is another -- appears to be handwritten note.  It was

11:10:37AM 20  taken -- or I'm sorry, sent at 11:28:58 seconds on the same

21  date.

22  Q.   Okay. So it was sent --

23  A.   To Tasha.

24  Q.   And that would have been sent less than a minute after the

11:10:55AM 25  first one was sent?

1  A.    Correct.

2  Q.    To the same contact Tasha?

3  A.    Yeah.

4            **MR. VACCA:** Objection, leading.

11:11:00AM 5            **THE COURT:** Overruled.

6            **THE WITNESS:** Yes.

7  **BY MS. KOCHER:**

8  Q.    Now have you also had a chance to view an enlarged version

9  of that message that was sent?

11:11:11AM 10 A.   Yes.

11 Q.    Okay. If we could turn to -- I believe it's page 11.

12 Investigator, what are we looking at on page 11 of

13 Exhibit 672C?

14 A.    This is what appears to be a handwritten note with names

11:11:36AM 15 and addresses with the middle name and address scribbled out.

16 Q.    Okay. So this is an enlarged version of the photograph

17 that was sent to Tasha at approximately 11:28:58 a.m. on

18 January 12th, 2018?

19 A.    Yes.

11:11:57AM 20 Q.    If we could go back to the MMS summary page?

21 Investigator, what is the second entry?

22 A.    The second entry is time stamped January 28th, 2018, at

23 2:07:02 p.m. to Tasha.  And in the subject section it appears

24 to be a screen shot of a page on the phone and it was sent to

11:12:44AM 25 Tasha.

1   Q.    Okay. Again this is in Eastern Standard Time?

2   A.    Correct.

3   Q.    Okay. And have you had a chance to view an enlarged image

4   of what was sent to Tasha at 2:07:02 p.m. on that same day --

11:13:03AM 5   I'm sorry, on January 28th, 2018?

6   A.    Yes.

7   Q.    If we could turn to the 12th page of our exhibit?

8   Investigator, what is on the 12th page of Exhibit 672C?

9   A.    This appears to be a screen shot of a U.S. Postal Service

11:13:27AM10   tracking information.

11   Q.    Does this include a tracking number?

12   A.    Yes, it does.

13   Q.    All right. And this is an enlarged version of what was

14   sent to Tasha at approximately 2:07:02 p.m. on January 28th,

11:13:45AM15   2018?

16   A.    Yes.

17   Q.    If we could go back to page 9?  If we could go back to

18   page 9?  Investigator, so that second entry that we just

19   viewed, that was an image sent to Tasha, so another outgoing

11:14:27AM20   message?

21   A.    Correct.

22   Q.    Okay. If we could go back to the enlarged version?  You

23   see the text there to the right of the image?

24   A.    Yes.

11:14:46AM25   Q.    That indicates 1/28/2018 at 2:07:02 p.m. from Tasha.  So

1 | is that from should actually be to?

2 | A.   Correct, it should be to.

3 | Q.   Okay, thank you.  If we could go back to page 9?  All

4 | right, and the entry No. 1, what is that?

11:15:19AM 5 | A.   This is an incoming message from Tasha, it's time stamped

6 | at 1/28/2018 at 2:26:47 p.m. Eastern Standard Time and to this

7 | phone.

8 | Q.   And that's in Eastern Standard Time?

9 | A.   Correct.

11:15:47AM 10 | Q.   So this is an incoming message?

11 | A.   This is incoming.

12 | Q.   And which contact sent this message to the seized phone

13 | Exhibit 672?

14 | A.   The contact listed as Tasha.

11:16:03AM 15 | Q.   Okay. And can you tell what was sent to this exhibit?

16 | A.   This appears to be a screen shot --

17 | **MR. VACCA:** Objection, Your Honor.  He said if he

18 | knew and he said it appears.

19 | **THE COURT:** Overruled.  Go ahead.

11:16:19AM 20 | **THE WITNESS:** This is a screen shot of a page on a

21 | phone being sent to this phone.

22 | **BY MS. KOCHER:**

23 | Q.   Okay.  Have you seen an enlarged version of that image?

24 | A.   Yes.

11:16:34AM 25 | Q.   All right.  If we could turn to the last page of our

1  exhibit here?  And what does that appear to be?

