<pre>
 1                    UNITED STATES DISTRICT COURT

 2                    WESTERN DISTRICT OF NEW YORK

 3   - - - - - - - - - - - - -X
     UNITED STATES OF AMERICA              18-CR-6094(G)
 4
     vs.
 5                                         Rochester, New York
     CARLOS FIGUEROA, XAVIER TORRES,       November 10, 2020
 6   AND JEAN KARLOS PIZZARO,              12:15 p.m.
                     Defendants.
 7   - - - - - - - - - - - - -X

 8                    TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE FRANK P. GERACI, JR.
 9                    UNITED STATES DISTRICT JUDGE

10
                          JAMES P. KENNEDY, JR., ESQ.
11                        United States Attorney
                          BY: KATYLYN HARTFORD, ESQ.
12                             CASSIE M. KOCHER, ESQ.
                               ROBERT MARANGOLA, ESQ.
13                        Assistant United States Attorneys
                          500 Federal Building
14                        Rochester, New York 14614
                          Appearing on behalf of the United States
15

16                        MAURICE J. VERRILLO, ESQ.
                          Appearing on behalf of Xavier Torres
17
                          MATTHEW LEMBKE, ESQ.
18                        Appearing on behalf of Jean Karlos Pizzaro

19                        PAUL VACCA, ESQ.
                          Appearing on behalf of Carlos Figueroa
20

21   ALSO PRESENT:        Nicolas Penchaszadeh, Spanish Interpreter
                          Jesus Barberia, Spanish Interpreter
22                        Sarah Whitcomb, U.S. Probation Office

23
     COURT REPORTER:      Christi A. Macri, FAPR-RMR-CRR-CSR(NY/CA)
24                        Christimacri50@gmail.com
                          Kenneth B. Keating Federal Building
25                        100 State Street, Room 2640
                          Rochester, New York 14614
</pre>

2

**P R O C E E D I N G S**
\* \* \*

1

2

3          (**WHEREUPON**, all defendants are present).

4          **THE CLERK:** USA vs. Carlos Figueroa, Xavier Torres,

12:15:07PM 5 and Jean Karlos Pizzaro.

6                You may be seated.

7                Spanish interpreters, Nicolas and Jesus, please

8 raise your right hand.

9          (**WHEREUPON**, the interpreters were sworn).

12:15:23PM 10          **THE COURT:** Good afternoon.

11          **MR. MARANGOLA:** Good afternoon.

12          **MR. VACCA:** Good afternoon, Judge.

13          **THE COURT:** Are you Carlos Javier Figueroa?

14          **DEFENDANT FIGUEROA:** Yes.

12:15:53PM 15          **THE COURT:** Appear with your attorney Mr. Vacca?

16          **MR. VACCA:** Yes, Your Honor.

17          **THE COURT:** And are you Xavier Torres?

18          **DEFENDANT TORRES:** Yes.

19          **THE COURT:** You appear with your attorney

12:16:03PM 20 Mr. Verrillo?

21          **MR. VERRILLO:** Yes, Your Honor.

22          **THE COURT:** Are you Jean Karlos Pizzaro?

23          **DEFENDANT PIZZARO:**  Yes.

24          **THE COURT:**  You appear with your attorney

12:16:11PM 25 Mr. Lembke?

1                    **MR. LEMBKE** Your Honor, one moment, please.

2            Judge, I'm sorry.  Would you repeat those last

3    couple of questions?

4                    **THE COURT:** Sure.  Are you Jean Karlos Pizzaro?

12:16:30PM 5              **THE DEFENDANT:** Yes.

6                    **THE COURT:** You appear with your attorney

7    Mr. Lembke?

8                    **DEFENDANT PIZZARO:** Yes.

9                    **THE COURT:** Is that yes?

12:16:51PM 10             **DEFENDANT FIGUEROA:** Yes, Your Honor.

11                   **THE COURT:** Thank you.  First of all, this matter's

12   on for a first appearance relating to a fourth superseding

13   indictment that was filed.

14                   Regarding that matter in Count 1, the defendants

12:17:11PM 15   Figueroa, Torres and Pizzaro are charged with narcotics

16   conspiracy.

17                   Count 2, defendants are Figueroa, Torres, and

18   Pizzaro, charged with possession of a firearm.

19                   Count 3, the defendant Figueroa is charged with

12:17:36PM 20   murder while engaged in a narcotics conspiracy.

21                   Count 4, the defendant Figueroa is charged with

22   discharge of a firearm during a drug trafficking crime.

23                   Count 5, the defendant Torres is charged with

24   distribution of heroin.

12:18:04PM 25             Count 6, the defendant Torres is charged with

1 distribution of heroin.

2         Count 7, 8 and 9, the defendant Pizzaro is charged

3 with distribution of heroin on three separate dates in

4 December of 2015.

12:18:33PM 5         Count 10, the defendant Figueroa is charged with

6 possession of heroin with intent to distribute.

7         Count 11, the defendant Figueroa is charged with

8 maintaining a drug involved premises.

9         Count 12, the defendants Figueroa and Torres are

12:19:03PM 10 charged with possession of heroin with intent to distribute.

11         Count 13, the defendants Figueroa and Torres are

12 charged with possession of cocaine with intent to distribute.

13         Count 14, the defendants Figueroa and Torres are

14 charged with maintaining a drug involved premises.

12:19:40PM 15         Count 15, the defendant Figueroa is charged with

16 possession of cocaine with intent to distribute.

17         Count 16, the defendants Figueroa and Pizzaro are

18 charged with maintaining a drug involved premises.

19         Count 17, the defendant Figueroa is charged with

12:20:10PM 20 possession of firearms in furtherance of a drug trafficking

21 crime.

22         Count 18, the defendant Figueroa is charged with

23 possession of heroin with intent to distribute.

24         Count 19, the defendant Figueroa is charged with

12:20:37PM 25 maintaining a drug involved premises.

1          Mr. Vacca, on behalf of Carlos Javier Figueroa, do

2 you waive a full reading of the indictment?

3          **MR. VACCA:** I do, Your Honor.  I do not have a copy

4 of the superseding indictment.

12:20:54PM 5          **THE COURT:** Do you have copies?

6          **MR. MARANGOLA:** I can give an extra copy, Judge.

7          **MR. VACCA:** We waive a full reading and reserve all

8 rights.

9          **THE COURT:** Mr. Verrillo, regarding Xavier Torres,

12:21:07PM 10 do you waive a full reading of the fourth superseding

11 indictment?

12          **MR. VERRILLO:** Yes, Your Honor, enter a not guilty

13 plea on all charges.

14          **THE COURT:** Do you have a copy?

12:21:14PM 15          **MR. VERRILLO:** I do, yes.

