```
 1                    UNITED STATES DISTRICT COURT

 2                    WESTERN DISTRICT OF NEW YORK

 3   - - - - - - - - - - - - - -X
     UNITED STATES OF AMERICA              18-CR-6094(G)
 4
     vs.
 5                                         Rochester, New York
     CARLOS FIGUEROA, XAVIER TORRES,       February 16, 2021
 6   AND JEAN KARLOS PIZZARO,              10:14 a.m.
                   Defendants.
 7   - - - - - - - - - - - - - -X

 8                    TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE FRANK P. GERACI, JR.
 9                   UNITED STATES DISTRICT JUDGE

10
                       JAMES P. KENNEDY, JR., ESQ.
11                     United States Attorney
                       BY: CASSIE M. KOCHER, ESQ.
12                         ROBERT A. MARANGOLA, ESQ.
                       Assistant United States Attorneys
13                     500 Federal Building
                       Rochester, New York 14614
14                     Appearing on behalf of the United States

15
                       MAURICE J. VERRILLO, ESQ.
16                     Appearing on behalf of Xavier Torres

17                     MATTHEW LEMBKE, ESQ.
                       Appearing on behalf of Jean Karlos Pizzaro
18
                       PAUL VACCA, ESQ.
19                     Appearing on behalf of Carlos Figueroa

20
     ALSO PRESENT:     Nicolas Penchaszadeh, Spanish Interpreter
21                     Jesus Barberia, Spanish Interpreter

22
     COURT REPORTER:   Christi A. Macri, FAPR-RMR-CRR-CSR(NY/CA)
23                     Christimacri50@gmail.com
                       Kenneth B. Keating Federal Building
24                     100 State Street, Room 2640
                       Rochester, New York 14614
25
```

```
 1                    P R O C E E D I N G S
 2                           *   *   *
 3              (WHEREUPON, all defendants are present).
 4              THE CLERK: 18-CR-6094, U.S. vs. Carlos Javier
 5   Figueroa, Xavier Torres, and Jean Karlos Pizzaro.
 6              Rob Marangola and Cassie Kocher are here for the
 7   Government.
 8              Paul Vacca is here for Mr. Figueroa.
 9              Maurice Verrillo is here for Mr. Torres.
10              Matt Lembke is here for Mr. Pizzaro.
11              Nicolas Penchasadeh and Jesus Barberia are here as
12   interpreters.  Let me swear you both in.
13              (WHEREUPON, the interpreters were sworn).
14              THE COURT: Thank you.  Good morning, everybody.
15              Are you Carlos Javier Figueroa?
16              DEFENDANT FIGUEROA: Yes.
17              THE COURT: Appear with your attorney Mr. Vacca.
18              MR. VACCA: Yes, Your Honor.
19              THE COURT: Are you Xavier Torres?
20              DEFENDANT TORRES: Yes, sir.
21              THE COURT: Appear with your attorney Mr. Verrillo.
22              And are you Jean Karlos Pizzaro?
23              DEFENDANT PIZZARO:  Yes.
24              THE COURT: Appear with your attorney Mr. Lembke.
25              This matter's on for a pretrial conference.  The
```

1  Court has received peremptory challenge questions from
2  Mr. Torres; I have received a witness list from Mr. Torres and
3  the Government.
4        I received an exhibit list from Mr. Torres; and
5  jury instructions -- proposed jury instructions from
6  Mr. Torres and the Government.
7        Mr. Vacca, are you going to file anything regarding
8  peremptory challenges?
9        **MR. VACCA:** Yes, Your Honor.  If you could give me a
10 week on that?
11       **THE COURT:** What about witnesses?
12       **MR. VACCA:** Another week.
13       **THE COURT:** Exhibits?
14       **MR. VACCA:** None, Your Honor.
15       **THE COURT:** And jury instructions?
16       **MR. VACCA:** Another week.
17       **THE COURT:** One week, okay.
18       Mr. Verrillo, you have filed peremptory challenges,
19 a witness list and exhibit list and jury instructions?
20       **MR. VERRILLO:** Yes, Judge.  I may -- I may file a
21 response on the 404(b) issue, which the Government has raised.
22 So I do want to do that.  So whatever time the Court would
23 give me, I will file that.
24       **THE COURT:** Okay, I'll give you time to do that.
25       And Mr. Lembke?