2  A.   This is tracking information for a package or packages.

3  Q.   Okay. So is this an enlarged version of the image that was

4  sent to the seized cell phone from Tasha on January 28th, 2018

11:17:04AM 5  at about 2:26 p.m.?

6  A.   Yes.

7  Q.   All right. Where does this image indicate the package is

8  being delivered to?

9  A.   Rochester, New York.  Two different zip codes:  14605,

11:17:33AM 10  14621; and two other packages in transit.

11  Q.   Okay. All right.  Now, Investigator, you indicated those

12  four images that we just reviewed were all between the seized

13  cell phone and the contact Tasha which was phone number

14  787-297-9357?

11:18:25AM 15  A.   Yes.

16  Q.   Okay. I'd like to go back to Exhibit 494A that's

17  previously been received in evidence.  And take a look at

18  contact No. 333.  Investigator, we've zoomed in on it on your

19  monitor.  Do you see that contact?

11:18:59AM 20  A.   Yes.

21  Q.   Does that appear to be the same contact name and phone

22  number as what was saved in the seized phone that we were just

23  discussing in Exhibit 672 and 672A?

24  A.   It is the same phone number.  The spelling is off by a

11:19:19AM 25  letter.

1   Q.    Okay.

2   A.    T-A-C-H-A instead of T-A-S-H-A.

3   Q.    Okay. So in the phone we were just discussing Exhibit 672C

4   it was spelled T-A-S-H-A?

11:19:34AM 5   A.    Correct.

6   Q.    And here in contact No. 333 of Exhibit 494A it's spelled

7   T-A-C-H-A?

8   A.    Yes.

9   Q.    All right. Now, Investigator, have you also as part of

11:19:57AM 10   your job worked on eavesdropping investigations?

11   A.    Yes.

12   Q.    And what is an eavesdropping investigation?

13   A.    Also people call them wiretaps, it's basically

14   intercepting and listening to other people's conversations

11:20:14AM 15   whether it be a text or voice over the phone.

16   Q.    And do you have to receive court order to be authorized to

17   listen to telephone conversations?

18   A.    Yes.

19   Q.    About how many wiretap investigations do you think you've

11:20:32AM 20   worked on in your time with the Rochester Police Department?

21   A.    At least a dozen.

22   Q.    Okay. And what sort of tasks have you performed during

23   those investigations?

24   A.    Listening to phone calls, surveillance of the people

11:20:51AM 25   associated with those phones.

1  Q.    Okay. Are you familiar with what system the Rochester

2  Police Department uses in conducting wiretap investigations?

3  A.    Yes.

4  Q.    And what is that system?

11:21:03AM 5  A.    It's a system called SYTECH, S-Y-T-E-C-H.

6  Q.    So you've had a chance to review call data that's

7  intercepted through that SYTECH system?

8  A.    Yes.

9  Q.    What does some of that data include?

11:21:18AM 10  A.    It will have the phone number of both from your target

11  that you're eavesdropping on as well as the incoming or

12  outgoing number.  So the number that's calling in or the

13  number that they are calling.

14         It will have date and time of the call.  You'll

11:21:38AM 15  have your audio file so you're able to go back in and review

16  that later on.  You'll have location data; sometimes it will

17  pinpoint down to exactly where the phone is, sometimes it will

18  just give you a general tower that the phone is hitting off

19  of.

11:21:57AM 20  Q.    All right. Now, during these eavesdropping or wiretap

21  investigations have you also had a chance to review phone

22  records that come directly from the phone company?

23  A.    Yes.

24  Q.    And what sort of information can you get directly from a

11:22:10AM 25  phone company?

1    A.    So from the phone company you're going to get subscriber

2    information, hopefully the phone has a subscriber but

3    sometimes they don't, sometimes it's like a prepaid phone,

4    there's no name associated with the account.

11:22:22AM  5           But you'll have the subscriber information, you'll

6    have the carrier, whatever the phone company is that you're

7    getting the records from; you'll have tower data; you might

8    get actual text messages; and you'll get frequency, who he's

9    calling the most, who the person is calling the most, who is

11:22:42AM 10    sending him the most stuff; you'll get any numbers associated

11    with that phone, any data associated with that phone;

12    incoming, outgoing calls, text messages.