16          **THE COURT:** Thank you.  And, Mr. Lembke, on behalf

17 of your client Jean Karlos Pizzaro, do you waive a full

18 reading of the fourth superseding indictment?

19          **MR. LEMBKE** I do, Your Honor, and enter a plea of

12:21:26PM 20 not guilty.  I have a copy.

21          Regarding all three defendants -- Carlos Figueroa,

22 Xavier Torres, and Jean Karlos Pizzaro -- as required by the

23 Due Process Protections Act, the Court confirms the United

24 States' obligation to produce all exculpatory evidence to the

12:21:51PM 25 defendant pursuant to *Brady vs. Maryland* and its progeny, and

1    orders it to do so.

2              The Government must make these disclosures in

3    sufficient time that the defendant will have reasonable

4    opportunity to act upon the information.

12:22:14PM 5              Failure to do so may result in consequences

6    including, but not limited to, exclusion of evidence, adverse

7    jury instructions, dismissal of charges, contempt proceedings,

8    or sanctions by the Court.

9              I do have copies of a written order for all

12:22:38PM10    counsel.  Maybe give it to Brian, have him distribute that.

11              This matter is on for pretrial conference.  I have

12    received some materials from the parties.

13              First of all, there's a motion from Mr. Vacca to

14    adjourn the current scheduled trial date from January 4th,

12:23:24PM15    2021, for 30 days I believe.

16              Mr. Vacca, do you want to be heard on that?

17              **MR. VACCA:** Yes, Your Honor.  I do have a case -- I

18    just started a trial last week in state court, it's a

19    murder/manslaughter and aggravated criminal contempt.  It's

12:23:40PM20    supposed to take a month.  We did pick a jury last week, it

21    took all week, and we picked 16 jurors.

22              And yesterday two of the jurors dropped out for

23    various reasons.  Now we've got 14.  Judge Doran, because this

24    is the oldest case pending, this was supposed to be tried on

12:23:56PM25    March 30th; then we had Covid.  Judge Doran has indicated if

1   there is a mistrial, which I think there's a shot there's

2   going to be, we're going to have to start picking the next day

3   until this case is done.

4           There's been a bunch of mistrials over in state

12:24:11PM 5   court because of Covid, unavailability of witnesses, et

6   cetera.

7           I don't want these to bump into each other.  I need

8   at least a month.  Plus, I did get a new drive the other day

9   that I have to review.

12:24:23PM 10           **THE COURT:** You got a new what?

11           **MR. VACCA:** Drive with discovery on it.  The other

12   counsel did too.  It's going to take me a while to go through

13   that.

14           So I think a month is being a little liberal.  Two

12:24:38PM 15   months would be better.  We just got the superseding

16   indictment as well.

17           **THE COURT:** Mr. Marangola on that?

18           **MR. MARANGOLA:** Judge, first of all, with respect to

19   the superseding indictment, I know that Mr. Figueroa is -- the

12:24:58PM 20   only charge that's different for him, number one, it's a

21   conspiracy charge in that 280 grams of crack are now for the

22   controlled substances alleged; and the murder charge in

23   Count 3 is under a different section.

24           With respect to the motion for an adjournment,

12:25:20PM 25   Judge, I've not heard positions of other counsel.  The

 1 Government is ready to proceed.  I am aware that Covid has

 2 delayed a number of trials, and we've run into challenges with

 3 witnesses as well.  So I guess I'll defer to the Court and

 4 counsel how it wishes to handle that.

12:25:40PM 5       **THE COURT:** Thank you.  Mr. Lembke on the

 6 adjournment issue?

 7       **MR. LEMBKE:**  Whatever the Court and Mr. Vacca feel

 8 is appropriate.  We certainly don't have any objection to

 9 that, Judge.

12:25:52PM 10       **THE COURT:** Mr. Verrillo?

11       **MR. VERRILLO:** Your Honor, whatever the Court

12 desires in this regard.

13       I just want to note that I have a trial on the 2nd

14 and 3rd of February, if the Court would allow -- if we're

12:26:36PM 15 going to start a new date, if I could be allowed to finish

16 those, which is the 2nd, 3rd, I think two first business days

17 of February.

18       **THE COURT:** Okay, thank you.

19       Mr. Vacca, I do understand your situation, but I'm

12:26:51PM 20 going to deny the application to adjourn this.  This matter --

21 this case is scheduled for currently four months with an

22 indication it could go into five months.

23       This is a nightmare regarding scheduling witnesses

24 and proceedings.  Everybody's in the same boat regarding the

12:27:11PM 25 Covid situation scheduling matters.

1      We've had this set for some time.  I'm not amenable

2  to changing the date at this time.  So the application to

3  adjourn the trial from January 4th is denied.

4      There's another motion by Mr. Torres, Mr. Verrillo,

12:27:39PM 5  regarding the use of the alias Pistolita for Mr. Torres.

6      Did you want to be heard on that?

7      **MR. VERRILLO:** Yes, Your Honor.  Your Honor, I filed

8  the motions obviously in accordance with the Court's order in

9  advance of trial.  We have a concern about the nickname

12:28:06PM 10  Pistolita being used in this case both in terms of the

11  indictment and in terms of the trial.

12      This is the now fourth indictment, and I would

13  point out to the Court under Rule 7 the indictment needs to

14  have a plain, concise and definite written statement of the

12:28:25PM 15  essential facts constituting the offense charged.

16      The allegation that the defendant has a nickname is

17  not an essential fact to any of the elements associated with

18  the charge.

19      So our first request under Rule 7 and the request

12:28:39PM 20  for relief would be to remove from the -- from the

21  indictment -- from the caption the reference to Pistolita,

22  which we would indicate to the Court we believe is prejudicial

23  in light of the allegations.  There's allegations of criminal

24  violence and other activities, and we're concerned about the

12:28:57PM 25  prejudice associated with the name.

1          As I've explained in my motion, he's been called

2     that since a young kid.  He apparently had a lot of vitality,

3     he was a cowboy and all the other stuff.  So that has nothing

4     to do with this case.  And we're very concerned about any

12:29:11PM 5     prejudice in that name being used in this case.

6          And so that's our first issue.

7          **THE COURT:** It's my understanding that that's the

8     name he was known by --

9          **MR. VERRILLO:** Yes.

12:29:21PM 10          **THE COURT:** -- by members of the alleged conspiracy?

11          **MR. VERRILLO:** He's used that name and other names,

12     but that is the name that had been used.

13          **THE COURT:** Doesn't that make it relevant?

14          **MR. VERRILLO:** Well, I think it can be referenced

12:29:33PM 15     without referencing the name as far as -- I think the

16     Government has said it's dealing with identification.  They

17     want to be able to identify him.

18          But I think there's other ways to reference that

19     without getting into the name.  And as I said in the *Farmer*

12:29:47PM 20     case, I don't know how the Government intends to use this

21     nickname, but we're concerned about prejudice associated with

22     this.