1           **MR. LEMBKE:** I don't know, Your Honor.  But if I do,
2  I can do it within a week, too, at this point.  I don't really
3  have anything.
4           **THE COURT:**  What's that?
10:16:50AM 5           **MR. LEMBKE:** At this point I don't intend to file
6  anything.
7           **THE COURT:** Okay.  Now, it's my understanding for
8  the trial we need a Spanish interpreter; is that correct?
9           **MR. VACCA:** That is correct, Your Honor.
10:17:06AM 10          **THE COURT:** Okay.  So we would use one interpreter.
11 We would have two available for simultaneous interpretation.
12 We'll have the proper equipment for that.
13           There's an issue regarding stipulations.
14           Mr. Marangola, do you want to be heard on that?
10:17:23AM 15          **MR. MARANGOLA:** Judge, I provided a lengthy written
16 stipulation to each of the counsel in the case.  We've taken
17 into account some of the feedback I've had from counsel, so I
18 guess depending on what the Court's position is and counsel's
19 is with respect to proceeding forward on March 15th, in the
10:17:51AM 20 event that everybody is on board, which I understand there
21 have been -- I think those decisions are being finalized, I
22 have not heard a final decision from everyone, but I believe
23 they are considering the stipulations, I would suggest a court
24 date for them to sign the stipulation so that we can proceed;
10:18:11AM 25 and knowing if they are signed, the scheduling that would

```
 1  result from that because that would take off, I would submit,
 2  at least a month of foundation-type witnesses.
 3              THE COURT:  Okay.  Mr. Vacca, what's your position
 4  on stipulations?
 5              MR. VACCA:  Your Honor, I did receive the
 6  stipulations from Mr. Marangola when we were preparing for the
 7  first trial on this -- it was proposed stipulations.
 8              I reviewed those with my client.  He took a great
 9  deal of time to consider them, and indicated that he would not
10  stipulate.
11              I then reviewed with him the new stipulation from
12  Mr. Marangola, which I received last week, I reviewed those
13  with my client.  His position is the same:  He's not willing
14  to stipulate to anything.
15              THE COURT:  Anything?
16              MR. VACCA:  Anything.
17              THE COURT:  Okay.  Mr. Verrillo?
18              MR. VERRILLO:  Yes, Your Honor, I did -- I did
19  review the stipulations with my client.  There were some
20  changes made that I requested, so we were agreeable to the
21  stipulation.
22              THE COURT:  Okay.  Mr. Lembke?
23              MR. LEMBKE:  Your Honor, our position on the
24  stipulations is that if counsel for my client's co-defendants
25  stipulated, that we would stipulate, too.
```

```
 1                   The vast majority of them, if not all of them,
 2   pertain largely to the other co-defendants.
 3                   THE COURT: Okay, thank you.
 4                   As indicated by Mr. Verrillo, the Government has
 5   noticed some 404(b) evidence that they intend to offer in the
 6   case.
 7                   Mr. Vacca, do you intend to respond to that?
 8                   MR. VACCA: No, Your Honor.
 9                   THE COURT: Okay.  Mr. Verrillo, you've already
10   indicated you do intend to respond.
11                   Mr. Lembke?
12                   MR. LEMBKE: No, Your Honor.
13                   THE COURT: Okay.  There's also an issue regarding
14   Rule 609 evidence regarding the Government witnesses.  In the
15   past when we've had these mammoth trials, the way we've
16   handled that typically is to handle that prior to each
17   particular witness testifying, the day before at least.
18                   Is that a procedure that's acceptable to you,
19   Mr. Vacca?
20                   MR. VACCA: Yes, Your Honor.
21                   THE COURT: Mr. Verrillo?
22                   MR. VERRILLO: Yes, Your Honor.
23                   THE COURT: Mr. Lembke?
24                   MR. LEMBKE: Yes, sir.
25                   THE COURT: Okay, we'll follow that.  It worked well
```

in the last big trial we had with Mr. Verrillo, quite frankly.