13    Q.    Okay. And that can include the date and time of those

14    calls or messages?

11:22:59AM 15    A.    Yes.

16    Q.    And have you also had a chance -- I know you've testified

17    that you've performed extractions on I think over 700 phones

18    you said.  Have you had a chance to review phone extractions

19    in relation to wiretap investigations?

11:23:15AM 20    A.    Yes.

21    Q.    And you've had a chance to review information pulled from

22    a phone extraction such as the date or time of a particular

23    call or text message?

24    A.    Yes.

11:23:26AM 25    Q.    And have you had a chance to compare the dates and times

1  from the extraction to a call or text that may have been

2  received over the wire?

3  A.    Yes.

4  Q.    Have you noticed any differences in that information?

11:23:39AM 5            **MR. VACCA:** Objection, Your Honor.

6            **THE COURT:** Overruled.  You can answer.

7            **THE WITNESS:** Yes.  A lot of times the times are

8  going to be off, whether -- it can be for several reasons.

9  The tower -- a lot of times the tower that you are getting the

11:23:59AM10 data from may be a little bit off from the phone, the time on

11 the phone.

12            Also the companies provided -- depending on the

13 companies, the carriers, they provide time sometimes in UTC,

14 sometimes it's in Pacific time, sometimes it's Eastern

11:24:20AM15 Standard Time.  So when you're looking at your phone records

16 and your SYTECH reports from your wiretap information and then

17 information from the cell phone company, you may be looking at

18 the same data, the same phone call, but you might actually

19 have three different times.  It's not going to be off a lot,

11:24:41AM20 but it may be off seconds.

21 **BY MS. KOCHER:**

22 Q.    And does that same thing apply for information that you've

23 pulled from a phone extraction in comparing it to SYTECH?

24 A.    Yes.

11:24:59AM25 Q.    Okay. If we can go to Exhibit 494A?  I believe it's page

1    31 of our exhibit and entry No. 98 and 99.  Investigator, does

2    this appear to be a call log or timeline from a cell phone

3    extraction?

4    A.    Yes.

11:25:29AM 5    Q.    Okay. And we have two entries here, entry 98 and 99.  Do

6    those appear to contain the same data?

7    A.    It is the same data.  One is -- one was pulled using a

8    logical extraction, the other a file system extraction.

9    Q.    Okay.

11:25:47AM 10    A.    Two separate kinds of cell phone extractions.

11    Q.    And what event is depicted in entry 98 and 99?

12    A.    It's an incoming call from a person in the contacts as OBB

13    and the phone number was 585-673-6756.

14    Q.    Okay. And if we could go -- are you able to tell -- you

11:26:19AM 15    can't tell what the phone number for the extracted phone is

16    correct?  Just the phone number?

17    A.    Not on this page.

18    Q.    Okay. If we could go to the second page of Exhibit 494A?

19    We're zooming in on the top half of the second page that

11:26:45AM 20    includes the file system section of the device information.

21    Are you able to tell what the associated phone number is with

22    this extraction?

23    A.    Yes.

24    Q.    And what is that?

11:26:56AM 25    A.    It's 585-766-0857.

1  Q.   You might have misplaced those same two numbers?

2  A.   8057.

3  Q.   It's 766-8057?

4  A.   Yes.

11:27:17AM 5  Q.   All right. So that call log that we just looked at was a

6  call between this number and the contact OBB?

7  A.   Yes.

8  Q.   If we could go back to page 31, entry 98 and 99?  Can you

9  tell what time this incoming call occurred at?

11:27:51AM 10  A.   11:14 and 28 p.m..

11  Q.   Okay. And that would be in UTC time, so to make it Eastern

12  standard you would subtract five hours?

13  A.   Correct.

14  Q.   So in Eastern Standard Time this incoming call occurred on

11:28:09AM 15  January 27th, 2018, at 11:14 -- I'm sorry, 6:14:28 p.m.

16  Eastern standard?

17  A.   Yes.

18  Q.   Okay.

19          **MS. KOCHER:** Your Honor, if I could publish the data

11:28:23AM 20  for -- from the wiretap transcript that's Exhibit 1 that would

21  be tab 1-172A-724?  Again just the data portion.  That was

22  received into evidence.