23          So both in terms of use in the indictment and also

24     in the presentation at trial so -- and I think the concern

12:30:03PM 25     obviously under 404(a)(1) is any attempt to infer some type of

1  character trait or criminal behavior, which is our concern,

2  that we don't want any prejudice associated with that.  So

3  that relates to that issue.  I don't know if you want me to

4  go to the other --

12:30:20PM 5          THE COURT: Let me hear Mr. Marangola's response on

6  that.

7          MR. MARANGOLA: Judge, did the Court receive our

8  submission?

9          THE COURT: Yes.

12:30:26PM 10          MR. MARANGOLA: Essentially the law I think is

11  pretty well-settled that evidence of an alias is admissible in

12  the event it is used for identification purposes.

13          In this case that's the sole purpose it will be

14  used.  The Government does not intend to ask the jury to draw

12:30:40PM 15  any inference the defendant is more likely to commit crimes

16  because of that alias.

17          But, nonetheless, there are numerous witnesses that

18  knew the defendant by that alias and, therefore, we intend to

19  ask how they knew him and use the introduction of the alias

12:30:59PM 20  solely for that purpose.

21          THE COURT: Did you have anything else on that

22  issue?

23          MR. VERRILLO: No, that was it on that issue.

24          THE COURT: Yes, regarding the alias of Pistolita

12:31:14PM 25  regarding Xavier Torres, based upon the representation of the

1    Government that that was one of the names by which he was

2    known by alleged co-conspirators, that obviously is relevant

3    testimony.

4            If that name is used in the abstract to carry a

12:31:36PM 5    negative connotation, the Court would understand the

6    objection.  But based upon those representations, the motion

7    to preclude the use of that alias of Pistolita is denied.

8            Do you have another motion?

9            **MR. VERRILLO:** Your Honor, I had raised the issue

12:31:57PM 10    about the discovery.  I had received recently some discovery

11    related to the Gonzalez shooting, which goes back to June of

12    2016, and this case against Mr. Torres was commenced in

13    November of 2018.

14            Judge Feldman had issued a scheduling order in June

12:32:14PM 15    of 2019 that discovery under Rule 16 and the Rule 12 notice be

16    completed by July 12th of 2019.

17            So our position is sort of it wasn't complied with

18    by the Government.  I know Mr. Marangola hasn't been involved

19    in the past few months, but the Government has had the

12:32:33PM 20    opportunity to provide discovery of a matter that went back

21    four years.

22            Discovery has been provided now, but it wasn't

23    timely.  And obviously if I had received it in a timely

24    fashion, I could have filed motions and other normal relief

12:32:49PM 25    under the omnibus motions, I could have filed on all those

1   issues.

2            And so I know the Government indicates it's not

3   going to use statements from the 2016 investigation by

4   Mr. Torres, but still we've had a lack of time to investigate

12:33:06PM 5   the statements that have been provided, the discovery that's

6   been provided has redacted references to civilian witnesses,

7   which would assist in our preparation.

8            There's also a reference to a source talking about

9   potential exculpatory information about a Ruben Gonzalez who

12:33:26PM 10   made some statements about this murder, his involvement, and

11   we'd like to investigate all those things.

12            So we're prejudiced because we weren't given that

13   opportunity, and I think the appropriate remedy is to suppress

14   and preclude any evidence that should have been disclosed

12:33:42PM 15   under Judge Feldman's order.

16            **THE COURT:** Thank you.  Mr. Marangola?

17            **MR. MARANGOLA:** Judge, the Government had no

18   intention of even proceeding forward with the evidence of that

19   murder back in whatever it was when the defendant was

12:33:59PM 20   initially charged.

21            This investigation, as the Court knows, has been

22   ongoing for several years and it continued after individuals

23   were charged in this case.  That's why there's now a fourth

24   superseding indictment.

12:34:11PM 25            So when the Government decided it was, in fact,

1  intending to offer proof of that, we provided evidence of that

2  information to the counsel in the case.  That was two months

3  out from trial here.

4          I'm not sure how any prejudice whatsoever has been

12:34:30PM 5  articulated by the defense.  They've got more than enough time

6  to look into it.

7          So in terms of a failure to comply, this wasn't

8  even on the Government's radar at the time that previous

9  motion had been issued.

12:34:48PM 10         And then in terms of prejudice, I don't think given

11  that there is over two months before the trial starts, that

12  the defense established any prejudice in their ability to not

13  investigation the information.

14          **THE COURT:** Thank you.  Yes, based upon the length

12:35:04PM 15  between now and the trial date and the representation by the

16  Government, at this point I'll deny the motion.

17          However, subject to it being renewed, Mr. Verrillo,

18  during the course of your preparation over the next couple

19  months you discover an issue that needs to be brought to the

12:35:19PM 20  attention of the Court, I'll allow you to renew that

21  application.

22          **MR. VERRILLO:** Thank you.  I also made the Court

23  aware -- one final issue as a part of this discovery.  I did

24  receive a video related to the crime scene of this murder and

12:35:34PM 25  I did raise concerns about its prejudice and gruesome nature.

1           I haven't gotten an exhibit list from the

2   Government.  I don't know if formally whether they're going to

3   offer that or not, but I did want to make the Court aware of

4   this issue, this category, and I would raise objections to any

12:35:49PM 5   use of that evidence if it's offered by the Government.

6           THE COURT: Sure.  Again I'll reserve your right to

7   make an application on that after you've had a chance to

8   review that exhibit list if it's going to be offered for

9   trial.

12:36:02PM 10           Any other motions, Mr. Verrillo?

11           MR. VERRILLO: That's it at this time.  Thank you.

12           THE COURT: Mr. Vacca, do you have any objections?

13           MR. VACCA: Not at this point, Your Honor.

14           THE COURT: Mr. Lembke, do you have any motions?

12:36:13PM 15           MR. LEMBKE:  No, sir.

16           THE COURT: I do have from the defendant Torres a

17   requested *voir dire*, which I will obviously review and

18   incorporate into my *voir dire*, questions I feel appropriate.

19           In addition, I received a witness list from the

12:36:36PM 20   Government, it lists some 150 witnesses; I believe a number of

21   them would be witnesses who would lay a foundation regarding

22   documents and other materials.  That may not be necessary if

23   the parties enter into some type of stipulation.

24           I received notice from the defendant Xavier Torres

12:37:03PM 25   of one witness, attorney John Molloy.  I have received notice

1  of three exhibits regarding the defendant Xavier Torres.

2                I received some proposed jury instructions from the

3  Government as well.

4                Are you going to submit anything on *voir dire*?

12:37:33PM 5           **MR. MARANGOLA:** No, Your Honor, we'll defer to the

6  Court's *voir dire*.  I can submit a revised jury instruction to

7  reflect some of the changes in the indictment given that the

8  deadline for those initial instructions was before the return

9  of the superseding indictment.