There are some other issues obviously outstanding regarding potential special verdict sheets, which we can discuss down the road, we have plenty of time to discuss that.

Co-conspirator statements, which the Government's indicated they intend to offer in this particular case.

Mr. Vacca, you also did send a letter to the Court regarding an indication that you were going to make a request for compassionate release of your client, right?

**MR. VACCA:** Yes, Your Honor.

**THE COURT:** Okay.

**MR. VACCA:** Your Honor, my client has been incarcerated since the start of this case. He was in the past on probation, federal probation, and as a result of that it did not result in any violations. He was released, he was let out on ankle bracelet.

In this particular case, Your Honor, I think that it's easier for my client to be sitting next to me in court here in civilian clothes without being incarcerated. It makes it easier for me to represent him, him to be represented, and I would ask that the Court consider releasing him to electronic monitoring for the purposes of preparation of the trial and this trial.

**THE COURT:** Okay. I just want to be sure, you're not really making a compassionate release application then?

           **MR. VACCA:** No.

           **THE COURT:** I thought that's the way I read your letter.  You're asking that his release condition -- that he no longer be remanded and instead be released on electronic monitoring; is that right?

           **MR. VACCA:** Yes.

           **THE COURT:** What's the difference between when he was remanded and now?

           **MR. VACCA:** Well, I think if he's got an ankle bracelet on, he's being monitored.  If he doesn't have one on, he's not being monitored; he's out without any type of monitoring.

           **THE COURT:** They get cut off pretty easily.  That application is denied.

           Regarding scheduling, this matter is scheduled currently for jury selection on March 15th.  To be quite candid with you, the Court is talking about suspending jury trials in this court until April 26th based upon the Covid situation in the community and based upon the fact that vaccines are beginning, but have not been totally continued.

           Mr. Vacca, what's your position on adjourning this matter until that date?

           **MR. VACCA:** Your Honor, we've adjourned it a couple times already.  I discussed this with my client again this morning.  His position is that he would like to move forward

1  with the case.
2          THE COURT: Okay.  And Mr. Verrillo?
3          MR. VERRILLO: I did discuss it with my client.  I
4  think the time period the Court's requesting is reasonable, so
5  we're okay with that.
6          THE COURT: And Mr. Lembke?
7          MR. LEMBKE: I haven't discussed that with my client
8  either, Your Honor, but --
9          THE COURT: I just raised it today, so I understand.
10         MR. LEMBKE: -- my personal position is, as his
11 lawyer, is if that's what the Court thinks is appropriate,
12 then we wouldn't have any objection to it.
13         My primary concern -- I was thinking about this
14 over the last couple days -- is not so much with us here in
15 the courtroom now, but jurors.  And to the extent that, you
16 know, we may have jurors who are less comfortable being in
17 court in a situation like this could diminish, I think, just
18 the pool from which my client and the Government may be able
19 to select jurors, and I'm not really crazy about that idea.
20         So I think that -- I think that perhaps an
21 adjournment is a good idea.
22         THE COURT: Okay.  What about is your client willing
23 to waive speedy trial rights between now and then?
24         MR. LEMBKE: I'm confident that he will.
25         THE COURT: Mr. Verrillo?

1     **MR. VERRILLO:** If I could just have a minute, Your
2 Honor?  I've talked to my client.  We're agreeable to that,
3 Judge, to extending it.
4     **THE COURT:** Mr. Vacca, your client I assume is not?
5     **MR. VACCA:** No, Your Honor.
6     **THE COURT:** Okay.  All right, I think we have a lot
7 of individual issues here to discuss with the parties.  What I
8 think I'd like to do is bring everybody back.
9     You needed a week to file.  Then the Government,
10 how long would you need to respond to those?
11     **MR. MARANGOLA:** If we could have a week to respond,
12 Judge?
13     **THE COURT:** Okay.  Let's put the matter on for
14 Mr. Figueroa for February 24th.  I know it doesn't give you
15 time to respond -- we'll know where we are at that point -- at
16 10 a.m..
17     **MR. VACCA:** February 24th, 10 a.m., Your Honor?
18     **THE COURT:** Yes.
19     And for Mr. Torres, we'll put your matter on for
20 the following day, February 25th -- I'm sorry, that's not a
21 good date.  How about the same date, February 24th, at 3 p.m.?
22     **MR. VERRILLO:** That's good, Judge.
23     **THE COURT:** And, Mr. Lembke, are you available on
24 the 23rd at 11?
25     **MR. LEMBKE:** Sure, Your Honor, yes.