23          **THE COURT:** 1-172A-724 was received for the data.

24          **MS. KOCHER:** Thank you.

11:28:54AM 25  **BY MS. KOCHER:**

1    Q.   Now, Investigator, I have placed what is marked as tab

2    1-172A-724, the data portion from a wiretap transcript on the

3    visualizer.  Are you able to see that?

4    A.   Yes.

11:29:21AM 5    Q.   And what is the date and time of that particular call?

6    A.   January 27th, 2018 at 6:14 and 20 p.m.

7    Q.   Okay.  And do you recognize either of those contact

8    numbers that are listed, the target number and the incoming

9    call number?

11:29:43AM 10    A.   Yes.

11    Q.   Which ones do you recognize?

12    A.   This is the target number, the phone we just talked about;

13    and then the incoming call that was just listed in lines -- I

14    believe it was 98 and 99 that we were just speaking of.

11:30:04AM 15    Q.   Those two entries?

16    A.   Correct.

17    Q.   Okay.  Now, the extraction report for phone number

18    766-8057 and those two entries in the timeline entry 98 and

19    99, does the information from that timeline appear to be

11:30:24AM 20    consistent with the information in this data portion of the

21    wiretap transcript that's Exhibit 1-172A-724?

22                 **MR. VACCA:** Objection, Your Honor.

23                 **THE COURT:** Overruled.

24                 **THE WITNESS:** Yes.

11:30:37AM 25    **BY MS. KOCHER:**

1  Q.   Do you notice any discrepancies other than the handwritten

2  notes?

3  A.   No, I don't.

4  Q.   How about the time?  The time listed on the wiretap

11:30:48AM 5  transcript is 6:14:20.  Whereas the time in the timeline entry

6  from the extraction report was 6:14:28.

7  A.   So eight hundredths of a second off.

8  Q.   Based upon your training and your experience with wiretap

9  investigations and performing cell phone extractions, is that

11:31:12AM 10  surprising to you?

11  A.   Not at all.

12  Q.   I'm sorry,Investigator, what was the time difference

13  between those two calls?  I think you said eight hundredths of

14  a second?

11:31:29AM 15  A.   I have to look back into the extraction report.

16  Q.   Sure.  That would be behind tab 494A.

17  A.   Was that from the timeline?

18  Q.   Yes, entries 98 and 99.

19  A.   Yes, because it's UTC, so we have to subtract the five

11:32:23AM 20  hours, which would be at 6:14:20.  So it's five hours and

21  eight hundredths of a second.

22  Q.   So the extraction report the time on that call is in

23  Eastern Standard Time would be 6:14:28 p.m.?

24  A.   Correct.

11:32:45AM 25  Q.   And looking at the wiretap data extraction on your monitor

1  what is the time listed there?

2  A.   6:14:20 p.m.

3  Q.   That would be an 8 second difference between the two

4  exhibits?

11:32:59AM 5  A.   I'm sorry, 8 seconds, yes.

6          **MS. KOCHER:** Your Honor, would the Court be

7  agreeable to taking a brief recess?

8          **THE COURT:** Sure, I think everybody would appreciate

9  that.  Ladies and gentlemen, we'll take a recess.  In the

11:33:19AM 10  meantime, I'd ask you not discuss the matter or allow anybody

11  to discuss the matter with you.  Jury may step down.

12          (**WHEREUPON**, there was a pause in the proceeding).

13          (**WHEREUPON**, the defendant is present).

14          **THE COURT:** Bring the jury out.

12:10:58PM 15          (**WHEREUPON**, the jury is present).

16          **THE COURT:**  You may continue.

17          **MS. KOCHER:** Thank you, Your Honor.

18  **BY MS. KOCHER:**

19  Q.   All right.  Now, Investigator, I'd like to direct your

12:12:01PM 20  attention back to the extraction report for the phone number

21  685-4661 that was Exhibit 672 and 672C.  If we could go to the

22  last page of that exhibit?