12:37:48PM 10          **THE COURT:** Great, thank you.

11               When will you have your exhibit list prepared, at

12 least a preliminary one?

13               **MR. MARANGOLA:** A preliminary one we can get -- I

14 can try to get to the Court at the same time I get the *Jencks*

12:38:02PM 15 material about a month before trial.  We're working on

16 finalizing that, getting transcripts, getting *Jencks* material

17 together.  We can try a draft exhibit list at about that time.

18               **THE COURT:** So December 1st?

19               **MR. MARANGOLA:** I think we have December 4th is what

12:38:16PM 20 we advised counsel.

21               **THE COURT:** Okay, December 4th.

22               Mr. Vacca, do you have proposed *voir dire* or are

23 you just going to --

24               **MR. VACCA:** I'm going to go with the Court, Your

12:38:32PM 25 Honor.

1          **THE COURT:** You haven't submitted any witness list

2  at this point?

3          **MR. VACCA:** Not at this juncture, Your Honor.

4          **THE COURT:** Or exhibits?

12:38:39PM 5          **MR. VACCA:** Pardon?

6          **THE COURT:** Or exhibits?

7          **MR. VACCA:** Or exhibits, no.

8          **THE COURT:** Okay.  And, Mr. Lembke, regarding

9  Mr. Pizzaro?

12:38:46PM 10          **MR. LEMBKE:**  Same.

11          **THE COURT:** *Voir dire* with the Court.  No witnesses

12  at this point or exhibit list?

13          **MR. LEMBKE:**  No, sir.

14          **THE COURT:** Okay.

12:38:54PM 15          **MR. VACCA:** Your Honor, one thing, at some point in

16  time I may need a letter from Your Honor, an engagement type

17  of letter, obviously taking preference over state court cases,

18  but I'll just wait and see what happens, if that's okay?

19          **THE COURT:** Sure.

12:39:11PM 20          **MR. VACCA:** Thank you.

21          **THE COURT:** What judge are you --

22          **MR. VACCA:** Judge Sinclair, but it's Judge Doran who

23  is doing the real pushing.  He's the supervising judge.

24          **THE COURT:** I can push Judge Doran around.

12:39:27PM 25          **MR. VACCA:** Thank you.

1          **THE COURT:** Regarding stipulations, have there been

2    any proposed stipulations at this point, Mr. Marangola?

3          **MR. MARANGOLA:** There have, Judge.  I've provided a

4    number of stipulations to counsel in the case, I think it's a

12:39:41PM 5   few weeks ago now, concerning wiretap foundation, foundation

6    for pole cameras, cell phone extractions, chemists, other lab

7    folks, sort of essential chain of custody type of foundation

8    witnesses.

9          I know some counsel indicated they were intending

12:40:03PM 10  to review them with their clients.  I've not heard anyone

11   indicate that they would.

12         I know Mr. Vacca has been on trial.  I think he had

13   some initial discussions with Mr. Figueroa concerning those,

14   but as of right now I have not heard anyone indicate that they

12:40:27PM 15  are prepared to stipulate as we've offered.

16         **MR. VACCA:** Your Honor, I did furnish copies of the

17   proposed stipulations to my client, and we did review it on a

18   couple of occasions in person and on the phone, and he's

19   indicated to me that he's not in a position at the present

12:40:41PM 20  time to consent to that.

21         **THE COURT:** All right.  Why don't we give this to

22   counsel, give them an opportunity to review those proposed

23   stipulations.

24          Mr. Vacca, Mr. Lembke and Mr. Verrillo, I think we

12:40:54PM 25  should come back for another pretrial conference on December

1  4th since that seems to be the date that a lot of materials

2  are due.

3            December 4th noon work best if you're in state

4  court somewhere?

12:41:09PM 5            MR. VACCA: Hopefully it will be over by then.  It

6  better.

7            THE COURT: Okay.  Why don't we say December 4th at

8  11 o'clock.  We'll come back and handle that issue regarding

9  the exhibit lists, stipulations, and any other issues that

12:41:25PM 10 might arise between now and that time.

11            MR. VACCA: Thank you, Your Honor.

12            MR. MARANGOLA: Judge, was that 11 o'clock or noon?

13            THE COURT: I was thinking noon would be easier for

14  people.  Does noon work better?

12:41:36PM 15           MR. MARANGOLA: That's fine.

16            MR. VACCA: Noon works better.

17            MR. LEMBKE 1 o'clock for you, Rob.

18            MR. MARANGOLA: 12:03.

19            THE COURT: Okay, the Government has given notice

12:41:49PM 20 regarding evidence of uncharged crimes, specifically their

21  intent to introduce evidence as part of a conspiracy,

22  potential sale of controlled substances prior to the beginning

23  of the conspiracy in 2015 as either evidence of the conspiracy

24  or 404(b) evidence.

12:42:18PM 25           I don't know if you want to review that and respond

1   to it on December 4th.  Does that make sense?

2              **MR. VERRILLO:** Yes, Your Honor.

3              **MR. VACCA:** Yes, Your Honor.

4              **THE COURT:** Give you a chance to review that.

12:42:25PM 5        The Government has given notice regarding

6   co-conspirator statements.  Obviously we all know what the law

7   is.  If the statements were made in furtherance of the

8   conspiracy, they would be admissible.  But, again, I'll allow

9   you to place your positions regarding that issue as well in

12:42:48PM 10  any writings prior to the December 4th conference.

11             The Government has noticed the prior felony

12  convictions of both Mr. Figueroa and Mr. Torres.

13             Mr. Torres specifically a 2004 conviction for

14  conspiracy to possess with intent to distribute cocaine base.

12:43:19PM 15       Mr. Torres a 2009 conviction for conspiracy to

16  possess with intent to distribute heroin.

17             I don't think anybody's responded to that, but

18  again I'll give you until December 4th to respond on that

19  issue.  Make sure we're all clear on that part of the trial.

12:43:41PM 20       Finally, the Government's given notice regarding

21  Rule 609 evidence regarding potential impeachment evidence of

22  Government witnesses they will supply to counsel prior to the

23  testimony of those particular witnesses.

24             Is there anything else from the Government at this

12:44:03PM 25  time, Mr. Marangola?

1        **MR. MARANGOLA:** Judge, just one if I could.  I think

2   since we did conduct the arraignment on the superseding

3   indictment, I think statutorily the defendants should be

4   advised at least with respect to the additional charges and

12:44:20PM 5   the penalties, and I should probably take care of that now if

6   I may.

7        **THE COURT:** Yes.

8        **MR. MARANGOLA:** With respect to the charge against

9   Mr. Figueroa in Count 3, the murder charge, that carries a

12:44:34PM 10   mandatory minimum sentence of 20 years with a maximum sentence

11   of life imprisonment, maximum fine of $2 million, and a five

12   year supervised release period.