Case 6:18-cr-06094-FPG-MJP   Document 757   Filed 08/08/22   Page 11 of 13

11

```
 1                THE COURT:  Put the matter on February 23rd, 11 a.m.
 2    so we can sort out these individual issues with the parties.
 3                And at that time we'll -- Mr. Figueroa's going to
 4    be objecting and not waive speedy trial rights, then right now
 5    I would count on the jury trial commencing on the 15th of
 6    March, okay?
 7                We'll come back on those dates to talk to each of
 8    the parties individually, all right?
 9                Anything else, Mr. Vacca?
10                MR. VACCA:  So, Your Honor, on the 24th we're going
11    to be talking about whether or not he waives his speedy trial
12    rights, whether there's any challenges to the witness list,
13    and whether or not there's any challenges to the charge to the
14    jury is my understanding?
15                THE COURT:  That's right.  Whether or not you're
16    going to submit those?
17                MR. VACCA:  Right.  Okay, then we're on the 24th at
18    10 o'clock in the morning?
19                THE COURT:  That's correct.
20                MR. VACCA:  Okay.  That deals with the speedy trial
21    issue?
22                THE COURT:  We're going to deal with that as well.
23                MR. VACCA:  Thank you.
24                THE COURT:  Mr. Lembke, you're all set?
25                Mr. Lembke -- I'm sorry, I'm looking at
```

1  Mr. Verrillo.  Mr. Lembke, you're all set then for the 23rd?
2              **MR. LEMBKE:** Sure, yes.
3              **THE COURT:** And, Mr. Verrillo, for the 24th at 3?
4              **MR. VERRILLO:** Judge, I just wanted to explain
5  that -- so right now we should plan on the 15th at this point?
6              **THE COURT:** Yeah, March 15th if Mr. Figueroa is not
7  going to waive speedy trial.
8              Do you know what the speedy trial clock is on this,
9  Mr. Marangola?
10             **MR. MARANGOLA:** Judge, I don't think we've had any
11 days that have been ticked off.
12             **THE COURT:** Okay, all right.
13             **MR. VERRILLO:** Judge, I just wanted to make the
14 Court aware that I had some health issues a few months ago
15 because of my being exposed at Monroe County Jail.  I'm better
16 now, thank God, but I have some concerns.  I do want to meet
17 with my client, I do want to communicate with him.
18             But I did talk to the marshals.  I would like to
19 have some accommodations if my client could be brought over
20 here for periods of time so I could go through the *Jencks*
21 material?  Because I did have some health issues as a result
22 of going to the Monroe County Jail, and I do want to have
23 access.  So I talked to Shane and he does want to work with
24 me, but I do want to --
25             **THE COURT:** You talked to who?

```
 1              MR. VERRILLO:  I talked to Shane of the Marshal's
 2  Office.
 3              THE COURT:  Marshall?
 4              MR. VERRILLO:  Yeah, to see if we could have some
 5  sessions.  I would feel more comfortable in light of what I
 6  went through to have that.
 7              THE COURT:  Okay, we'll try to make arrangements.
 8              MR. VERRILLO:  I wanted to make the Court aware of
 9  that.
10              THE COURT:  Great.  They're usually very
11  accommodating, especially in a trial like this.
12              Okay, thank you.  We're all set.
13              (WHEREUPON, proceedings adjourned at 10:29 a.m.)
14                           *    *    *
15                     CERTIFICATE OF REPORTER
16
17          In accordance with 28, U.S.C., 753(b), I certify that
18  these original notes are a true and correct record of
19  proceedings in the United States District Court for the
20  Western District of New York before the Honorable Frank P.
21  Geraci, Jr. on February 16th, 2021.
22
23  S/ Christi A. Macri
24  Christi A. Macri, FAPR-RMR-CRR-CSR(CA/NY)
    Official Court Reporter
25
```