23          Investigator, do you see a zoomed inversion of the

24  last page of the exhibit for the cell phone extraction for

12:12:47PM 25  phone number 685-4661?

```
 1  A.    Yes.
 2  Q.    Okay. You previously testified this is an enlarged version
 3  of the MMS message sent from the contact Tasha with that 787
 4  area code phone number to the seized phone 685-4661 associated
 5  with Leitscha Poncedeleon?
 6  A.    Yes.
 7  Q.    Okay. Now, does this also include tracking numbers or
 8  appear to include tracking numbers?
 9  A.    It does.
10  Q.    I'm going to ask you to take a look at that bottom number
11  and next going to post up Exhibit 795.  Please let me know if
12  you recognize that tracking number on Exhibit 795.
13  A.    I do.
14  Q.    Could you circle where that appears?  All right, so you've
15  circled the seventh number from the top ending in the numbers
16  39?
17  A.    Yes.
18  Q.    I'm sorry, seventh number from the bottom; is that
19  correct?
20  A.    Yes.
21  Q.    And the last two digits are 39?
22  A.    Are 39, yes.
23  Q.    And that is in black font?
24  A.    Yes.
25  Q.    And does this appear to be a Postal package chart?
```

12:13:14PM (line 5)
12:13:25PM (line 10)
12:14:05PM (line 15)
12:14:16PM (line 20)
12:14:23PM (line 25)

1  A.    Yes.

2  Q.    What is the delivery date indicated on the chart for that

3  tracking number?

4  A.    January 19th, 2018.

12:14:36PM 5  Q.    And what is the delivery address?

6  A.    59 Fernwood Avenue.

7  Q.    Okay. Now if we could go back to the extraction for phone

8  number 685-4661?  The last page.  Now just above that tracking

9  number that ends in 39 does there appear to be another

12:15:07PM 10  tracking number?

11  A.    Yes.

12  Q.    And that ends in 6151?

13  A.    That is correct.

14  Q.    All right. I'm going to flip back to our Postal chart

12:15:16PM 15  Exhibit 795.  Please let me know if you recognize that

16  tracking number on this chart as well?

17  A.    Yes, I do.

18  Q.    And where is that if you can circle it?  And you've

19  circled the third number from the bottom?

12:15:39PM 20  A.    Yes.

21  Q.    And that is in blue font?

22  A.    Correct.

23  Q.    Ending in the numbers 51?

24  A.    Yes.

12:15:46PM 25  Q.    What is the delivery date associated with that tracking

1    number?

2    A.    January 22nd, 2018.

3    Q.    And the delivery address?

4    A.    360 St. Paul Street.

12:16:01PM 5    Q.    Okay. If we could go back to the extraction for phone

6    number 685-4661?  The last page.  Now how about the entry

7    above that tracking number that ends in 51, is there another

8    tracking number above that?

9    A.    Yes, there is.

12:16:23PM 10    Q.    And that ends in 4568?

11    A.    Correct.

12    Q.    Okay.  If we could flip back to Exhibit 795, the Postal

13    chart and please let me know if you see that tracking number

14    that ends in 4568?

12:16:41PM 15    A.    Yes, I do.

16    Q.    If you could circle that?  You circled the number at the

17    very bottom of the chart?

18    A.    Yes.

19    Q.    And that's in kind of a orange/brown color?

12:17:01PM 20    A.    Yes.

21    Q.    The last two digits are 68?

22    A.    Correct.

23    Q.    Okay. Now, there doesn't appear to be a delivery date

24    indicated; is that correct?

12:17:09PM 25    A.    That is correct.

1  Q.    But what is the delivery address on the chart?

2  A.    4 Ritz Street.

3  Q.    Okay. And going back again to that exhibit, that last page

4  in the extraction for phone number 685-4661, is there a fourth

12:17:29PM 5  and final tracking number listed on this page?

6  A.    Yes, there is.

7  Q.    And is that at the very top end in 0405?

8  A.    Correct.

9  Q.    Okay. If we could go back to Exhibit 795, the Postal

12:17:46PM 10  chart?  Could you please let me know if you see that tracking

11  number on our chart here?

12  A.    I do.

13  Q.    And if you could circle that?  Now you've circled the

14  number second from the bottom, correct?

12:18:07PM 15  A.    Yes.

16  Q.    And that's in red ink?

17  A.    Yes.

18  Q.    And what was the delivery date and delivery address for

19  that tracking number?