13        With respect to Mr. Torres, the charges are --

14   they're not different other than the dates of the charges that

12:44:55PM 15   are in the current indictment.  They're changed from

16   distribution charges.  The penalty remains the same.

17        And with respect to defendant Pizzaro, he was added

18   to Count 2.  That offense carries a mandatory minimum sentence

19   of 10 years imprisonment with a mandatory sentence -- maximum

12:45:15PM 20   sentence of life.  The sentence on that offense must be

21   imposed consecutively to any other sentence either in this

22   case or in another case.  There's a maximum fine of $250,000,

23   and a supervised release period of five years.

24        The three distribution charges against Mr. Pizzaro

12:45:38PM 25   carry a maximum sentence of 20 years imprisonment, a

1   $1 million fine, and a three-year period of supervised

2   release.

3            And then the final thing, Judge, was -- and I can

4   discuss this further with counsel -- I guess there's a

12:45:59PM 5   forfeiture allegation in the superseding indictment as there

6   had been in the previous indictment, and I guess we just need

7   the position with respect to how to proceed in the event that

8   there's a conviction, meaning will the defendants agree to

9   forfeiture upon conviction?

12:46:18PM 10            In other words, will they agree or allow the Court

11   to decide it, or do they wish the matter be presented to the

12   jury for the jury decision.  If they do, then we can provide

13   the Court a proposed instruction in that regard.

14            As to the December 4th date, I guess I would just

12:46:39PM 15   request, Judge, we can actually -- hopefully move things along

16   on December 4th.

17            If it's possible a week before that date, if

18   counsel will give the Government either responses to its

19   pretrial submissions back from October 27th, or responses with

12:47:00PM 20   regard to the stipulations, that will effect where things will

21   go in terms of the December 4th date so that we'll all be on

22   the same page when we come to court in terms of proceeding

23   that day.

24            **THE COURT:** Sure.  Mr. Vacca, you okay with that?

12:47:15PM 25            **MR. VACCA:** Yes, Your Honor.

1          **THE COURT:** Mr. Verrillo?

2          **MR. VERRILLO:** Yes, Your Honor.

3          **THE COURT:** Mr. Lembke?

4          **MR. LEMBKE:**  Yes, sir.

12:47:20PM 5          **THE COURT:** Again, you can respond to the forfeiture

6    allegation as well by that date.  That will be November 27th.

7          **MR. MARANGOLA:** Judge, with respect to all the

8    defendants in the case, I do have one motion with respect to

9    defendant Pizzaro, so I don't know if the Court wishes to see

12:47:43PM 10   if the other defendants have other matters they wish to

11   address with the Court, but in terms of all three defendants,

12   that's all the Government has at this point.  Thank you.

13          **THE COURT:** Thank you.  Mr. Vacca, do you have

14   anything else to bring to the attention of the Court?

12:47:57PM 15          **MR. VACCA:** No, Your Honor.

16          **THE COURT:** Mr. Verrillo?

17          **MR. VERRILLO:** Your Honor, there may be some -- I

18   may have a few motions that I may want the Court to deal with

19   further based on the indictment and other factors.  So if I

12:48:08PM 20   submit that ahead of December 4th, the Court can deal with it

21   at that time?

22          **THE COURT:** Yes.

23          **MR. VERRILLO:** Okay.

24          **THE COURT:** Enough time for the Government to

12:48:13PM 25   respond to any motions obviously as well.

1        **MR. VERRILLO:** Yes.  Thank you.  I'm all set.

2        **THE COURT:** Mr. Lembke?

3        **MR. LEMBKE:**  Yes, sir.  I don't have anything

4    additional, no.

12:48:22PM 5        **THE COURT:** Mr. Marangola, go ahead.

6        **MR. MARANGOLA:** Judge, with respect to Mr. Pizzaro,

7    the Government is moving for his detention based on the

8    superseding indictment that has been returned.

9        I can sort of go through some of the bases for that

12:48:39PM 10   motion, but I'm not sure if the Court wishes to have that

11   motion heard right now with the other defendants here or

12   schedule it for another time, but the Government is moving for

13   detention of defendant Pizzaro at this time.

14       **THE COURT:** Is that based upon the addition of

12:49:00PM 15   Mr. Pizzaro to Count 2, the firearms possession, and Counts 7,

16   8 and 9, distribution of heroin?

17       **MR. MARANGOLA:** Yes, Judge, that is correct.

18       **THE COURT:** Mr. Lembke?

19       **MR. LEMBKE:**  We're prepared to address the

12:49:14PM 20   detention motion right now.

21       **THE COURT:** Anything else for the other defendants?

22   Mr. Figueroa -- Mr. Vacca, regarding Mr. Figueroa?

23       **MR. VACCA:** No, Your Honor.

24       **MR. VERRILLO:** No, Your Honor.

12:49:28PM 25       **THE COURT:** And Mr. Verrillo regarding Mr. Torres?

1          **MR. VERRILLO:** Nothing further.

2          **THE COURT:** Those defendants could be excused at

3    this time.

4          (**WHEREUPON**, defendants Figueroa and Torres were

12:49:57PM 5    excused from the proceeding).

6          **THE COURT:** Mr. Marangola, you may proceed.

7          **MR. MARANGOLA:** Thank you, Judge.  The Government is

8    moving for detention of Mr. Pizzaro.

9          We would note that based on the nature of the

12:51:53PM 10   charges contained in the indictment, that under Title 18,

11   United States Code, Section 3142(e) there's a statutory

12   presumption that he's both a flight risk and a danger to the

13   community and that he, in fact, should be detained.

14         As I mentioned earlier, the defendant's mandatory

12:52:13PM 15   minimum sentence now is 20 years imprisonment if he were

16   convicted of just the first two counts of the indictment.  The

17   Government submits that is a significant incentive to flee

18   and/or intimidate witnesses.

19         Additionally, Your Honor, this defendant has

12:52:32PM 20   consistently and repeatedly, and I would submit to the Court

21   willfully violated prior orders of release issued both by

22   Judge Feldman and by Judge Pedersen, and specifically with

23   regard to his being ordered not to have contact with witnesses

24   or co-defendants in the case.

12:53:00PM 25         There has been -- back since 2019 the defendant has

1   been told not to live with his co-defendant Carlos Figueroa's

2   significant other Nishayra Gutieriez, who was staying at 6

3   Burbank.

4           After the Government found out that he was, in

12:53:28PM 5   fact, living there, he was ordered not to stay there and then

6   he moved.  He was staying, my understanding is in an apartment

7   on Alexander Street.

8           And then the Government learned that the defendant,

9   after his father in Puerto Rico passed away, moved in with

12:53:49PM 10   Ms. Gutieriez again at 6 Burbank Street.