12:18:17PM 20  A.    The date is January 29th, 2018.  And the address is 15

21  Harwood Street.

22  Q.    Now, if we could go back to the extraction report for the

23  phone number 685-4661?  The second to last page.  Now,

24  Investigator, you indicated that that text on the right-hand

12:18:50PM 25  portion of the page where it says from Tasha should actually

1 be to Tasha?

2 A.   That's correct.

3 Q.   That's based upon your review of the cell phone

4 extraction; is that correct?

12:19:02PM 5 A.   Yes.

6             **MR. VACCA:** Leading, Your Honor.

7             **THE COURT:** Overruled.

8 **BY MS. KOCHER:**

9 Q.   Is that correct?

12:19:08PM 10 A.   Yes, that's correct.

11             **MS. KOCHER:** Your Honor, based upon Investigator

12 Ferro's testimony, we will edit the word from to be to and

13 upload it back into Trial Director at the conclusion of today.

14             **MR. VACCA:** I'd object to that, Your Honor.

12:19:23PM 15             **THE COURT:** Objection is noted.

16 **BY MS. KOCHER:**

17 Q.   Now, Investigator, we've been discussing the extraction

18 for the phone number 685-4661 and Exhibit 672?

19 A.   Yes.

12:19:46PM 20 Q.   I'd like to go back to the extraction report for the phone

21 766-8057 that is Exhibit 494A.  If we could turn to page 15

22 and contact entry No. 183.  Investigator, what is this contact

23 information?

24 A.   It has the name as Ley, L-E-Y, with a phone number of

12:20:29PM 25 585-685-4661.

1  Q.   That contact phone number is the same phone number that we

2  were discussing in the extraction which is Exhibit 672A; is

3  that correct?

4  A.   Yes, that's correct.

12:20:44PM 5  Q.   That was the extraction you performed on a phone seized

6  from 292 Barrington Street?

7  A.   Yes.

8  Q.   If we could go to contact No. 333 in this extraction

9  report?  Now, Investigator, you I believe previously testified

12:21:29PM 10  that this contact's name is Tacha, T-A-C-H-A?

11  A.   Yes.

12  Q.   And the phone number is 787-297-9357?

13  A.   Yes.

14  Q.   That's the same contact number that was communicating with

12:21:51PM 15  the contact Lei in extraction 672A?

16  A.   Yes.

17  Q.   And both of those phone numbers are saved as contacts in

18  the extraction report for the phone number 766-8057?

19  A.   Correct.

12:22:11PM 20  Q.   And that is Exhibit 494A that we're looking at right now?

21  A.   Yes.

22  Q.   Now, Investigator, did you perform other cell phone

23  extractions in this investigation?

24  A.   Yes, I did.

12:22:30PM 25           **MS. KOCHER:** Thank you, we'll recall you to discuss

1  those more.  Thank you.

2         **THE WITNESS:** Thank you.

3         **MS. KOCHER:** I don't have anymore questions for

4  today, Your Honor.

12:22:43PM 5         **MR. VACCA:** Just a moment, Your Honor, please.

6                    **CROSS-EXAMINATION**

7  **BY MR. VACCA:**

8  Q.   Investigator, would you turn to Government Exhibit 536A,

9  please?

12:23:20PM 10  A.   Yes.

11  Q.   Do you see it there?

12  A.   Yes, I do.

13  Q.   Now, there's a summary on the left-hand side; is that

14  correct?

12:23:29PM 15  A.   Yes.

16  Q.   And it says Cellebrite Physical Analyzer version, correct?

17  A.   In the --

18  Q.   Right under summary?

19  A.   Yes.

12:23:43PM 20  Q.   Okay. And there's some numbers 735216?

21  A.   Yes.

22  Q.   What does that mean?

23  A.   So that is the version of the Physical Analyzer program.

24  So every time there's an update to the Physical Analyzer, it

12:23:59PM 25  will change that new version.  If it's just a minor update it

 1 would go to point 17, if it was something --

 2          **MS. KOCHER:** Your Honor, I'm sorry to interrupt, I

 3 think the exhibit just appeared.  I don't know that that was

 4 received into evidence.  I attempted to offer it and defense

12:24:12PM 5 counsel objected.