11          And there had been some communication between

12   counsel, Mr. Lembke, and Judge Pedersen as to why that

13   occurred since he had been previously ordered not to live

14   there.

12:54:05PM 15          And I believe Mr. Lembke advised Judge Pedersen

16   that he told Mr. Pizzaro to go stay there because he was

17   concerned about the defendant's mental well-being since he

18   didn't have any other family in the district, and

19   Ms. Gutieriez was someone with whom he was close.

12:54:28PM 20          Shortly after that Judge Pedersen then issued an

21   order telling the defendant that he was going to have to find

22   an alternative to staying at 6 Burbank while the Court decided

23   whether he was going to permit the defendant to return to

24   Puerto Rico to grieve his recently deceased father, and he was

12:54:53PM 25   ordered again not to have any contact with her or anyone

1  involved in the indictment or any witnesses.

2       Shortly after that the defendant was permitted to

3  return to Puerto Rico where he's been supervised by the

4  District of Puerto Rico.

12:55:16PM 5       And despite being told again that he's not to have

6  contact with co-defendants or witnesses in the case, the

7  Government has learned that the defendant has been speaking on

8  the telephone with co-defendant Carlos Figueroa while

9  Mr. Figueroa is in jail.

12:55:36PM 10       And the Government also learned this -- that when

11  Mr. Pizzaro came into the district this past weekend, he again

12  went to 6 Burbank Street where the defendant Carlos Figueroa's

13  significant other, Ms. Gutieriez, is still residing.

14       So based on his continued and persistent refusal to

12:56:07PM 15  obey the order not to have contact with witnesses,

16  co-conspirators, and co-defendants, as well as the now 20 year

17  mandatory minimum that the defendant is facing, I would ask

18  that the Court detain the defendant on dangerousness as well

19  as risk of flight.

12:56:26PM 20       In terms of the evidence in the case, Your Honor,

21  I'll submit that the proof will show that Mr. Pizzaro was a

22  member of Carlos Figueroa's inner circle, and that at times he

23  had -- he held a supervisory position in this organization.

24  He himself engaged in drug sales and assisted others in doing

12:56:46PM 25  so.

1        The proof will show that during the conspiracy he

2   was arrested with over 50 bags of cocaine and almost 200 bags

3   of heroin during the conspiracy.

4        He pled guilty to possession with intent to

12:57:02PM 5   distribute a controlled substance, that is possession in the

6   fifth degree in state court, as a result of that and was

7   sentenced to seven months -- I'm sorry, ten months

8   incarceration.  He served seven months.

9        And then I expect the proof will show that after he

12:57:16PM 10  served that sentence of imprisonment, he returned to the

11  Burbank Street area and reengaged in drug trafficking, which

12  as the Court knows is one of the factors that the

13  Second Circuit has considered in deciding whether a defendant

14  presents a danger to the community.

12:57:35PM 15       In addition to that, there would be cooperator

16  testimony that the defendant -- of his possession of drugs,

17  money, as well as firearms.

18       So for all those reasons, Your Honor, I would ask

19  that the Court detain the defendant pending trial in this

12:57:51PM 20  matter.

21            **THE COURT:** Thank you.  Can I hear from Probation?

22            **MS. WHITCOMB:** Yes, Judge.

23            **THE COURT:**  Mr. Pizzaro is being supervised in the

24  District of Puerto Rico?

12:58:03PM 25            **MS. WHITCOMB:** That is correct.

1          **THE COURT:** Do you have a report from them?

2          **MS. WHITCOMB:** Your Honor, at last speaking with the

3    officer there, he was in compliance.  However, we did not get

4    any information regarding his travel plans from the district

12:58:16PM 5    prior to his arrival here for court on Friday; we were not

6    aware that he had arrived here in Rochester.

7          We were not made aware of where he was staying

8    until we were contacted by the U.S. Attorney's Office.

9          Yesterday afternoon we did contact Mr. Pizzaro and

12:58:34PM10    we reminded him of the order that he is not to be at 6 Burbank

11    Street.  He was directed to leave immediately.  My

12    understanding was he has secured a hotel room in Greece for

13    the duration of his trip.

14          **THE COURT:** Okay.  Was he at 6 Burbank Street?

12:58:52PM15          **MS. WHITCOMB:** Yes, Judge.

16          **THE COURT:** Okay.  And part of his release order was

17    that he was not to go to that location?

18          **MS. WHITCOMB:** That's correct, Judge.  There was an

19    order on March 26th by Judge Pedersen that amended the

12:59:08PM20    conditions of release modifying the conditions to say that he

21    was not to have contact with Ms. Gutieriez, and to refrain

22    from any contact with 6 Burbank Street.

23          **THE COURT:** Okay.  In addition, when he was released

24    he was to notify Probation upon his return to the Western

12:59:28PM25    District of New York?

1      **MS. WHITCOMB:** Yes.  However, I don't know if that's

2  just a miscommunication with the District of Puerto Rico not

3  communicating with us before his return here for court.

4      **THE COURT:** Okay, thank you.  Mr. Lembke?

12:59:42PM 5      **MR. LEMBKE:** One second, please, Your Honor.

6      Upon Mr. Pizzaro's arraignment on the initial

7  indictment -- or the indictment -- or his initial arraignment

8  in this case, which I believe was in or around April 2019, so

9  a year and a half ago, a little more than a year and a half

01:01:13PM 10 ago, the Government did not move for detention.

11     At that time the legal posture of the case in terms

12 of the Bail Reform Act was the same in regard to the

13 presumption.

14     Mr. Pizzaro under 3142(e)(2) already had a

01:01:39PM 15 rebuttable presumption that no combination of factors -- no

16 factors or combination of factors could ensure the safety of

17 the community or his return to court because he was charged

18 with a controlled substance offense with a mandatory maximum

19 of more than ten years under 3142(e)(3)(A).

01:02:10PM 20     So the fact now that the rebuttable presumption

21 applies because he also has a 924(c) charge under

22 3142(e)(3)(B) does not change the legal footing of the case as

23 it relates to the Bail Reform Act.

24     Yet the Government at that time did not even move

01:02:32PM 25 for detention against Mr. Pizzaro.

1          **THE COURT:** Let me stop you for second.  Was he

2   subjected to a mandatory minimum at that time?

3          **MR. LEMBKE:** Yes, ten years.

4          **THE COURT:** Okay, thank you.  Go ahead.

01:02:42PM 5          **MR. LEMBKE:** All right.  So that was the next thing

6   I was going to address.

7          That now his mandatory minimum is 20 years.

8   However, since the inception of this case -- and in particular

9   last fall of 2019, the Government and Mr. Pizzaro were talking

01:03:02PM 10  about a possible pretrial resolution of the case, and one of

11  the prosecutors in the case and I communicated, and it was our

12  opinion that were Mr. Pizzaro to plead guilty without any

13  cooperation, but with a three point reduction for acceptance

14  of responsibility, his guideline range would be 151 to 188,

01:03:36PM 15  which is 14 and a half to 17-ish years -- not 17 years.