 6          **THE COURT:** Yes, it should not be displayed.  It's

 7 not received.  Go ahead.

 8 **BY MR. VACCA:**

 9 Q.   Okay.  Sir, what do those numbers mean?

12:24:44PM10 A.   That's the version of the Physical Analyzer program.

11 Q.   Okay. Did you use that same program in analyzing all of

12 the cell phones that you -- that you extracted?

13 A.   I used Physical Analyzer.  It might have been different

14 versions depending on an update coming out or not.

12:25:04PM15 Q.   Okay. How often do updates come out?

16 A.   Sometimes you might get two updates in a week, other times

17 it might be a month before an update comes out.

18 Q.   You did the extraction at 185 Exchange Street, correct?

19 A.   Yes.

12:25:15PM20 Q.   Is that at the Rochester Police Department?

21 A.   Yes.

22 Q.   And what date did you do the extraction?

23 A.   The actual extraction?

24 Q.   Yes.

12:25:28PM25 A.   This particular one was 9 -- was September 19th, 2020.

```
 1   Q.    Okay. Do you have that documented somewhere on this?
 2   A.    Yes.
 3   Q.    And where is that?
 4   A.    So if you -- you go down where it says file system.
 5   Q.    Right, extraction time?
 6   A.    So the time the extraction started and the time it ended,
 7   and there's also one for the logical, and let me see if
 8   there's a physical -- there's not a physical on this one.
 9   Q.    Okay. This is about six minutes it took, right?
10   A.    Correct.
11   Q.    All right. Does it print all of this out in six minutes?
12   A.    It doesn't print any of this out.
13   Q.    How did you get it printed out?
14   A.    So whoever -- I will provide the electronic copy to
15   whoever investigator is investigating the case; if they want
16   to print that out, they can print it out, but they would view
17   it in electronic form.
18   Q.    Okay.  How many extractions did you testify regarding
19   today?
20   A.    So far?
21   Q.    So far?
22   A.    Today?
23   Q.    Yeah.
24   A.    That I performed, I think we're up to three maybe.
25   Q.    Three?
```

12:25:46PM (line 5)
12:26:02PM (line 10)
12:26:19PM (line 15)
12:26:32PM (line 20)
12:26:39PM (line 25)

1   A.   Yes.

2   Q.   Okay. And of those three did you look for specific phone

3   numbers?

4   A.   Yes.

12:26:49PM 5   Q.   And did you find the phone number 766-8057?

6   A.   766 -- I don't recall that.

7   Q.   766 -- 585-766-8057?

8   A.   Yes.

9   Q.   Do you recall that?

12:27:08PM 10   A.   Yes.

11   Q.   Okay. And how many times did you see that?

12   A.   I don't know.

13   Q.   Pardon?

14   A.   I don't know.

12:27:17PM 15   Q.   Okay. How about 662-8156?  Do you remember that number?

16   A.   I'd have to look at -- I would have to look at the report

17   for -- I don't look at specific numbers on this.  When I do

18   the report, when I take the data and extract it out, I provide

19   it into a format that it's readable for whatever investigator

12:27:41PM 20   to go through and look at.  I don't go through every single

21   one of these phones.  I just provide the data and give it to

22   the investigator.

23   Q.   Okay.

24          **MR. VACCA:** Thank you, that's all I have right now.

12:27:57PM 25   Thank you.

1          **MS. KOCHER:** I don't have any redirect --

2          **THE COURT:** Okay.

3          **MS. KOCHER:** -- at this time, Your Honor.  Thank

4  you.

12:28:05PM 5          **THE COURT:** Thank you.  You may step down at this

6  time.  Thank you.

7          (**WHEREUPON**, the witness was excused).

8                          *   *   *

9                  <u>**CERTIFICATE OF REPORTER**</u>

10

11          In accordance with 28, U.S.C., 753(b), I certify that

12  these original notes are a true and correct record of

13  proceedings in the United States District Court for the

14  Western District of New York before the Honorable Frank P.

15  Geraci, Jr. on May 12th, 2021.

16

17  <u>S/ Christi A. Macri</u>

18  Christi A. Macri, FAPR-RMR-CRR-CSR(CA/NY)
    Official Court Reporter
19

20

21

22

23

24

25