16          Mr. Pizzaro and I had a number of discussions both

17  last fall through this spring and summer and including as

18  recent as probably a month or two ago in which he was made

19  aware by me that as the case stood before the fourth

01:04:04PM 20  superseding indictment was filed, were he to go to trial and

21  be convicted, he would likely be facing a sentence somewhere

22  in the range of 17 to 20 years at least.

23          So the idea that now because he's facing a

24  mandatory minimum sentence of 20 years as opposed to what I

01:04:28PM 25  advised him to be, in my opinion, a probable sentence if

1    convicted after trial of a little less than 20 years or 20

2    years, is of no material consequence in determining whether or

3    not that now provides for him an incentive to flee that didn't

4    exist before.

01:04:52PM  5          The circumstances may be different in terms of how

6    you get to the 20, but the idea of him looking at a

7    20-year sentence has been the case since the inception of the

8    case and in particular in the many, many conversations he and

9    I have had together.

01:05:09PM 10          The Government has characterized Mr. Pizzaro's time

11   of a year and a half on pretrial release as, in my view,

12   repeated violations of his release conditions.

13          The fact of the matter is that in the year and a

14   half that he has been on supervised release, he has not been

01:05:35PM 15   the subject of a single pretrial release violation petition

16   either by the Government or by the Department of Probation.

17          He's had no violations of probation, or his

18   supervised release -- with the exception of his temporary

19   residences on a couple of occasions at 6 Burbank Street, which

01:05:58PM 20   I will address momentarily.

21          Mr. Pizzaro has appeared at all court appearances.

22   In particular, this court appearance.  Mr. Pizzaro was

23   residing in Puerto Rico.  The Court ordered that we be here

24   today in person.  He arranged for his travel here, paid for

01:06:21PM 25   his travel here.

 1          In that regard Mr. Pizzaro provided copies of his

 2     agenda and his travel tickets to his supervising probation

 3     officer in the District of Puerto Rico.  Whether the District

 4     of Puerto Rico Probation Department did not inform the Western

01:06:41PM 5     District of New York Probation Department is not something you

 6     can lay at his feet.

 7          The Probation Department knew or should have known

 8     that Mr. Pizzaro was -- was getting in to Rochester, arriving

 9     I guess is the word I was searching for, in Rochester on

01:07:01PM10     Friday and -- but they did not, and that is not his fault.

11          Now, Mr. Pizzaro has always gone to Probation as

12     directed.  He's informed Probation of his whereabouts.  In the

13     time he's been on supervised release, he had a son born in

14     September of 2019.

01:07:28PM15          I want to get to his residence at 6 Burbank Street

16     for certain periods of time.  First of all, Your Honor, 6

17     Burbank Street is a residence that -- that was occupied by

18     Mr. Figueroa prior to his arrest.  It was also occupied by

19     Mr. Figueroa's girlfriend Ms. Nishayra Gutieriez, of whom you

01:07:58PM20     have heard reference.

21          Mr. Figueroa, by my recollection, was arrested some

22     time earlier in 2019 than Mr. Pizzaro.  So I think we're

23     talking about maybe February.  So almost two years ago.

24          The Government's talked about Mr. Pizzaro being at

01:08:19PM25     6 Burbank Street and him communicating with Ms. Nishayra

1  Gutieriez.  What the Government has never alleged, and of

2  which there is no evidence, is the fact that any illegal

3  conduct was going on at 6 Burbank Street.  It's simply an

4  address.

01:08:39PM 5          Mr. Figueroa isn't there.  There's not a single

6  allegation of drug dealing activity going on out of 6 Burbank

7  Street since Mr. Figueroa was arrested.

8          There's not a single allegation that Mr. Pizzaro

9  and Ms. Gutieriez were involved in conversation regarding the

01:08:57PM 10  case, regarding anybody's defenses.  And point of fact, my

11  understanding is that they have never discussed it.

12          I should also point out that when Mr. Pizzaro was

13  told that he couldn't reside there by the Court, he moved out.

14  And I'm talking about early now.  This is early in -- in 2019.

01:09:17PM 15  He got an apartment on Alexander Street.

16          During the entire time that he was out up until

17  about February of this year, Mr. Pizzaro was employed.

18  Shortly before February 2020 Mr. Pizzaro lost his job here in

19  Rochester.

01:09:38PM 20          Shortly after that, as Mr. Marangola says, his

21  father passed away shortly after that, and on the weekend

22  before President's Day, I believe President's Day in February

23  2020, this year, Mr. Pizzaro found out that his father had

24  committed suicide in Puerto Rico, and was sent photographs of

01:10:06PM 25  his father hanged.

1    He called me.  I got a call late on a Saturday or

2 late on a Sunday and I met with Mr. Pizzaro on that following

3 Monday morning.

4    When I say that I was concerned about his mental

01:10:24PM 5 health is no joke.  Under the circumstances, the fact that

6 Mr. Pizzaro had no relatives here, no family here, and

7 Ms. Gutieriez, by whom he has -- with whom, by the way, he has

8 been dear friends for, I think, ten years or perhaps more, he

9 had no money, and no place to go.

01:10:53PM 10    This is -- these are the circumstances under which

11 he went to Burbank Street.  Then Covid came.  Then under all

12 those circumstances the Government went to the Probation

13 Department demanding that Mr. Pizzaro's pretrial release be

14 revoked.

01:11:14PM 15    Probation -- I'm sorry?  I thought I heard

16 something.

17    The probation officer -- the Probation Office did

18 not file a violation petition.  We came into court, we

19 discussed it with Judge Pedersen, he gave Mr. Pizzaro

01:11:33PM 20 instructions to not be at that residence.  The only thing that

21 he could do was go back to Puerto Rico.

22    So myself and his supervising probation officer at

23 the time, Probation Officer Mileham, communicated with the

24 District of Puerto Rico.  It took several weeks to get

01:11:52PM 25 Mr. Pizzaro approved to leave the District of -- the Western

1   District of New York and go to Puerto Rico, which he did on

2   his own dime.  And since that time has been living with his

3   wife and their now one year old son in Puerto Rico.

4          During the time he's been in Puerto Rico he's been

01:12:13PM 5   fully compliant with all the Court's orders.  He came back

6   here to Rochester for this court appearance because the Court

7   required that we be here in person.

8          My understanding is that he simply forgot under the

9   circumstances that he wasn't supposed to be at Burbank Street

01:12:34PM10  or didn't put enough thought into that situation.  But again,

11  Judge, this is kind of form over substance.

12         The fact that he may have been at 6 Burbank Street

13  I understand is a violation of the Court's direct order not to

14  be there.  But the reality is it really is almost a *de minimis*

01:13:04PM15  violation because the Government has not provided any proof to

16  the Court of why it's a problem other than him being there and

17  there's a rule and -- and the rule wasn't followed.

18         I guess it's *malum prohibitum*.  It's bad because we

19  say it's bad, but it's not bad in and of itself by its very

01:13:30PM20  nature, right?  It's a violation of the rule that was put in

21  place.

22         Now, I understand those are important things, but I

23  think that the overwhelming weight of the evidence before Your

24  Honor concerning whether this man is going to come to court is

01:13:50PM25  sitting right there.  He's here.  He's always been here.

1          I've had meetings with him, I've probably had 15

2    meetings with Jean Karlos Pizzaro in my office.  He's there

3    every time early, ready to go, never fails, always comes to

4    court, always checks in with Probation.

01:14:14PM 5          He's an open book.  Even when he's in 6 Burbank

6    Street, people know about it.  It's not as if he's trying to

7    pull something off.  I think that he just -- it's -- it's a

8    matter of being poor, and not having a place to stay or the

9    resources to stay.

01:14:31PM 10          And I should add I think the Probation Department

11    pointed out when I got a call yesterday from Probation

12    Officer Hernandez and I talked to Mr. Pizzaro, I told him get

13    out and get a hotel room, and that is exactly what he did.

14          So he's rebutted the presumption by his conduct.

01:14:57PM 15    6 Burbank Street, I understand, notwithstanding.

16          I don't know anything about the conversations

17    between my client and Mr. Figueroa from the jail.  I also

18    don't know anything about the content of those conversations,

19    to the extent there were some, there should not be and he

01:15:14PM 20    knows that.

21          And I think that reiterating to the Court -- by the

22    Court that he cannot be at 6 Burbank, he cannot speak with his

23    co-defendants is all it's going to be necessary for this man.

24          And I would suggest, Your Honor, by the way, if

01:15:30PM 25    there was anything in those conversations of which the

1   Government is aware -- because they're recorded -- suggesting

2   that they were talking about the case or obstructing justice

3   or trying to come up with some sort of defense or otherwise,

4   we would have known about it.

01:15:47PM 5          Based upon all that, again, the evidence before

6   Your Honor in terms of this proceeding suggests that there are

7   conditions and combination of conditions that will assure

8   Mr. Pizzaro's appearance here in court and the safety of the

9   community.  Thank you.

01:16:06PM 10          **THE COURT:** Mr. Marangola, do you want to respond at

11  all?

12          **MR. MARANGOLA:** I guess, Judge, the thrust of it is

13  which orders does the defendant think he's supposed to follow?

14  He needs another one to stay away from 6 Burbank?

01:16:26PM 15          He's been told on two -- at least two separate

16  occasions by two separate judges don't go there, don't have

17  contact with this specific person, and he did it and he

18  continued to do it.

19          And Mr. Lembke may make sort of light of it or it's

01:16:45PM 20  just a condition, but it's not that by itself.  Well, the only

21  things the Court has to rely is the defendant follows those

22  conditions, and his communicating with co-defendants is

23  completely unacceptable.  And the defendant knows it.  He just

24  hasn't gotten caught.

01:17:03PM 25          And we just found out about it that he has been

1  communicating with Mr. Figueroa in the jail, and there's no

2  excuse for that.  Just like there's no excuse for his

3  persistent return to 6 Burbank Street to hang out with the

4  defendant's significant other.  None whatsoever.

01:17:20PM 5        So the defendant appeared here as directed as he's

6  supposed to.  That doesn't change the fact that he's decided

7  which conditions he's going to comply with and which

8  conditions he's not, and that's not his job to do.

9        His job is to follow all the conditions the Court

01:17:42PM 10 sets whether he or counsel think they're *de minimis* violations

11 or not.

12        So based on the fact that the new charge has a

13 allegation in it as well, I would ask that the Court detain

14 the defendant.

01:17:57PM 15       **THE COURT:** Thank you.  Anything else, Mr. Lembke?

16       **MR. LEMBKE:** No, thank you, Your Honor.

17       **THE COURT:** Regarding this matter regarding the

18 defendant Jean Karlos Pizzaro, the Government has moved for

19 detention based upon, first of all, the charges within the

01:18:20PM 20 fourth superseding indictment, specifically the second count

21 which charges Mr. Pizzaro now with possession of firearm;

22 Counts 7, 8 and 9, which charge him with distribution of

23 heroin.

24        There's now a mandatory minimum sentence if he were

01:18:41PM 25 to be convicted of Count 1, conspiracy charge, and Count 2,

1    the possession of firearm charge, of 20 years.  He's facing a

2    mandatory minimum sentence of 20 years imprisonment up to

3    life.

4         Coupled with the defendant's violations, which are

01:19:07PM 5    admitted, of the condition of his release, specifically his

6    return to 6 Burbank Street after being ordered by the Court on

7    numerous occasions not to return to that location, and

8    apparently communication with the co-defendant, which was also

9    one of the conditions of release that he not have such

01:19:31PM 10    conduct, under 3142(e), there is a rebuttable presumption that

11    the defendant does present a danger to the community and that

12    there is an indication he would not return to court, is a risk

13    of flight.

14         The Court finds that that rebuttable presumption

01:19:58PM 15    has not been overcome based upon the representations made on

16    the record regarding the conduct of Mr. Pizzaro while he's

17    been under the conditions of his release, specifically contact

18    with a co-defendant, returning to an address that he has

19    continuously been advised not to return to, coupled with the

01:20:19PM 20    magnitude of the charge contained within the fourth

21    superseding indictment, the Court finds there are no

22    conditions or combination of conditions that will assure the

23    safety of the community or that the defendant does not present

24    a risk of flight and, therefore, the Court will order the

01:20:37PM 25    detention of the defendant Jean Karlos Pizzaro.

1     The matter's next on for December 4th at 11 a.m.

2   The defendant's detained.

3          **MR. MARANGOLA:** Thank you, Your Honor.

4          **THE COURT:** Thank you.

01:20:50PM 5          (**WHEREUPON**, proceedings adjourned at 1:20 p.m.)

6                    *     *     *

7               **CERTIFICATE OF REPORTER**

8

9     In accordance with 28, U.S.C., 753(b), I certify that

10   these original notes are a true and correct record of

11   proceedings in the United States District Court for the

12   Western District of New York before the Honorable Frank P.

13   Geraci, Jr. on November 10th, 2020.

14

15   S/ Christi A. Macri

16   Christi A. Macri, FAPR-RMR-CRR-CSR(CA/NY)
     Official Court Reporter
17

18

19

20

21

22

23

24

25